CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

'16 DEC 21 A 9: 50

NO. 16 - 12416

DIVISION "..."
DISTRICT COURT

BROTHERS PETROLEUM, LLC

VERSUS

SECTION 1

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC,
AHMED 1, LLC, EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC
and FIRST NBC BANK

FILED:_____
                        DEPUTY CLERK

**PETITION FOR REVOCATORY ACTION,**
**FOR DAMAGES FROM UNFAIR TRADE PRACTICES,**
**OR ALTERNATIVELY, FOR UNJUST ENRICHMENT**

The petition of BROTHERS PETROLEUM, LLC ("Brothers"), a

domestic corporation organized pursuant to the laws of the State

of Louisiana and domiciled in the Parish of Jefferson, State of

Louisiana, respectfully represents:

I.

Made defendants herein are:

1.   WAGNERS CHEF, LLC ("Wagners"), a domestic limited

liability company organized pursuant to the laws of the State of

Louisiana and domiciled in the Parish of Orleans, State of

Louisiana;

2.   JADALLAH ENTERPRISES, LLC, a domestic limited liability

company organized pursuant to the laws of the State of Louisiana

and domiciled in the Parish of Orleans, State of Louisiana;

3.   AHMED 1, LLC, a domestic limited liability company

organized pursuant to the laws of the State of Louisiana and

domiciled in the Parish of Orleans, State of Louisiana;

4.   EMPIRE EXPRESS, LLC, a domestic limited liability

company organized pursuant to the laws of the State of Louisiana

and domiciled in the Parish of Orleans, State of Louisiana;

5.   WAGNER WORLD, LLC, a domestic limited liability company

organized pursuant to the laws of the State of Louisiana and

domiciled in the Parish of Orleans, State of Louisiana; and

6.    FIRST NBC BANK, a commercial bank chartered under the laws of the State of Louisiana which has its principal place of business in the Parish of Orleans, State of Louisiana.

II.

Defendant, Wagners, was the owner and operator of a gasoline/convenience store located at 4301 Louisa Street, New Orleans, Louisiana (the "Real Property").

III.

The Real Property is more fully described as follows:

ONE CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages, and appurtenances thereunto belonging or in anywise appertaining, situated in the STATE OF LOUISIANA, PARISH OF ORLEANS, THIRD MUNICIPAL DISTRICT OF THE CITY OF NEW ORLEANS, in that part thereof known as SQUARE NO. 39 OF GENTILLY WOODS, which square is bounded by Louisa Drive, Stephen Girard Avenue, Congress Drive, and New Orleans-Chef Menteur Highway, designated as LOT S-2 on a plan of resubdivision of original Plot S into LOTS S-1, S-2, S-3, and S-4, dated March 13, 2001, revised July 3, 2001, by Gilbert, Kelly, Couterie, Inc., recorded August 17, 2001 as Conveyance Office Instrument No. 222368, which LOT S-2 measures as follows, to wit:

Commencing at the point of intersection of the easterly right of way line of Louisa Drive and the northerly right of way line of New Orleans-Chef Menteur Highway, the point of beginning; proceed N 24 degrees 38' 36" W, along the easterly right of way line of Louisa Drive, a distance of 250 feet to a point; thence N 65 degrees 21' 24" E, a distance of 250 feet to a point; thence S 24 degrees 38' 36" E, a distance of 250 feet to a point on the northerly right of way line of New Orleans-Chef Menteur Highway; thence S 65 degrees 21' 24" W, along the northerly right of way line of New Orleans-Chef Menteur Highway, a distance of 250 feet to a point, the point of beginning.

The improvements thereon bear the Municipal Number 4301 Louisa Street, New Orleans, Louisiana, with alternative address of 4601 Chef Menteur Highway, New Orleans, Louisiana 70126.

All as more fully shown on survey made by Dading, Marques & Associates, LLC dated June 29, 2016, attached hereto and made a part hereof.

IV.

Petitioner, Brothers, as a motor fuel distributor, possesses

a valid and binding contract (the "Contract") for the exclusive sale of Exxon branded motor fuel at the aforesaid location.

V.

The Contract was originally by and between Brothers, as distributor, and B-Xpress Louisa, LLC, as retailer, and thereafter, through a subsequent ratification of the Contract in June, 2013, with defendant, Wagners, successor-in-interest to B-Xpress Louisa, LLC, at the said location.

VI.

At all times pertinent hereto, the Contract was a public record having been recorded on October 22, 2013 as instrument no. 1140959 in the mortgage records for the Parish of Orleans, State of Louisiana.

VII.

On or about July 21, 2014, Wagners initiated litigation against Brothers alleging that Wagners was not bound by the Contract.

VIII.

Thereafter, on or about April 13, 2105, defendant, Wagners, unilaterally notified Brothers that it would no longer consider itself to be bound by the Contract despite not having alleged, much less proven, any breaches on the part of Brothers.

IX.

At all times, from April 13, 2015 through the filing of this petition, Jadallah Saed (hereafter "Saed") was the sole member and owned a one hundred (100%) per cent ownership interest in and to Wagners Chef, LLC.

X.

The said Contract was subsequently declared to be valid, binding, and enforceable against Wagners by judgment of the Court of Appeal, Fourth Circuit, dated November 7, 2015 in proceedings

3

entitled "Wagners Chef, LLC vs. Brothers Petroleum, LLC," no. 2015-C-0928 on the docket of that Court.

XI.

Defendant, Wagners, was thereafter found to be in breach of the said Contract and ordered to comply with all of the terms and conditions of the Contract by Judgment dated May 12, 2016 in proceedings entitled "Wagners Chef, LLC vs. Brothers Petroleum, LLC," no. 2014-7135 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana.

XII.

At the time of the rendition of the aforesaid Judgment of the Court of Appeal decreeing the Contract to be valid and binding on defendant, Wagners, and of the aforesaid Judgment of the Civil District Court decreeing Wagners to be in violation of the Contract and ordering specific performance, Wagners had a valid and binding lease with defendant, Wagner World, LLC, as lessor, governing the Real Property where Wagners operated its gasoline/convenience store.

XIII.

The said lease was originally for a primary term of fifteen (15) years commencing November 15, 2013 with one (1) five (5) year renewal option. The said lease also granted to Wagners an option to purchase the Real Property. Notice of the Lease was recorded on November 18, 2013 as instrument no. 544888 in the conveyance records of the Parish of Orleans, State of Louisiana.

XIV.

The said lease was subsequently amended and established a primary term of seven (7) years commencing February 10, 2015 with one (1) seven (7) year renewal option. The said lease amendment also granted to Wagners, an option to purchase the Real Property. Notice of the lease amendment was recorded on September 16, 2015

4

as instrument no. 585032 in the conveyance records of the Parish of Orleans, State of Louisiana.

XV.

Thereafter, on or about July 8, 2016, Wagners, through its sole member, Saed, gratuitously entered into an Act of Cancellation of Lease with lessor, Wagner World, LLC, defendant herein, cancelling both the aforementioned original lease and the aforementioned lease amendment which said Act of Cancellation of Lease was recorded on July 8, 2016 as instrument no. 602321 in the conveyance records of the Parish of Orleans, State of Louisiana.

XVI.

The Act of Cancellation of Lease further served to cancel the option to purchase the Real Property.

XVII.

Concurrent with the cancellation of the aforementioned lease, lease amendment, and option to purchase, defendant, Wagner World, LLC, as owner of the Real Property, entered into an Act of Cash Sale wherein it sold the Real Property to defendant,

Jadallah Enterprises, LLC, which said Act of Cash Sale was recorded on July 8, 2016 as instrument no. 602320 in the conveyance records for the Parish of Orleans, State of Louisiana.

XVIII.

Defendant, Jadallah Enterprises, LLC, is a Louisiana limited liability company formed on or about April 23, 2015, approximately ten (10) days after Wagners had unilaterally declared that it would no longer be bound by it motor fuel contract with plaintiff, Brothers, as alleged in paragraph VII above.

XIX.

On July 8, 2016, concurrent with the cancellation of the

5

original lease, the lease amendment, and the option to purchase
in favor of Wagners, and concurrent with the sale of the Real
Property to defendant, Jadallah Enterprises, LLC, the said
Jadallah Enterprises, LLC entered into a lease of the Real
Property with defendant, Ahmed 1, LLC, a Louisiana limited
liability company formed on July 5, 2016.

XX.

Jadallah Saed, is, and has always been the sole member of
both Jadallah Enterprises, LLC and Ahmed 1, LLC, defendants
herein, since their inception, owning a one hundred (100%) per
cent membership interest in and to each of the said limited
liability companies.

XXI.

A Notice of Lease of the Real Property by and between
defendants, Jadallah Enterprises, LLC, as lessor, and Ahmed 1,
LLC, as lessee, is recorded as instrument no. 603970 in the
conveyance records for the Parish of Orleans, State of Louisiana.

XXII.

Thereafter defendant, Empire Express, LLC in a simulated
transaction, for either no consideration of for a grossly
inadequate consideration, allegedly acquired the assets of
defendant, Wagners Chef, LLC, and entered into a sublease of the
Real Property with defendant, Ahmed 1, LLC, as sublessor, for the
continued operation of the gasoline/convenience store located on
the Real Property, thus causing Wagners to breach the Contract
and causing or increasing the insolvency of defendant, Wagners,
all to the detriment of, and causing damages to plaintiff,
Brothers, as obligee under the Contract.

**REVOCATORY ACTION**

XXIII.

The actions of defendants, Wagners Chef, LLC and Wagner

6

World, LLC in gratuitously cancelling the original lease, the lease amendment, and the option to purchase in favor of Wagners, have served to cause Wagners to breach the Contract and have caused or increased the insolvency of defendant, Wagners, all to the detriment of, and causing damages to plaintiff, Brothers, as obligee under the Contract, all of which both Wagners Chef, LLC and Wagner World, LLC knew or should have known would occur from their actions.

### XXIV.

The actions of defendants, Wagner World, LLC and Jadallah Enterprises, LLC in selling and transferring the Real Property from Wagner World, LLC to Jadallah Enterprises, LLC after first cancelling the original lease, the lease amendment, and the option to purchase in favor of Wagners, have also served to cause Wagners to breach the Contract and have caused or increased the insolvency of defendant, Wagners, all to the detriment of, and causing damages to, plaintiff, Brothers, as obligee under the Contract, all of which both Wagner World, LLC and Jadallah Enterprises, LLC knew or should have known would occur from their actions.

### XXV.

The actions of defendants, Jadallah Enterprises, LLC and Ahmed 1, LLC in entering into a lease of the Real Property following the gratuitous cancellation of the original lease, the lease amendment, and the option to purchase in favor of Wagners, have also served to cause Wagners to breach the Contract and have caused or increased the insolvency of defendant, Wagners, all to the detriment of, and causing damages to plaintiff, Brothers, as obligee under the Contract, all of which both Jadallah Enterprises, LLC and Ahmed 1, LLC knew or should have known would occur from their actions.

7

XXVI.

The actions of defendants, Ahmed 1, LLC and Empire Express, LLC, in entering into a sublease of the Real Property following the gratuitous cancellation of the original lease, the lease amendment, and the option to purchase in favor of Wagners, have also served to cause Wagners to breach the Contract and have caused or increased the insolvency of defendant, Wagners, all to the detriment of, and causing damages to plaintiff, Brothers, as obligee under the Contract, all of which both Ahmed 1, LLC and Empire Express, LLC knew or should have known would occur from their actions.

XXVII.

The actions of defendants, Wagners Chef, LLC and Empire Express, LLC, in entering into a transfer, simulated or otherwise, of the assets of Wagners Chef, LLC, have also served to cause Wagners to breach the Contract and have caused or increased the insolvency of defendant, Wagners, all to the detriment of, and causing damages to plaintiff, Brothers, as obligee under the Contract, all of which both Wagners Chef, LLC and Empire Express, LLC knew or should have known would occur from their actions.

XXVIII.

As a result of the actions of defendants, Wagners Chef, LLC, Wagner World, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC, plaintiff, Brothers, is entitled to a judgment annulling each of the following transactions, to wit:

a.   the Act of Cancellation of Lease by and between
     defendant, Wagners Chef, LLC and Wagner World, LLC,
     recorded on July 8, 2016 as instrument no. 602321 in
     the conveyance records of the Parish of Orleans, State
     of Louisiana;

8

b.  the Act of Cash Sale by and between defendants, Wagner
    World, LLC and Jadallah Enterprises, LLC, recorded on
    July 8, 2016 as instrument no. 602320 in the conveyance
    records for the Parish of Orleans, State of Louisiana;

c.  the lease by and between defendants, Jadallah
    Enterprises, LLC, as lessor, and Ahmed 1, LLC, as
    lessee, recorded as instrument no. 603970 in the
    conveyance records for the Parish of Orleans, State of
    Louisiana; and

d.  any transaction wherein Empire Express, LLC is alleged
    to have acquired the assets of Wagners Chef, LLC;

e.  the lease by and between defendants, Ahmed 1, LLC, as
    lessor, and Empire Express, LLC, as lessee.

XXIX.

Pursuant to aforedescribed transactions, defendant, First
NBC Bank, entered into a Multiple Indebtedness Mortgage with
defendant, Jadallah Enterprises, LLC, as mortgagor, and Ahmed 1,
LLC, as borrower, affecting the Real Property at 4301 Louisa
Street, New Orleans, Louisiana, and recorded on July 8, 2016 as
instrument no. 1222842 in the mortgage records of the Parish of
Orleans, State of Louisiana.

XXX.

Pursuant to aforedescribed transactions, defendant, First
NBC Bank, entered into an Assignment of Leases and Rents with
defendant, Jadallah Enterprises, LLC, affecting the Real Property
at 4301 Louisa Street, New Orleans, Louisiana, and recorded on
July 8, 2016 as instrument no. 1222843 in the mortgage records of
the Parish of Orleans, State of Louisiana.

XXXI.

Defendant, First NBC Bank, knew or should have known that
these transactions would cause defendant, Wagners, to breach the

9

Contract and would cause or increase the insolvency of defendant,
Wagners, all to the detriment of, and causing damages to
plaintiff, Brothers, as the Contract was a public record, having
been recorded on October 22, 2013 as instrument no. 1140959 in
the mortgage records for the Parish of Orleans, State of
Louisiana.

XXXII.

Plaintiff, Brothers, is, therefore, entitled to a judgment
annulling both the aforementioned Multiple Indebtedness Mortgage
and the Assignment of Leases and Rents.

## UNFAIR TRADE PRACTICES

XXXIII.

The actions of defendants, Wagners Chef, LLC, Jadallah
Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, and Empire
Express, LLC, as described hereinabove, constitute unfair or
deceptive methods, acts, and/or practices, which were unethical,
oppressive, unscrupulous, and substantially injurious to
plaintiff, Brothers, and were undertaken with the specific
purpose and intent of depriving plaintiff, Brothers, of its
rights against defendant, Wagners Chef, LLC, under the Contract
and preventing Brothers from either enforcing those rights or
recovering damages as a result of the breach of said Contract by
defendant, Wagners.

XXXIV.

The actions of defendants, Wagners Chef, LLC, Jadallah
Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, and Empire
Express, LLC, as described hereinabove constitute Unfair Trade
Practices in violation of the Louisiana Unfair Trade Practices
and Consumer Protection Law, LSA-R.S. 51:1401, et seq.

XXXV.

As such, plaintiff, Brothers Petroleum, LLC, is entitled to

10

recover all reasonable damages from defendants, Wagners Chef, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, and Empire Express, LLC, sustained by plaintiff as a result of the joint actions of these named defendants, all together with reasonable attorney fees, costs, and expenses.

## UNJUST ENRICHMENT

### XXXVI.

Alternatively, the actions of defendants, Wagners Chef, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, and Empire Express, LLC, described hereinabove, have caused an unjust enrichment, without cause, in favor of defendants, Wagners Chef, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC, all at the expense of plaintiff, Brothers.

### XXXVII.

As such, plaintiff, Brothers Petroleum, LLC, is entitled to recover all reasonable damages from defendants, Wagners Chef, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, and Empire Express, LLC, sustained by plaintiff as a result of the joint actions of these named defendants, together with all costs, and expenses.

### XXXVIII.

Petitioner prays for trial by jury on all issues presented herein as the amount in controversy exceeds that amount required by law.

WHEREFORE, plaintiff, Brothers Petroleum, LLC, prays that defendants, Wagners Chef, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, Wagner World, LLC, Empire Express, LLC, and First NBC Bank, each be served with a copy of this petition, be cited to answer same, and, that after due proceedings had, there be judgment in favor of plaintiff, Brothers Petroleum, LLC, and against defendants, Wagners Chef, LLC, Wagner World, LLC,

11

Jadallah Enterprises, LLC, Ahmed 1, LLC, Empire Express, LLC, and First NBC Bank, annulling and cancelling each of the following transactions, to wit:

  a. the Act of Cancellation of Lease by and between defendant, Wagners Chef, LLC and Wagner World, LLC, recorded on July 8, 2016 as instrument no. 602321 in the conveyance records of the Parish of Orleans, State of Louisiana;

  b. the Act of Cash Sale by and between defendants, Wagner World, LLC and Jadallah Enterprises, LLC, recorded on July 8, 2016 as instrument no. 602320 in the conveyance records for the Parish of Orleans, State of Louisiana;

  c. the lease by and between defendants, Jadallah Enterprises, LLC, as lessor, and Ahmed 1, LLC, as lessee, recorded as instrument no. 603970 in the conveyance records for the Parish of Orleans, State of Louisiana; and

  d. any transaction wherein Empire Express, LLC is alleged to have acquired the assets of Wagners Chef, LLC;

e. the lease by and between defendants, Ahmed 1, LLC, as lessor, and Empire Express, LLC, as lessee;

f. the Multiple Indebtedness Mortgage by and between First NBC Bank, as mortgagee, Jadallah Enterprises, as mortgagor, and Ahmed 1, LLC, as borrower, recorded on July 8, 2016 as instrument no. 1222842 in the mortgage records of the Parish of Orleans, State of Louisiana

g. the Assignment of Leases and Rents by and between First NBC Bank, as lender, and Jadallah Enterprises, LLC, as grantor, recorded on July 8, 2016 as instrument no. 1222843 in the mortgage records of the Parish of Orleans, State of Louisiana.

12

WHEREFORE, plaintiff, Brothers Petroleum, LLC, further prays that, after due proceedings had, there be judgment in favor of plaintiff, Brothers Petroleum, LLC, and against defendants, Wagners Chef, LLC, Wagner World, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC, jointly, severally, and in solido, in an amount sufficient to reasonably compensate plaintiff for all damages sustained, together with reasonable attorney fees, costs, and expenses resulting from the unfair trade practices of said defendants.

WHEREFORE, plaintiff, Brothers Petroleum, LLC, further prays alternatively that, after due proceedings had, there be judgment in favor of plaintiff, Brothers Petroleum, LLC, and against defendants, Wagners Chef, LLC, Wagner World, LLC, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC, jointly, severally, and in solido, in an amount sufficient to reasonably compensate plaintiff for all damages sustained, together with all costs, and expenses resulting from the unjust enrichment, without cause, occurring in favor of said named defendants and occurring at the expense of plaintiff, Brothers Petroleum, LLC.

Plaintiff further prays for legal interest on all such sums recovered from judicial demand until paid, and for such other relief as the law, the evidence, equity, and the nature of the case may permit.

Plaintiff further prays for trial by jury on all issues presented herein.

Respectfully submitted;

JOSEPH V. DIROSA, JR.
LOUISIANA BAR NO. 4959
325 NORTH WOODLAWN AVENUE
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 289-2739
FACSIMILE: (504) 218-7035
EMAIL: jdirosa1@cox.net
ATTORNEY FOR BROTHERS PETROLEUM, LLC

13

**PLEASE SERVE:**

1.   WAGNERS CHEF, LLC
     through its registered agent
     JIMMY CASTEX
     755 MAGAZINE ST.
     NEW ORLEANS, LA 70130

2.   JADALLAH ENTERPRISES, LLC
     through its registered agent
     JADALLAH SAED
     4301 LOUISA ST
     NEW ORLEANS, LA 70126

3.   AHMED 1, LLC
     through its registered agent
     DURIS HOLMES
     755 MAGAZINE ST.
     NEW ORLEANS, LA 70130

4.   EMPIRE EXPRESS, LLC
     through its registered agent
     NASHAT HAIDER
     2204 ESTEBAN ST.
     ARABI, LA 70032

5.   WAGNER WORLD, LLC
     through its registered agent
     WOLFE LAW GROUP, L.L.C.
     365 CANAL ST., SUITE 1690
     NEW ORLEANS, LA 70130

6.   FIRST NBC BANK
     MARSHA S. CROWLE
     210 BARONNE ST.
     FIRST NBC BANK
     NEW ORLEANS, LA 70112

ORLEANS PARISH CIVIL DISTRICT COURT

STATE OF LOUISIANA

DOCKET NO. 2016-12416                                      DIVISION: "G-11"

BROTHERS PETROLEUM, L.L.C.

VERSUS

WAGNERS CHEF, LLC *ET AL.*

DATE FILED: _____

## WAGNER WORLD LLC'S ANSWER AND AFFIRMATIVE DEFENSES

NOW INTO COURT, through undersigned counsel, comes Defendant, Wagner World LLC ("Wagner World"), who submits the following Answer and Affirmative Defenses to the Petition for Revocatory Action, for Damages from Unfair Trade Practices, or Alternatively, for Unjust Enrichment (the "Petition") filed by Plaintiff, Brothers Petroleum, L.L.C. ("Brothers"):

1.

The domicile and status of Defendants Wagners Chef, LLC ("Wagners Chef"), Jadallah Enterprises, LLC ("Jadallah Enterprises"), Ahmed 1, LLC ("Ahmed 1"), Empire Express, LLC ("Empire"), and First NBC Bank ("First NBC") are denied for lack of sufficient knowledge or information.

Wagner World admits that it is a domestic limited liability company that is domiciled in Orleans Parish.

2.

Wagner World admits the allegations in Paragraph II of the Petition. Wagner World further responds that the convenience store and property located at 4301 Louisa St., New Orleans, LA 70126 (the "Property") has an alternate address of 4601 Chef Menteur Highway, New Orleans, LA 70126.

3.

Wagner World admits that the property description contained in Paragraph III of the Petition is an accurate legal property description of the Property. Further responding, the legal description states that a survey is "attached hereto," but there is no survey attached to the Petition.

4.

The allegations in Paragraph IV of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph IV of the Petition contains legal conclusions which require no response from Wagner World.

5.

The allegations in Paragraph V of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph V of the Petition contains legal conclusions which require no response from Wagner World. Further responding, any written contract referenced in Paragraph V of the Petition is the best evidence of its contents.

6.

Wagner World admits that a document titled "Contract for Sale of Exxon-Branded Motor Fuel" was recorded in the Orleans Parish mortgage records on October 22, 2013, and bears Mortgage Instrument No. 1140959. The remaining allegations in Paragraph VI of the Petition are denied as written.

7.

Wagner World admits that on July 21, 2014, Wagners Chef filed a lawsuit against Brothers in Orleans Parish Civil District Court. The remaining allegations in Paragraph VII of the Petition consist of legal conclusions that require no response from Wagner World.

8.

The allegations in Paragraph VIII of the Petition are denied for lack of sufficient knowledge or information.

9.

The allegations in Paragraph IX of the Petition are denied for lack of sufficient knowledge or information.

2

10.

Wagner World admits that on November 5, 2015, the Louisiana Fourth Circuit Court of Appeal issued a ruling and opinion in Docket No. 2015-928. The remaining allegations in Paragraph X of the Petition consist of legal conclusions that require no response from Wagner World.

11.

The allegations in Paragraph XI of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph XI of the Petition contains legal conclusions that require no response from Wagner World.

12.

Wagner World admits that from November 15, 2013, through July 8, 2016, Wagner World (as lessor) and Wagners Chef (as lessee) were parties to a lease for the Property. The remaining allegations in Paragraph XII of the Petition are denied as written and denied for a lack of sufficient knowledge or information. Further responding, portions of Paragraph XII of the Petition contain legal conclusions that require no response from Wagner World.

13.

Wagner World admits that a document titled "Notice of Lease" was recorded in the Orleans Parish Conveyance Records on November 18, 2013, and assigned conveyance instrument number 544888.

Any leases, notices of leases, or any other contracts between Wagner World and Wagners Chef are the best evidence of their contents. Further responding, Paragraph XIII of the Petition contains legal conclusions that require no response from Wagner World.

14.

Wagner World admits that a document titled "Notice of Lease" was recorded in the Orleans Parish Conveyance Records on September 16, 2015, and assigned conveyance instrument number 585032.

Any leases, notices of leases, or any other contracts between Wagner World and Wagners Chef are the best evidence of their contents. Further responding, Paragraph XIV of the Petition contains legal conclusions that require no response from Wagner World.

3

15.

Wagner World admits that it executed a document titled "Act of Cancellation of Lease." Wagner World admits that on July 8, 2016, the document titled "Act of Cancellation of Lease" was recorded as Instrument No. 602321 in the Orleans Parish conveyance records.

The Act of Cancellation of Lease is the best evidence of its contents. Further responding, Paragraph XV of the Petition contains legal conclusions that require no response from Wagner World.

16.

The Act of Cancellation of Lease is the best evidence of its contents. Further responding, Paragraph XVI of the Petition contains legal conclusions that require no response from Wagner World.

17.

Wagner World admits that on July 7, 2016, it executed a document titled "Act of Cash Sale." Wagner World admits that on July 8, 2016, the document titled "Act of Cash Sale" was recorded as Instrument No. 602320 in the Orleans Parish conveyance records.

The Act of Cash Sale is the best evidence of its contents. Further responding, Paragraph XVII of the Petition contains legal conclusions that require no response from Wagner World.

18.

The allegations in Paragraph XVIII of the Petition are denied for lack of sufficient knowledge or information.

19.

The allegations in Paragraph XIX of the Petition are denied for lack of sufficient knowledge or information.

20.

The allegations in Paragraph XX of the Petition are denied for lack of sufficient knowledge or information.

21.

The allegations in Paragraph XXI of the Petition are denied for lack of sufficient knowledge or information. Further responding, documents in the public records are the best evidence of their contents.

22.

The allegations in Paragraph XXII of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph XXII of the Petition contains legal conclusions that require no response from Wagner World.

23.

The allegations in Paragraph XXIII of the Petition are denied as written. Further responding, Paragraph XXIII of the Petition contains legal conclusions that require no response from Wagner World.

24.

The allegations in Paragraph XXIV of the Petition are denied as written. Further responding, Paragraph XXIV of the Petition contains legal conclusions that require no response from Wagner World.

25.

The allegations in Paragraph XXV of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph XXV of the Petition contains legal conclusions that require no response from Wagner World.

26.

The allegations in Paragraph XXVI of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph XXVI of the Petition contains legal conclusions that require no response from Wagner World.

27.

The allegations in Paragraph XXVII of the Petition are denied for lack of sufficient knowledge or information. Further responding, Paragraph XXVII of the Petition contains legal conclusions that require no response from Wagner World.

28.

Paragraph XVIII of the Petition contains legal conclusions and Brothers' request for a judgment annulling certain transactions. Wagner World denies that Brothers is entitled to the judgment requested in Paragraph XXVIII of the Petition.

29.

The allegations in Paragraph XXIX of the Petition are denied for lack of sufficient knowledge or information. Further responding, documents in the public records are the best evidence of their contents.

30.

The allegations in Paragraph XXX of the Petition are denied for lack of sufficient knowledge or information. Further responding, documents in the public records are the best evidence of their contents.

31.

The allegations in Paragraph XXXI of the Petition are denied for lack of sufficient knowledge or information.

32.

Paragraph XXXII of the Petition contains legal conclusions and Brothers' request for a judgment annulling certain transactions. Wagner World denies that Brothers is entitled to the judgment requested in Paragraph XXXII of the Petition.

33.

Paragraph XXXIII of the Petition contains legal conclusions that require no response from Wagner World.

Further responding, Wagner World denies that any of its actions were unethical,

oppressive, unscrupulous, or substantially injurious. Wagner World denies that any of its actions were undertaken with the purpose and intent of depriving Brothers of any rights.

34.

Paragraph XXXIV of the Petition contains legal conclusions that require no response from Wagner World.

Out of an abundance of caution, Wagner World denies that any of its actions constitute "unfair trade practices" as defined by Louisiana law.

35.

Paragraph XXXV of the Petition consists solely of a request for relief that requires no response from Wagner World.

Out of an abundance of caution, Wagner World denies that Brothers is entitled to the relief requested in Paragraph XXXV.

36.

Paragraph XXXVI of the Petition contains legal conclusions that require no response from Wagner World.

Out of an abundance of caution, Paragraph XXXVI is denied as written.

37.

Paragraph XXXVII of the Petition consists solely of a request for relief that requires no response from Wagner World.

Out of an abundance of caution, Wagner World denies that Brothers is entitled to the relief requested in Paragraph XXXVII.

38.

Paragraph XXXVIII of the Petition consists solely of a request for jury trial that requires no response from Wagner World.

39.

The remainder of the Petition consists solely of a prayer for relief that requires no response from Wagner World.

Out of an abundance of caution, Wagner World denies that Brothers is entitled to the

prayed-for relief.

### Affirmative Defenses

40.

At all pertinent times, Wagner World acted in good faith.

41.

At all pertinent times, Wagner World entered into arms-length transactions.

42.

Brothers' recordation of its "Contract for Sale of Exxon-Branded Motor Fuel" in the Orleans Parish mortgage records was unlawful and invalid. The referenced contract does not grant Brothers any real rights in or to the Property, and thus it was improper for Brothers to record that contract on the mortgage records.

43.

Wagner World affirmative pleads the terms and conditions of all contracts referenced in the Petition, and incorporates all such contracts herein by reference.

44.

Wagner World reserves the right to plead additional affirmative defenses that may be uncovered during the discovery process.

### Prayer for Relief

WHEREFORE, Wagner World prays that after due proceedings be had, that its Answer and Affirmative Defenses be deemed good and sufficient, and that the Petition be dismissed with prejudice at Brothers' sole cost.

Wagner World further prays for all costs of this proceeding and all other just and equitable relief that this Court deems proper under the circumstances.

Respectfully Submitted,

SMILEY LAW FIRM, LLC
Seth J. Smiley (32693)
Bradley Aldrich (32316)
J. Matt Thomas (34123)

Donald A. Mau (33965)
365 Canal Street, Suite 1680
New Orleans, LA 70130
Office: 504-894-9653
Fax: 866-761-8934
http://www.smileyfirm.com

*Attorneys for Wagner World LLC*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                              DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____          _____
                                              DEPUTY CLERK

### FIRST MOTION FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADINGS

NOW INTO COURT, through undersigned counsel, come Defendants, Wagners Chef LLC, Jadallah Enterprises LLC and Ahmed 1 LLC (collectively "Defendants") who request an extension of time to file responsive pleadings in the referenced matter. In support of this motion, Defendants aver as follows:

I.

Plaintiff, Brothers Petroleum, LLC, filed the captioned litigation on or about December 21, 2016.

II.

Wagners Chef LLC and Amhed 1, LLC were served with the citation and petition on or about December 28, 2016.

III.

As of the date of this motion, the period for filing responsive pleadings has not yet expired.

IV.

This is the first request for an extension of time and no objection to extensions of time have been filed in the record in this matter.   Further, the granting of this motion will not prejudice the rights of any party to this litigation.

WHEREFORE, in light of the above, Defendants, pray that this court grant the current motion and allow them an additional thirty (30) days, through and including February 13, 2017, within which to file responsive pleadings in the captioned matter,.

58/14157/D2/01                                    1

Respectfully Submitted,

**ELKINS, P.L.C.**

THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA   70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys   for   Wagners   Chef   LLC,   Jadallah
Enterprises LLC, and Ahmed 1 LLC

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record, including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed, this 6th day of January, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Thomas M. Beh

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                                   DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____        _____
                                                          DEPUTY CLERK

### ORDER

Considering the foregoing First Motion for Extension of Time to File Responsive Pleadings, the facts and the law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the foregoing First Motion for Extension of Time be and hereby is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendants, Wagners Chef LLC, Jadallah Enterprises LLC and Ahmed 1 LLC, be and hereby are granted an extension of time of thirty (30) days, through and including February 13, 2017, within which to file responsive pleadings.

New Orleans, Louisiana, this ____ day of January, 2017.

_____
JUDGE
Piper D. Griffin
Judge, Division "I"
Civil District Court
Parish of Orleans, State of Louisisna

ENTERED ON MINUTES,

JAN 11 2017

CHARLENE WILLIAMS

58/14157/D2/01                          3

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 2016-12416                                     DIVISION "G"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALIAH ENT4ERPRISES, LLC, AHMED 1, LLC,
EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC, AND FIRST NBC BANK

_____            _____

FILED                                               DEPUTY CLERK


ANSWER AND AFFIRMATIVE DEFENSES BY
FIRST NBC BANK


NOW INTO COURT, through undersigned counsel, comes purported Defendant, First NBC
Bank, (hereinafter referred to as "Defendant" or "FNBC"), who respectfully responds to the Petition
for Revocatory Action, for Damages from Unfair Trade Practices, or Alternatively, for Unjust
Enrichment, (hereinafter referred to as the "Petition"), filed by Plaintiff, Brothers Petroleum, LLC,
(hereinafter referred to as "Plaintiff"), in the following particulars:

-1-

a.

The allegations contained within paragraph I (1) of Plaintiff's Petition are denied for lack of
sufficient information to establish a belief therein at this time.

b.

The allegations contained within paragraph I (2) of Plaintiff's Petition are denied for lack of
sufficient information to establish a belief therein at this time.

c.

The allegations contained within paragraph I (3) of Plaintiff's Petition are denied for lack of
sufficient information to establish a belief therein at this time.

d.

The allegations contained within paragraph I (4) of Plaintiff's Petition are denied for lack of
sufficient information to establish a belief therein at this time.

e.

The allegations contained within paragraph I (5) of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

f.

The allegations contained within paragraph I (6) of Plaintiff's Petition, insofar as it purports to establish the status of First NBC Bank, are admitted.  Insofar as it purports to establish any other allegations same are denied.

-2-

The allegations contained within paragraph II of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-3-

The allegations contained within paragraph III of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-4-

The allegations contained within paragraph IV of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-5-

The allegations contained within paragraph V of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-6-

The allegations contained within paragraph VI of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-7-

The allegations contained within paragraph VII of Plaintiff's Petition are denied for lack of sufficient information to establish a belief therein at this time.

-8-

The allegations contained within paragraph VIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

-9-

The allegations contained within paragraph IX of Plaintiff's Petition are denied for lack of

-2-

sufficient information to establish a belief therein at this time.

**10.**

The allegations contained within paragraph X of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**11.**

The allegations contained within paragraph XI of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**12.**

The allegations contained within paragraph XII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**13.**

The allegations contained within paragraph XIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**14.**

The allegations contained within paragraph XIV of Plaintiffs' Petition are denied for lack of sufficient information to justify a belief therein at this time.

**15.**

The allegations contained within paragraph XV of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**16.**

The allegations contained within paragraph XVI of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**17.**

The allegations contained within paragraph XVII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**18.**

The allegations contained within paragraph XVIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

**19.**

The allegations contained within paragraph XIX of Plaintiff's Petition are denied for lack of

sufficient information to justify a belief therein at this time.

20.

The allegations contained within paragraph XX of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

21.

The allegations contained within paragraph XXI of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

22.

The allegations contained within paragraph XXII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

23.

The allegations contained in paragraph XXIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

24.

The allegations contained within paragraph XXIV of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

25.

The allegations contained within paragraph XXV of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

26.

The allegations contained within paragraph XXVI of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

27.

The allegations contained within paragraph XXVII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

28.

The allegations contained within paragraph XXVIII of Plaintiff's Petition are denied.

29.

FNBC admits that it entered into a Multiple Indebtedness Mortgage that is recorded as Instrument No. 1222842 in the Mortgage Records for the Parish of Orleans, State of Louisiana, and

further asserts that said Multiple Indebtedness Agreement is the best evidence of an agreements entered into therewith.  All other allegations in paragraph XXIX are denied.

### 30.

FNBC admits that it entered into an Assignment of Leases and Rents as recorded in the Mortgage Records for the Parish of Orleans under Instrument No. 1222843, and further asserts that said Multiple Indebtedness Agreement is the best evidence of an agreements entered into therewith. All other allegations in paragraph XXX are denied.

### 31.

The allegations contained within paragraph XXXI of Plaintiff's Petition are denied.

### 32.

The allegations contained within paragraph XXXII of Plaintiff's Petition are denied.

### 33.

The allegations contained within paragraph XXXIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

### 34.

The allegations contained within paragraph XXXIV of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

### 35.

The allegations contained within paragraph XXXV of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

### 36.

The allegations contained within paragraph XXXVI of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

### 37.

The allegations contained within paragraph XXXVII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

### 38.

The allegations contained within paragraph XXXVIII of Plaintiff's Petition are denied for lack of sufficient information to justify a belief therein at this time.

## AFFIRMATIVE DEFENSES

**AND NOW**, in further response to Plaintiff's Petition, FNBC asserts the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Petition fails to state a cause of action on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiff's Petition are barred by applicable statutes of limitation, prescriptive and peremptive periods and contractual time limitation provisions.

### THIRD AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiff's Petition are barred under the doctrines of waiver, ratification, and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiff's Petition are barred by the principle of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

FNBC at all times complied with the applicable laws, regulations, and standards.

### SIXTH AFFIRMATIVE DEFENSE

The rights, obligations, and duties of FNBC are exclusively defined by the applicable Agreements executed by the parties and in the custom and practice as implied.

### SEVENTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted by Plaintiff are barred, in whole or in part, because all actions of FNBC were privileged exercises of the legal and/or contractual rights of FNBC.

### EIGHTH AFFIRMATIVE DEFENSE

FNBC did not breach any duties owed to Plaintiff, including any duties imposed on FNBC in the Agreements or by law.

### NINTH AFFIRMATIVE DEFENSE

FNBC at all times acted with due care, diligence, in good faith, and without malice.

### TENTH AFFIRMATIVE DEFENSE

Some of or all of the claims asserted against Plaintiff are preempted or otherwise precluded by statute, regulation, or any applicable agreements.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has sustained no damages proximately caused by FNBC.

## TWELFTH AFFIRMATIVE DEFENSE

No act or omission of FNBC was a cause-in-fact of any of Plaintiff's alleged damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate their alleged damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

The damages alleged by Plaintiff are the result of its own fault and/or the fault of others whose conduct FNBC is not responsible.

## FIFTEENTH AFFIRMATIVE DEFENSE

Some/all of the claims asserted by Plaintiff are barred by the doctrine of Unjust Enrichment.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that FNBC's conduct breached any supposed duties to Plaintiff, which is specifically denied, said conduct was the result of FNBC's fulfillment of its duties and obligations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

FNBC cannot be held liable for any misrepresentations/omissions of another person or party.

## RESERVATION OF RIGHTS

FNBC reserves the right to assert additional affirmative defenses established via discovery.

**WHEREFORE**, the FNBC prays that this Answer be deemed good and sufficient and after due proceedings be had, there be judgment herein in its favor and against Plaintiff, dismissing Plaintiff's demand against FNBC with prejudice at Plaintiff's cost and for such other relief as may be permitted.

Respectfully Submitted:

AARON & GIANNA, PLC

WILLIAM D. AARON, JR. (LSBA #2267) T.A.
DeWAYNE L. WILLIAMS (LSBA #27685)
ANNA RAINER (LSBA #31531)
201 Saint Charles Avenue, Suite 3800
New Orleans, LA 70170
Telephone: (504) 569-1800

*Counsel for Defendant, First NBC Bank*

-7-

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all counsel of record via electronic service and/or fax, this 25th day of ___January___, 2017.

_____

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

**FILED**

STATE OF LOUISIANA

2017 FEB -7 A 10: 52

NO. 16-12416

DIVISION "G-11"
CIVIL DISTRICT COURT

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC,
AHMED 1, LLC, EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC
And FIRST NBC BANK

_____          _____

   **FILED**                              **DEPUTY CLERK**


### MOTION TO ENROLL AS COUNSEL AND FOR EXTENSION OF TIME

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Empire

Express, LLC and moves this Honorable Court to enter an order enrolling Kyle S. Sclafani of the

Law Office of Kyle S. Sclafani, 4130 Canal Street, New Orleans, Louisiana on its behalf.

Mover also requires additional time within which to respond to the Plaintiff's Petition.

For this purpose, Mover requests an additional thirty (30) days from the date of signing

this order, within which to plead this suit.

No prior extension of time has been granted by the court or by counsel.


Respectfully submitted,

_____
KYLE S. SCLAFANI (Bar No. 28219)
4130 Canal Street
New Orleans, Louisiana 70119
Telephone No. (504) 875-4079
Facsimile No. (504) 910-4324
**Attorney for Empire Express, LLC**


**VERIFIED**



CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 16-12416                                    DIVISION "G-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC,
AHMED 1, LLC, EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC
And FIRST NBC BANK

_____                    _____
          FILED                                    DEPUTY CLERK

ORDER

CONSIDERING THE FOREGOING, IT IS HEREBY ORDERED that Kyle S.

Sclafani be enrolled as counsel of record for the Defendant; and,

IT IS FURTHER HEREBY ORDERED that Defendant is hereby granted an

additional thirty (30) days from the date of signing this order within which to file responsive

pleadings.

Signed this _____ day of _____ 2017 in New Orleans, Louisiana

FEB 08 2017

_____
                    JUDGE
              Judge Robin M. Giarrusso

ENTERED ON MINUTES

FEB 09 2017

VERIFIED

CHARLENE WILLIAMS

2

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing pleading has been served upon all counsel of record this _3_ th day of _Febuvong_, 2017 via facsimile and 1st class mail, postage prepaid.

_____
KYLE S. SCLAFANI

3

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                     DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; AND, FIRST NBC BANK

FILED: _____

_____
DEPUTY CLERK

EXCEPTION OF NO CAUSE OF ACTION BY
JADALLAH ENTERPRISES, LLC AND; AHMED 1, LLC

NOW INTO COURT, through undersigned counsel, come Defendants, Jadallah

Enterprises, LLC ("Jadallah Enterprises") and Ahmed 1, LLC ('Ahmed 1") who present this

Exception of No Cause of Action with respect to the allegations asserted in the Petition for

Revocatory Action, For Damages from Unfair Trade Practices or, Alternatively, for Unjust

Enrichment ("Petition") filed by Brothers Petroleum, LLC ("Brothers"). As fully described in the

accompanying memorandum in support, the allegations in the Petition are insufficient as a matter

of law to assert a claim of either Unfair Trade Practices or Unjust Enrichment against either

Jadallah Enterprises or Ahmed 1. Further, the allegations of the Petition are insufficient to assert a

claim for a Revocatory Action against either Jadallah Enterprises or Ahmed 1. Consequently, all

the claims asserted in the Petition against Jadallah Enterprises and/or Ahmed 1 should be

dismissed.

Respectfully Submitted,

ELKINS, P.L.C.

_____
THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA  70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys for Wagners Chef LLC, Jadallah
Enterprises LLC, and Ahmed 1 LLC

58/14157/D2/02                                     1

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record, including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed, this 13th day of February, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Kyle Sclafani
4130 Canal Street
New Orleans, LA 70119

Bradley Aldrich
Smiley Law Firm, LLC
365 Canal St., Suite 1680
New Orleans, LA 70130

DeWayne L. Williams
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170

_____
Thomas M. Beh

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                              DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____      _____
                                            DEPUTY CLERK

MEMORANDUM IN SUPPORT OF EXCEPTION OF NO CAUSE OF ACTION BY
JADALLAH ENTERPRISES, LLC AND AHMED 1, LLC

MAY IT PLEASE THE COURT:

Defendants, Jadallah Enterprises, LLC ("Jadallah Enterprises") and Ahmed 1, LLC

('Ahmed 1") submit this Memorandum in Support of the Exception of No Cause of Action with

respect to the allegations asserted in the Petition for Revocatory Action, For Damages from Unfair

Trade Practices or, Alternatively, for Unjust Enrichment ("Petition") filed by Brothers Petroleum,

LLC ("Brothers"). As fully described below, the allegations in the Petition are insufficient as a

matter of law to assert a claim of either Unfair Trade Practices or Unjust Enrichment against either

Jadallah Enterprises or Ahmed 1. Further, the allegations of the Petition are insufficient to assert a

claim for a Revocatory Action against either Jadallah Enterprises or Ahmed 1. Consequently, all

the claims asserted in the Petition against Jadallah Enterprises and/or Ahmed 1 should be

dismissed.

## BACKGROUND

This matter apparently arises out of a continuing contract dispute between Brothers and

Wagners Chef, LLC ("Wagners Chef") related to the operation of a gas station / convenience store

located at 4301 Louisa Avenue in New Orleans ("Property"). Yet, through the Petition, Brothers

has, without any basis, sought to extend that dispute to include claims against Jadallah Enterprises

and Ahmed 1, two separate juridical entities who have absolutely no contractual or other

relationship with Brothers.  Rather, Jadallah Enterprises and Ahmed 1 are merely the owners

and/or lessors of the Property on which Wagners Chef operated its business.

As Brothers admits, prior to July, 2016, Wagners Chef leased the Property from Wagner

World, LLC ("Wagner World"). See Petition, Paragraphs XII and XIII. A Notice of Lease

pertaining to the Lease between Wagner World and Wagner Chef ("Wagner World Lease") was

filed in the public record on November 18, 2013 and bears instrument number 544888. See

Petition, Paragraph XIII. Through the Wagner World Lease, the parties explicitly acknowledged

that no other party, whether Brothers or otherwise, had any interest in the Lease. Specifically,

Section 22 of the Wagner World Lease states as follows:

> Section 22. Solely for the Benefit of Parties. It is expressly understood and agreed
> that this Lease and the covenants contained in it are for the sole benefit of
> Landlord [Wagner World] and Tenant [Wagners Chef], their successors and
> assigns, and that all rights of action for any breach or any covenant contained in
> this Lease are reserved to those parties; and it is further expressly understood and
> agreed that those parties may by mutual agreement, alter, amend, modify or
> revoke or rescind this Lease or any covenant contained in it in any writing and at
> any time.[1]

As a result of this clear language, no person other than the specific signatories to the Wagner

World Lease had any interest in, or rights derived from, the Wagner World Lease and those

signatories could amend or cancel the Wagner World Lease at any time.

On or about July 8, 2016, Wagner World entered into an Act of Cash Sale whereby it sold

its entire interest in the Property to Jadallah Enterprises. See Petition, Paragraph XVII. This Act of

Cash Sale was filed into the public record on or about July 8, 2016 bearing instrument number

602320.  See Petition, Paragraph XVII.  As a result of the fact that Wagner World no longer held

any interest in the Property, the parties to the Wagner World Lease– i.e. Wagners Chef and

Wagner World – entered into a document captioned "Act of Cancellation of Lease" filed into the

record on July 8, 2016 bearing instrument number 602321. See Petition, Paragraph XV.

Thereafter, Jadallah Enterprises, as owner/landlord, entered into a lease of the Property with

Ahmed 1. See Petition, Paragraph XXI. A Notice of the Lease between Jadallah Enterprises and

Ahmed 1 was filed into the public records of Orleans Parish bearing instrument number 603970.

See Petition, paragraph XXI. Thereafter, but also on or about July 8, 2016, Ahmed 1 entered into a

sublease pertaining to the Property with Wagners Chef. Following these transactions, Wagners

Chef continued to perform under its contract with Brothers by purchasing motor fuel products

from Wagners Chef. Several months later, in November, 2016, Wagners Chef sold all of its assets

---

[1] A copy of the Wagner World Lease is attached hereto as Exhibit 1. While generally only the allegation of a petition
may be considered on an exception of no cause of action, the Fourth Circuit has held that documents incorporated into
a pleading by reference are properly considered. *Marchand v. Armstrong*, 354 So.2d 581, 583 (La. Ct. App.1977), writ
denied, 355 So.2d 254 (La.1978). In this case, Brothers specifically referenced the Wagner World Lease and,
consequently, it is properly considered in connection with this exception.

to Empire Express, LLC ("Empire Express") an entity unrelated to Wagners Chef, Jadallah

Enterprises, Ahmed 1 or their members.[2] Subsequent to that transaction, Ahmed 1 entered into a

sublease with Empire Express. See Petition, Paragraph 22.

 As a consequence of the series of transactions which occurred on or about July 8, 2016,

there was no material change in the interest held by Wagners Chef in the Property. Before those

transactions, Wagners Chef held a leasehold interest in the Property and after those transactions, it

held a leasehold interest in the Property.   While the Petition then goes on to state, repeatedly, that

somehow the actions of Jadallah Enterprises and/or Ahmed 1 (1) caused Wagners Chef to breach

its contract with Brothers, (2) caused or increase the alleged insolvency of Wagners Chef; (3)

resulted in some unspecified unfair trade practice or (4) unjustly enriched either Jadallah

Enterprises or Ahmed 1, absolutely no facts underlying such claims are alleged.   Thus, even if the

_well pleaded_ allegations of the Petition (i.e. those supported by facts, not mere conclusions) are

taken as true, there is simply no validly stated cause of action against Jadallah Enterprises or

Ahmed 1. Consequently, all such claims should be dismissed.

<u>ARGUMENT</u>

I. **STANDARD FOR EXCEPTION OF NO CAUSE OF ACTION.**

 Under Louisiana law, the peremptory exception of no cause of action is designed to test the

sufficiency of the pleadings and whether the law affords the plaintiff a remedy based on the facts

asserted in the petition. The Louisiana Supreme Court recently summarized this inquiry as

follows:

> As used in the context of the peremptory exception, a "cause of action" refers to the
> operative facts which give rise to the plaintiff's right to judicially assert the action
> against the defendant. _Ramey v. DeCaire_, 03-1299, p. 7 (La.3/19/04), 869 So.2d
> 114, 118; _Everything on Wheels Subaru, Inc. v. Subaru South, Inc._, 616 So.2d
> 1234, 1238 (La.1993). The purpose of the peremptory exception of no cause of
> action is to test the legal sufficiency of the petition by determining whether the law
> affords a remedy on the facts alleged in the petition. _Ramey_, at 7, 869 So.2d at 118;
> _Everything on Wheels Subaru, Inc._, 616 So.2d at 1235. No evidence may be
> introduced to support or controvert the exception of no cause of action. LSA-C.C.P.
> art. 931. The exception is triable on the face of the pleadings, and, for purposes of
> resolving the issues raised by the exception, the <u>**well-pleaded facts**</u> in the petition
> must be accepted as true. _Fink v. Bryant_, 01-0987, p. 4 (La.11/28/01), 801 So.2d
> 346, 349; _City of New Orleans v. Board of Commissioners of Orleans Levee
> District_, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The issue at the trial of the
> exception is whether, on the face of the petition, the plaintiff is legally entitled to
> the relief sought. _Ramey_, at 7, 869 So.2d at 118.

---

2 To the extent that Brothers makes allegations of a simulation pertaining to this sale, it offers absolutely no factual
basis for such a claim. Again, mere conclusory statements or allegations are insufficient to support a cause of action
under Louisiana law.

Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. *Montalvo v. Sondes*, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.

*Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07, 4–5), 950 So.2d 641, 646–47

(Emphasis added).

## II.   PLAINTIFF'S PETITION FAILS TO STATE A CLAIM FOR A REVOCATORY ACTION.

In a revocatory action such as the instant case, Brothers' burden of proof is set forth by

Louisiana Civil Code article 2036, which provides, in pertinent part:

> An obligee has the right to annul *an act of the obligor*, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, *that causes or increases the obligor's insolvency*.

(Emphasis added.) *See also, De La Vergne v. De La Vergne*, 2004-0412 (La.App. 4 Cir. 10/13/04,

4), 886 So.2d 589, 592.   As the Court in *De La Vergne* stated, to prevail on a recovatory action, a

plaintiff must prove that (1) that the defendant was an obligor of the plaintiff; (2) that the defendant

took an act or failed to take an act; (3) that the defendant was insolvent or became insolvent; (4)

and (4) that the insolvency was caused/or increased by the defendants act or failure to act. *Id.*

However, as respects Jadallah Enterprises and Ahmed 1, the allegations of Brother's Petition fail

to even plead any of the necessary elements, other than with unsupported conclusory allegations.

First, the Petition first seeks to revoke actions which were not taken, or failed to be taken,

by the alleged obligor. There is no allegations, nor can there be, that either Jadallah Enterprises or

Ahmed 1 are an obligor as to Brothers because there is no contractual or other relationship between

Brothers and either Jadallah Enterprises or Ahmed 1. Rather, the only entity who could possibly be

an obligor vis-à-vis Brothers is Wagners Chef.

As stated above, La.C.C.art. 2036 allows an oblige the right to annul an **act of the obligor**.

Yet many of the transactions at issue were not actions of the alleged obligor, *i.e.* Wagners Chef.

For example, Brothers seeks to set aside the purchase of the Property by Jadallah Enterprises from

Wagner World. Wagners Chef, i.e. the obligor, had no role in that transaction as it was neither the

purchaser nor seller. Consequently, Brothers has no right to seek the revocation of that transaction.

Further, Brothers seeks to set aside the execution of a lease between Jadallah Enterprises and

Ahmed 1. Again, Wagners Chef had no role in that transaction and Brothers has no right to seek

revocation of that transaction.   Finally, as respects the execution of a sublease between Ahmed 1

and Empire Express in November, 2016, the obligor of Brothers – Wagners Chef – again had no

role in that transaction and Brothers has no right to seek revocation of that transaction. Simply stated, the Petition makes absolutely no allegation, much less asserting any facts, that either Jadallah Enterprises or Ahmed 1 are "obligors" with respect to Brothers. Consequently, Brothers has absolutely basis to seek to revoke the sale by Wagner World to Jadallah Enterprises, the execution of a lease between Jadallah Enterprises and Ahmed 1 or the execution of a sublease between Ahmed 1 and Empire Express.

Second, Brothers Petition offers absolutely no factual support for its allegation that the sale of the Property by Wagner World to Jadallah Enterprises, the lease of that Property by Jadallah Enterprises to Ahmed 1 or the sublease of a portion of that Property between Ahmed 1 and Empire Express caused or increased the alleged insolvency of Wagners Chef. This absence of allegations makes some sense as Wagners Chef had no role in any of those transactions. Yet, absent such allegations, Brothers' Petition must be dismissed.

Further, Brothers complaint offers no factual statements at all that Wagners Chef is even insolvent. Rather, it only makes completely unsupported conclusory allegations of insolvency or breach, but offers nothing to show how the actions of Jadallah Enterprises or Ahmed 1 which did not involve Wagners Chef could result in, or could increase, Wagners Chef's insolvency. As discussed by the Fourth Circuit in *De La Vergne*, mere conclusory statements of alleged insolvency are insufficient. In fact, a petition must show with specificity the amount of the obligor's alleged insolvency and that the challenged transaction caused or increased that insolvency. Specifically, the Court stated as follows:

> In *Reading & Bates v. Baker Entergy Resources*, 96-1276 (La.App. 3 Cir. 5/21/97), 698 So.2d 413, the Third Circuit specifically rejected the argument that a creditor alleging the insolvency of his debtor need only show the amount of the debts, at which point the burden of proof switches to the debtor to show he has assets of an equal or greater value. The *Reading & Bates* court confirmed that in a revocatory action under Civil Code article 2036, the obligee must **_prove_** both the amount of the obligor's debt and that the challenged transaction caused or increased the insolvency of the obligor.

*De La Vergne v. De La Vergne*, 2004-0412 (La.App. 4 Cir. 10/13/04, 7), 886 So.2d 589, 593, citing *Reading & Bates Entergy Resources*, pp. 19-21, 698 So.2d at 422-423. (Emphasis added). Brothers' Petition offers none of these essential allegations and, consequently, should be dismissed.

As a consequence of all of these deficiencies, Brothers' Petition fails to state a cause of action against either Jadallah Enterprises or Ahmed 1 for a revocatory action. As such, Brothers

claims should be dismissed.

### III.    PLAINTIFF'S PETITION FAILS TO STATE A CLAIM UNDER UFTPA.

Brothers' next claim, arising under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1405, is equally deficient. In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.,* 2013-1582 (La. 5/7/14, 21), 144 So.3d 1011, 1025, *citing* La.R.S. 51: 1405. Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." *Id.,* citing Keith E. Andrews, *Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law,* 41 Loy. L.Rev. 759, 762 (1996) (hereinafter "Andrews"). However, the Louisiana Supreme Court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Services, Inc. v. Shell Deepwater Prod.,* 09–1633, p. 11 (La.4/23/10), 35 So.3d 1053, 1059. In *Cheramie Services,* the Court stated explicitly that "the range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Id.* at 11, 35 So.3d at 1059; *Andrews,* 41 Loy. L.Rev. at 763. Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA. *See, e.g., Cheramie Services,* 09–1633 at 12, 35 So.3d at 1060 and *Vermilion Hosp., Inc. v. Patout,* 05–82, p. 6 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 693.

In the current case, none of the allegations stated by Brothers against Jadallah Enterprises or Ahmed 1 assert a cognizable claim under the LUTPA.  There are no claims of fraud, nor are any claims asserted which show any conduct by either Jadallah Enterprises or Ahmed 1 which violate an established public policy or are immoral, unethical, oppressing, unscrupulous or substantially injurious. In fact, the only claims asserted by Brothers against Jadallah Enterprises (1) that it bought the Property from Wagners World; (2) that it cancelled a lease with Wagners Chef (a lease which no other party, including Brothers, had an interest); and, (3) that it subsequently entered into a lease with Ahmed 1. None of these actions are in any way fraudulent or nor can they be the basis of a valid claim of an unfair trade practice.

Similarly, the only allegations against Ahmed 1 are that it (1) leased the Property from

9

Jadallah Enterprises and (2) that it entered into a sublease with Empire Express after Empire Express purchased the assets of Wagners Chef. Again, none of those actions are even alleged to be fraudulent nor are they sufficient to support a claim for an unfair trade practice by Ahmed 1.

Further, Brothers' Petition fails to identify any specific damages it incurred or to plead any causative connection between the actions of Jadallah Enterprises and Ahmed 1 and any such alleged losses and/or damage. Rather, Brothers merely makes conclusory statements that the actions of Jadallah Enterprises and/or Ahmed 1 are somehow unfair trade practices and that those unspecified actions cause some unspecified damages to Brothers. That is not sufficient as a matter of law. Consequently, Brothers' Petition fails to state a cause of action against either Jadallah Enterprises or Ahmed 1 for an unfair trade practice and all such claims should be dismissed.

## IV.   BROTHERS HAS NOT, AND CANNOT, ASSERT A CLAIM FOR UNJUST ENRICHMENT AGAINT JADALLAH ENTERPRESES OR AHMED 1.

Brothers' final claim is an apparent "hail mary" type claim of unjust enrichment. However, as with its other claims against Jadallah Enterprises and Ahmed 1, Brothers offers absolutely no factual support for these claims. Rather, Brothers only asserts conclusory, unsupported claims which must be dismissed.

Initially, the Louisiana Supreme Court has strictly limited the ability of persons to assert a claim for unjust enrichment to those cases where the claimant has no other available remedy. In *Walters v. MedSouth Record Management*, the Court stated as follows:

> Pursuant to La. Civ.Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." *See Carriere v. Bank of Louisiana*, 95–3058, p. 17 (La.12/13/96), 702 So.2d 648, 671 (on rehearing). The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Mouton v. State*, 525

2010-0353 (La. 6/4/10, 2), 38 So.3d 243, 244. Thus, while Jadallah Enterprises and Ahmed 1 strongly deny that any proper claim for a revocatory action or an unfair trade practice have been asserted, if this Court disagrees then the existence of such a claim nullifies Brothers' ability to assert a claim for unjust enrichment.

Further, Brothers' allegations in the Petition are insufficient to even assert such a claim. The Fourth Circuit recently stated that the five elements required to establish an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. *Huntsman Int'l LLC v.*

*Praxair, Inc.,* 2015-0975 (La.App. 4 Cir. 9/14/16, 18), 201 So.3d 899, 911, *citing Dugas v. Thompson,* 2011–0178 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1067–1068. Yet Brothers Petition asserts absolutely no factual allegations to support any of these claims.

Brothers' Petition offers no factual allegations of how either Jadallah Enterprises or Ahmed 1 were enriched, how Brothers was impoverished or how any such impoverishment is connected to the alleged enrichment. In fact, Brothers cannot make such allegations as there is no connection between Brothers and the actions of Jadallah Enterprises (i.e. purchasing the Property from Wagner World and leasing it to Ahmed 1) or Ahmed 1 (leasing the Property from Jadallah Enterprises and subleasing it to Empire Express). Brothers had no interest in the Property, nor did it have any right to dictate what Wagner World, Jadallah Enterprises or Ahmed 1 can do. Rather, Brothers must allege some factual connection between the actions of Jadallah Enterprises and/or Ahmed 1 and a harm suffered by Brothers. It has failed to do so.  Without these basic factual allegations, it is impossible for Brothers to assert a valid claim. Consequently, its claims of unjust enrichment against both Jadallah Enterprises and Ahmed 1 must be dismissed.

## CONCLUSION

For all the reasons stated above, Jadallah Enterprises and Ahmed 1 pray that this Court maintain their Exception of No Cause of Action and dismiss all claims against them contained in the Petition filed by Brothers.

Respectfully Submitted,

ELKINS, P.L.C.

THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA  70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys for Wagners Chef LLC, Jadallah Enterprises LLC, and Ahmed 1 LLC

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing has been served upon all counsel of record, including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed, this _____ day of February, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Kyle Sclafani
4130 Canal Street
New Orleans, LA 70119

Bradley Aldrich
Smiley Law Firm, LLC
365 Canal St., Suite 1680
New Orleans, LA 70130

DeWayne L. Williams
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170

                                Thomas M. Beh



EXHIBIT
1

## LEASE WITH OPTION TO PURCHASE

This lease agreement ("Lease") is effective as of the 15th day of November, 2013 and is by and between: Wagner World LLC ("**Landlord**"), represented herein by its Manager/Member and Wagners Chef, LLC ("**Tenant**"), herein represented by its duly authorized representative.

### ARTICLE I

### LEASED PREMISES

Landlord by this agreement leases to Tenant the property located at 4601-03 Chef Menteur Hwy., New Orleans, Louisiana, all as more fully described on Exhibit A attached hereto and made a part hereof, (the "Leased Premises"). .

### ARTICLE II

### TERM OF LEASE

Section 1. This Lease is made for the term and period of fifteen (15) years (the "Initial Term") commencing on November 15, 2013 (the "Commencement Date").

Section 2. The term of this Lease will commence on the Commencement Date, and in order to avoid any controversy as to the date of the commencement of that term, the parties to this Lease agree, on demand of the other, to execute a written declaration expressing the commencement and termination dates of the term of this Lease when the Commencement Date has been determined.

Section 3. Option to Extend. Landlord hereby grants to Tenant one (1) option to extend the Term of this Lease for one five (5) year period, upon the same terms and conditions as those set forth in this Lease for the Initial Term. Tenant shall be deemed to have exercised this Option to Extend automatically unless Tenant shall have given written notice to Landlord of its intention not to exercise this option as of the date which is six (6) months prior to the end of the Initial Term. Upon the exercise of this option, the parties shall execute and record a memorandum evidencing the exercise thereof and setting forth the expiration date of the extension period.

### ARTICLE III

### RENT

Section 1. The Tenant covenants and agrees to pay to the **Landlord c/o Escrow Services, Inc., at 450 N. Causeway Boulevard, Suite B, Mandeville, Louisiana 70448**, or at another place or places as the Landlord from time to time designates in writing, a monthly rental for the Leased Premises in the amount of $17,158.85, payable by electronic funds transfer to Escrow

Page 1 of 28

Services, Inc. on or before the  tenth   (10th) day of each month, with the first rental payment commencing on December 10, 2013.   Provided, however, (a) Landlord shall have the ability to substitute another third party escrow service company from time to time, so long as Landlord shall not designate any other place or places for the payment of the monthly rent other than such third party escrow servicer while the Leased Premises is encumbered by any mortgage granted by Landlord, or its agents, successors or assigns; and, at all times any mortgage is encumbering the Leased Premises, Escrow Services (and its successors, if any) shall collect the monthly lease payments and distribute the lease payments according to any escrow agreement executed by Landlord and Escrow Services, Inc.

Monthly rental is currently based upon the current anticipated interest rate incurred by Landlord to its existing lender. Tenant understands that interest rates are adjusted often or upon refinancing, therefore monthly rental payments may be adjusted upon said interest rate increases or decreases. For example, the current rate is based on 5% interest. If Landlord's loans are ever adjusted above 5% interest, Tenant's monthly rental payments shall also be adjusted to mirror said interest rates. If Landlord's interest rate is adjusted downward, Tenant's interest rate shall also be adjusted downward.

In the event Tenant fails to pay any installment of rent under this Lease within ten (10) days after its Due Date, Tenant shall pay Landlord, simultaneously with Tenant's payment of rent, a late charge in an amount equal to Two Hundred and 00/100 ($200.00) dollars per day said payment is late. The provision for the late charge will be in addition to all of Landlord's other rights and remedies under this Lease or at law and will not be construed as liquidated damages or as limiting Landlord's remedies in any manner.

Section 2. It is further understood and agreed that the Landlord shall in no event be construed or held to be a partner or associate of the Tenant in the conduct of the Tenant's business, nor shall the Landlord be liable for any debts incurred by the Tenant in the conduct of the Tenant's business but it is understood and agreed that the relationship is and at all times shall remain that of Landlord and Tenant.

Section 3. The Tenant agrees to pay to the Landlord the rents and other considerations contained in this Lease promptly when due without any deduction, setoff or abatement except as may be specifically set forth in the Lease.

ARTICLE IV

LANDLORD'S RIGHT TO ENCUMBER PROPERTY

Section 1. The Landlord shall have the right to mortgage and/or hypothecate the Leased Premises, by either refinancing any existing mortgage loans or obtaining any subordinate loans behind any existing mortgage loans and securing such with the equity in the Leased Premises up to the attached Amortization Schedule to comply with the purchase option hereto (collectively,

the "Mortgage Loans"); and, the Tenant assumes no obligations of Landlord pursuant to the Mortgage Loans. Tenant agrees that it will at any time, upon demand by Landlord, subordinate this Lease to the lien of any mortgage or mortgages which Landlord has placed or may hereafter place on the Leased Premises.

Section 2. In the event of default of the Landlord under any mortgage or deed of trust and the mortgagee or trustee of an instrument going into possession of those premises, the Tenant attorns to and becomes the Tenant under this Lease of that mortgagee or trustee, or its successor or assigns or to any purchaser at a foreclosure sale.

ARTICLE V

CONDITION AND MAINTENANCE

Tenant accepts the Leased Premises "as-is" and acknowledges that the Leased Premises have been fully completed in accordance with the terms of this Lease at the time possession was taken. TENANT (I) AGREES TO PERFORM ALL MAINTENANCE, REPAIRS, AND REPLACEMENTS THAT BECOME NECESSARY DURING THE TERM TO KEEP THE LEASED PREMISES AND ALL OF ITS PARTS (INCLUDING BUT NOT LIMITED TO LOCKS, KEYS, PLUMBING, GLASS, ELEVATOR(S), COOLING, HEATING AND VENTILATION SYSTEMS, ALL WALL AND FLOOR COVERINGS, MECHANICAL AND HYDRAULIC EQUIPMENT, TELEPHONE SYSTEMS, COMPUTER SYSTEMS AND EVERY OTHER ITEM OF MOVABLE PROPERTY INCLUDED IN, ON OR ABOUT THE LEASED PREMISES) IN A CONDITION SUITABLE FOR THE PERMITTED USE, (II) WAIVES ANY OBLIGATION ON LANDLORD'S PART TO KEEP THE LEASED PREMISES SAFE AND IN A CONDITION SUITABLE FOR THE PERMITTED USE, AND (III) WAIVES (AND LANDLORD HEREBY EXPRESSLY DISCLAIMS) ALL EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES ON THE PART OF LANDLORD, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES THAT THE LEASED PREMISES ARE IN COMPLIANCE WITH ANY AND ALL APPLICABLE CODES AND REGULATIONS, INCLUDING ZONING AND PARKING REGULATIONS, AND ANY WARRANTIES THAT THE LEASED PREMISES ARE SUITABLE FOR THE PERMITTED USE OR ARE FREE FROM VICES, DEFECTS, OR DEFICIENCIES, WHETHER HIDDEN OR APPARENT, ALL WARRANTIES IMPLIED UNDER APPLICABLE LAW, AND ALL WARRANTIES UNDER LA. CIV. CODE ARTS. 2682(2), 2684, 2691, OR 2696-2699, OR ANY OTHER PROVISION OF LAW, BUT ONLY TO THE EXTENT NOT EXPRESSLY PROHIBITED BY LOUISIANA LAW. TENANT ALSO ASSUMES FULL RESPONSIBILITY FOR THE CONDITION OF THE LEASED PREMISES THROUGHOUT THE TERM, AND WAIVES ANY RIGHT UNDER LOUISIANA LAW TO HAVE THE LANDLORD PERFORM ANY MAINTENANCE, REPAIRS, OR REPLACEMENTS TO THE LEASED PREMISES.

## ARTICLE VI

### UTILITIES

Section 1. Landlord is supplying no natural gas, heat, light, power, sewerage service, telephone, water, refuse disposal or other utilities or similar services to the Tenant or the Leased Premises. Tenant must pay for all its requirements for utilities, such as gas, steam, water, sewerage, heat, light, telephone and electricity and any other public service and to pay for all heating and air conditioning, trash and refuse removal and similar charges.

## ARTICLE VII

### USE OF PREMISES

Section 1. It is understood, and Tenant so agrees, that the Leased Premises during the term of the Lease, or as may be extended, shall be used only for a convenience store / gasoline station as to Suite A and any lawful purpose(s) for all other suites. These covenants may be enforced by proceedings in law, in equity for specific performance, injunction purposes (mandatory or prohibitory), or for damages and may be enforced by any party at interest or for whose benefit these covenants are made. Tenant shall maintain all State and City alcohol and tobacco licenses and permits as may be required by law, but only insofar as those licenses and/or permits apply to its operation of the gas station and convenience store located on the Leased Premises within Suite A. In the event Tenant fails to maintain the required State and City alcohol and/or tobacco licenses and permits for Suite A, it shall be considered in default herein, but shall have ninety (90) days from receipt of notice of the lapse of any permits in which to cure any such default. Notwithstanding anything in this Section to the contrary, Landlord acknowledges the state and city alcohol and tobacco licenses and permits required to sell alcohol and tobacco at the Leased Premises have been suspended by the State of Louisiana Alcohol and Tobacco Control Board, and that an appeal and/or injunction challenging said suspensions is currently pending in Civil District Court for the Parish of Orleans; and, in the event the suspension of the alcohol and tobacco licenses is upheld by the Court, Landlord agrees this decision is not a failure of Tenant to maintain the applicable licenses and shall be prohibited from placing Tenant in default as a result of any such decision by any Louisiana court. Tenant shall not be responsible for maintaining any State and/or City alcohol or tobacco licenses and permits for any sub-tenants who may lease any other suite and/or unit located on the Leased Premises. In the event that Tenant does not operate the Permitted Use at the Leased Premises for more than ten (10) consecutive days, Landlord shall have the right to terminate this Lease. Tenant shall have up to thirty (30) days to fully vacate the Leased Premises following .written notice to Tenant of such termination by Landlord. Provided, however, if Tenant is displaced from the Leased Premises due to any natural disaster, act of god, fire, hazard, flood or other occurrence, then Tenant will not be considered to have violated this provision relative to continuous operation.

Section 2. Tenant, at Tenant's expense, shall comply in all material respects with all laws, rules, orders, ordinances, directions, regulations and requirements of Federal, State, Parish, and

Page 4 of 28

Municipal authorities pertaining to Tenant's use of the Leased Premises and with the recorded covenants, conditions and restrictions, regardless of when they become effective, including, without limitation, all applicable federal, state and local laws, regulations or ordinances pertaining to air and water quality, Hazardous Materials (as hereinafter defined), waste disposal, air emissions and other environmental matters, all zoning and other land use matters, and utility availability, and with any direction of any public officer or officers, pursuant to law, which shall impose any duty upon Landlord or Tenant with respect to the use or occupation of the Leased Premises.  At all times during the term of this Lease, Tenant shall maintain all required licenses and permits for the operation of on the Permitted Use at the Leased Premises.

## ARTICLE VIII

## LEASE ASSIGNMENT AND SUBLEASING

Tenant shall not sublease or assign any interest in Suite A of the Leased Premises. Notwithstanding any other provisions of this Lease, Tenant may sublease any suite and/or unit other than Suite A of the Leased Premises at Tenant's sole discretion, provided, however, that Tenant shall not assign or sublease any interest in this Lease to any of the Prohibited Parties or any entity owned in whole or in part by any of the Prohibited Parties, as identified on Exhibit B attached hereto (collectively the "Prohibited Parties")..  Tenant herein shall, at all times, remain responsible for the payment of rent and the performance of all terms and conditions of this Lease following such sublease or assignment.  Landlord's consent to one assignment or sublease shall not be deemed consent to any subsequent sublease, assignment or other transfer.

## ARTICLE IX

## MAINTENANCE OF BUILDING

Section 1. Tenant shall be responsible for all maintenance and repair to the Leased Premises, and agrees to keep in reasonably good order, condition and repair all structural elements and portions of the building, including the roof, walls, ceilings, gasoline tanks, gasoline pipes, parking lot, canopy and internal plumbing. Landlord shall remain responsible for the foundation and shall make all required repairs to the building foundation within a reasonable time after receiving written notice of the need for such repairs.

Section 2. The Tenant agrees during the Lease term to keep and maintain the Leased Premises, all additions, improvements, and replacements to them, and every part of them and the exterior and interior portions of all walls, doors, windows, and plate glass surrounding the Leased Premises safe and in good order, condition and repair, and in compliance with all applicable laws, including without limitations, all electrical wires and lines, plumbing, gas, water (including exterior signs where permitted) and all interior building appliances and similar equipment. Tenant specifically agrees to replace all broken and cracked glass and glass windows in the Leased Premises, at its sole cost. All repairs, replacements and refurbishments shall be of good

quality materials and workmanship.  Tenant further agrees to keep the Leased Premises at all times in good order, condition and repair as described in Section 1 hereinabove, and agrees that the Leased Premises be kept in a clean, sanitary and safe condition in accordance with the laws of Louisiana and Parish and City ordinances, and in accordance with all directives, rules and regulations of the State Health Officer, State Fire Marshal, City/Parish Building Inspector, Health Unit and other proper officers of the governmental agencies having jurisdiction over them. The Tenant must not permit or commit any waste in the Leased Premises.  Tenant is responsible for any and all electrical wiring and lines, HVAC systems, gasoline tanks and piping, and plumbing and sewerage systems.  If Tenant fails to make any such repairs, replacements or refurbishments, Landlord may, but shall not be required to, make such repairs, replacements or refurbishments for Tenant's account, and the expense thereof shall constitute and be collectible by Landlord, which shall be due and payable within  thirty (30) days after demand thereof by Landlord.

Section 3.  The Tenant may not make any alterations, improvements, and/or additions to the Leased Premises without Landlord's prior written consent, , which consent may not be unreasonably conditioned or withheld. Any and all alterations, additions, improvements, equipment and fixtures which may be installed by either the Landlord or the Tenant on the Leased Premises and which are attached to the floors, walls or ceiling, including without limitation, air conditioning, refrigeration equipment and ducts, and any floor covering of similar character which may be cemented or otherwise affixed to the floor, shall remain on the Leased Premises, and at the termination of this Lease must be surrendered with the Leased Premises as a part of it without disturbance, molestation or injury, and without the Landlord being required to make any payment or reimbursement whatsoever to the Tenant therefore.  Notwithstanding the preceding sentence, Landlord does hereby expressly reserve the right, at its sole option and discretion, to require that Tenant at its cost, on or prior to the termination of this Lease, remove any improvements that it might have constructed and/or placed on the Leased Premises during the term of this Lease.  No improvement or alteration shall be undertaken until Tenant shall have procured and paid for all required municipal and other governmental permits and authorizations of the various municipal departments and governmental agencies having jurisdiction.  All work done in connection with any improvements or alterations shall be done in a good and workmanlike manner and in compliance with all building and zoning laws, and with all other laws, ordinances, rules and requirements of any federal, state or municipal agency having jurisdiction and shall be completed free of all mechanics or materialmen's liens. Landlord shall cooperate with Tenant  in obtaining any permits, consents or approvals required by any governmental authority with respect to any work being performed by or on behalf of Tenant, provided that Landlord shall have no obligation to incur any expenses in connection with such cooperation.  If a vendor's, mechanic's, laborer's, materialman's or other similar lien or privilege shall at any time be filed against the Leased Premises on account of any work, labor or services performed or claimed to have been performed, or on account of any materials furnished or claimed to have been furnished, for or at the direction of Tenant or anyone holding or occupying the Leased Premises through or under Tenant, Tenant shall, without cost or expense to Landlord, and with all due diligence:  (i) cause the same to be discharged of record by payment, bond, order of a court of competent jurisdiction or otherwise; or (ii) cause the same to be contested, in which event any judgment or other process issued in such contest shall be paid or discharged before

execution thereof; or (iii) provide Landlord with an indemnity therefore, including costs and reasonable attorney's fees, with legal counsel chosen by Landlord.

Section 4. All unattached and movable partitions, trade fixtures, equipment, furniture, and other personal property located in the Leased Premises (the "Tenant's Property") as well as all improvements made by Tenant (such improvements, the "Tenant Improvements"), shall be owned and insured by and taxed to Tenant during the term. Tenant shall remove all the Tenant's Property from the Leased Premises and shall repair and restore all damage caused by its maintenance, attachment, operation, or removal, on or before the termination date of this Lease.

Section 5. Tenant shall pay before delinquency all federal, state, parish or municipal taxes, assessments, permit or license fees, or other charges assessed or imposed on the Tenant Improvements, or on Tenant's leasehold interest, fixtures, furniture, merchandise or movable property of any kind placed in or about the Leased Premises during the term of this Lease, as well as all sales, use, occupancy and other taxes and assessments imposed on Tenant's use of the Leased Premises or on the business conducted in the Leased Premises.

## ARTICLE X.

## HAZARDOUS CONDITIONS

Section 1. Tenant shall not cause or permit any Hazardous Material to be brought upon, kept or used in or about the Leased Premises by Tenant, its agents, employees, contractors or invitees LESS AND EXCEPT any items that are related to the use of the Leased Premises and which are handled, stored and used in accordance with applicable law. Tenant shall indemnify, defend and hold Landlord and Landlord's employees, officers, agents, representatives, and contractors harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities or losses (including, without limitation, diminution in value of the Leased Premises, damages for the loss or restriction on use of rentable or usable space or of any amenity of the Leased Premises, damages arising from any adverse impact or marketing of space, and sums paid in settlement of claims, attorneys' fees, consultant fees and expert fees) which arise during or after the Lease Term as a result of the presence of Hazardous Materials on or about the Leased Premises. This indemnification of the Landlord by Tenant includes, without limitation, costs incurred in connection with any investigation of site condition or any clean up, remedial, removal, disposal or restoration work required by any federal, state of local governmental agency or political subdivision because of Hazardous Material present in, on or under the soil or surface, in ground water on, about or under the Leased Premises. Without limiting the foregoing, if the presence of any Hazardous Material on the Leased Premises caused by Tenant results in any contamination of the Leased Premises, Tenant shall promptly take all actions at its sole expense as are necessary to return the Leased Premises to the conditions existing prior to the introduction of any such Hazardous Material to the Leased Premises; provided that Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld so long as such actions would not potentially have any material adverse long term or short term effect on the Leased

Page 7 of 28

Premises.  The foregoing indemnity shall survive the expiration or earlier termination of this Lease.  Legal counsel, consultants and experts shall be chosen by Landlord.

Section 2.  As used herein, the term "Hazardous Materials" means any hazardous or toxic substance, material or waste, including, but not limited to, those substances, materials, and waste designated as a "Hazardous Substance" pursuant to Section 311 of the Federal Water Pollution Control Act (33 U.S.C. Section 1317), (i) defined as a "Hazardous Waste" pursuant to Section 1004 of the Federal Resource Conservation and Recovery Act 42 U.S.C. Section 6901, et seq., (42 U.S.C. Section 6903), (ii) defined as a "Hazardous Substance pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., 42 U.S.C. Section 9601), (iii) petroleum or asbestos or (iv) defined as a "Hazardous" or "Toxic" substance in any law similar to or in any amendment of any of the foregoing laws.

Section 3.  If Tenant is not in compliance with this Article, Landlord shall have the right to immediately enter upon the Leased Premises to remedy any contamination caused by Tenant's failure to comply notwithstanding any other provisions of this Lease.  Landlord shall use commercially reasonable efforts to minimize interference with Tenant's business, but shall not be liable for any interference caused thereby.

Section 4.  Any default under this paragraph shall be a material default, enabling Landlord to exercise any of the remedies set forth in the Lease. Provided, however, Landlord acknowledges there has been a recent spill or leak of Hazardous Material on the Leased Premises; and, in the event this spill or leak is not cleaned up, remediated or removed prior to the execution of the Lease and occupancy by Tenant, Tenant shall not be deemed to be in default herein, but will cooperate with Landlord in the remediation thereof provided that Tenant shall (i) be responsible to clean up and fully remediate such Hazardous Material to the extent it continues to exist at the time of Tenant's occupancy, and (2)  cooperate with Landlord in that clean up and (3) indemnify and hold Landlord harmless from any liability whatsoever in connection with such Hazardous Material and the remediation thereof, including costs and reasonable attorney's fees, with legal counsel chosen by Landlord if necessary.

ARTICLE XI

LANDLORD'S ACCESS TO PREMISES

Section 1. The Landlord shall have the right to enter the Leased Premises upon forty-eight (48) hours written notice (and at any time without notice to Tenant in the event of an emergency) for the purpose of inspecting the Leased Premises and to insure that Tenant is meeting its obligations under this Lease, to show the Leased Premises to prospective mortgagees, to perform repairs to the Leased Premises, or to perform any other obligation of the Tenant under this Lease. Without limiting the Landlord's rights under the preceding sentence, if repairs are required to be made by the Tenant pursuant to the terms of this Lease, Landlord may demand (but is not

required to do so) that the Tenant make them immediately, and if the Tenant refuses or neglects to commence those repairs and begin them within thirty ( (30) days after demand, and fails to diligently complete such repairs in a timely manner, the Landlord may make or cause those repairs to be made and is not responsible to the Tenant for any resulting loss or damage that may accrue to its business, and if the Landlord makes or causes repairs to be made, the Tenant agrees that it will immediately on demand pay to the Landlord the cost of the repairs.

Section 2. The Landlord, provided Tenant is not in default under this Lease, or in the event of any default, said default has been cured subsequent to the required notice by Landlord, is prohibited from selling, marketing to sell, leasing or marketing to lease the Leased Premises except during the last six (6) months of the term of this Lease when Tenant has elected not to exercise its option to purchase as set forth in Article XIX, Section 24 herein, and shall not enter the Leased Premises for any such purposes, nor shall Landlord entertain any such offers from third parties. Any actions by Landlord in contravention of this Section shall be a breach of its obligations pursuant to this Lease.

## ARTICLE XII.

## INDEMNITY AND PUBLIC LIABILITY INSURANCE

Section 1. The Landlord is not liable to Tenant or subtenants, or to Tenant's or subtenants' employees, agents, representatives, contractors, servants, or its guests, customers, visitors, invitees, licensees or to any other person (all being collectively defined below as "Occupants"), for any damage or injury to person or property caused by an act, omission or negligence of Tenant or Occupants in, on or about the Leased Premises. The Tenant agrees to defend, indemnify and hold harmless the Landlord and Landlord's employees, officers, principals, agents and representatives from and against all claims, losses, liabilities, injuries or damages of whatever nature arising out of or in connection with any act, omission or negligence of the Tenant and/or Occupants, whether or not occurring in, on or about the Leased Premises, or arising from any accident, casualty, injury or damage whatsoever in, on or about the Leased Premises caused to or sustained by any person or the property of any person, including, without limiting the preceding, any person or property on or in the vicinity of the Leased Premises, where that accident, casualty, injury or damage results or is claimed to have resulted from Tenant's use or occupancy of the Leased Premises, or from the act, omission or negligence of Tenant and/or Tenant's Occupants. The provisions of this section shall survive the termination or other expiration of this Lease. Legal counsel shall be chosen by Landlord.

Section 2.

      a.     The Tenant and subtenants, at Tenant's and subtenants' expense, must, at all times during the term of this Lease, procure and maintain for the mutual benefit of Landlord and Tenant as named insureds, comprehensive general liability insurance on an occurrence basis against claims for property damage and/or personal injury or death occurring on, in, under or about the Leased Premises or the streets, sidewalks, curbs or other areas adjoining the building of

which the Leased Premises form a part with minimum limits of $1,000,000.00 combined single limits for bodily injury or death to any one person, or any number of persons arising out of one occurrence and $1,000,000.00 for property damage arising out of one occurrence. Tenant and subtenants agree that they shall keep their fixtures, merchandise, equipment and other Tenant's Property and subtenants' property insured against all perils, including but not limited to theft, vandalism, flood and damage by fire with the usual extended coverage endorsement; and, in the event of loss, neither Tenant, subtenants nor their insurers shall have any recourse against Landlord, its insurer or any other persons or party connected or affiliated with Landlord; it being understood and agreed that the Tenant for Tenant's own behalf, and on behalf of Tenant's sub-Tenants, licensees, invitees, assignees or other persons, assumes all risk of damage to its own property arising from any cause whatsoever, including without limitation, loss by theft, fire, storm, riot or otherwise and whether caused on the Leased Premises, off the Leased Premises, at adjoining buildings or wherever. Tenant and subtenants shall at all times maintain workers' compensation insurance in accordance with the statutory requirements of the State of Louisiana, and employers' liability insurance with a limit of $1,000,000.00 with respect to all persons that work on the Leased Premises.

b.      Tenant and subtenants shall be responsible for the cost, expense and payment of the respective premiums involved in providing the insurance coverage set forth in paragraph (a) of this section. Tenant and subtenants shall furnish to Landlord a certificate of such company evidencing the fact that the insurance described herein has been obtained and is in full force and effect, that Landlord, its agents, assigns and/or its affiliated and associated companies, is an additional insured thereunder and loss payee.

c.      All the aforementioned policies of insurance shall be written and maintained by responsible insurance companies duly authorized and licensed to do business in and to issue policies in the State of Louisiana. Before taking possession of the Leased Premises, Tenant and subtenants shall deliver to Landlord certificates of insurance (and at Landlord's request, original policies) evidencing the existence and amounts of these policies, with evidence that these policies contain the required loss payable, additional insured, waiver of subrogation, and other required clauses, reasonably satisfactory to Landlord, as well as evidence satisfactory to Landlord that Tenant and subtenants have paid the premium for each required policy for the full period shown in the certificate. No less than 30 days before any of the insurance policies required in this Article is cancelled or expires, Tenant and subtenants shall deliver to Landlord certificates of insurance (and at Landlord's request, original policies) evidencing the replacement or renewal policies and that they satisfy this Article, as well as satisfactory evidence that Tenant and subtenants have paid the premiums for the full period shown in the certificate. Each certificate of insurance will contain or be accompanied by a certificate of the insurer that the policies shown in the certificate may not be canceled or modified without 30 days' prior written notice, given by certified mail, return receipt requested, to Landlord and each of Landlord's mortgagees. Each policy of insurance that Tenant and subtenants are required to provide shall specifically provide that "no act or omission of Tenant (or any subtenant) shall invalidate the interest of Landlord," and each Certificate of Insurance shall contain this certification by the insurer.

Page 10 of 28

d.      Tenant and subtenants hereby release and relieve Landlord, and Tenant and subtenants hereby waive their entire right of recovery against Landlord, for any and all loss or damage to any property, including Tenant Improvements and Tenant's Property and subtenants' improvements and property, arising out of or incident to perils insured against or that could have been insured against by a "**special form**" policy of property insurance or by any other policy of insurance insuring property loss or damage required under this Lease, even if this loss or damage is due to the negligence of Landlord, or its respective agents, employees, contractors or invitees. This waiver will include a waiver by Tenant and subtenants of all rights of legal or conventional subrogation that their insurers may have against the other party. Tenant and subtenants shall, upon obtaining the policies of insurance covering property loss or damage required hereunder, give notice to their insurance carrier or carriers that the foregoing waiver of subrogation is contained in this Lease, or if the insurance policy does not permit a party to waive the insurer's rights of subrogation, then the policy shall contain an endorsement in which the insurer waives all its rights of legal and conventional subrogation against the Landlord.

e.      Tenant and subtenants shall not permit the Leased Premises to be used for any purpose which would render the insurance thereon void.

Section 3. The Tenant and subtenants agree to use and occupy the Leased Premises, at their own risk, and that the Landlord has no responsibility, obligation or liability for any loss of or damage to fixtures or other personal property of the Tenant, subtenants, or Landlord, and Tenant and all subtenants hereby waive any and all rights and claims against Landlord, and Landlord's employees, officers, principals, agents and representatives for any such damage. The provisions of this Section apply during the whole of the Lease term.

Section 4. The Tenant and subtenants agree that the Landlord is not responsible or liable to the Tenant or subtenants or to those claiming by, through or under the Tenant or subtenants: (a) for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connecting with the Leased Premises; or (b) for any loss or damage resulting to the Tenant or subtenants or those claiming by, through or under the Tenant or subtenants, or their property, from the bursting, stopping or leaking of water, gas, sewer or steam pipes or condensers or towers; or (c) for any loss or damage resulting to the Tenant or subtenants or those claiming by, through or under the Tenant or subtenants, or their property, caused by leaks in the roof or by any other vices or defects in the foundation and structural portions of the Leased Premises, or the resulting consequences, it being understood that Tenant assumes responsibility for the condition of the Leased Premises, and Tenant and all subtenants hereby waive any and all rights and claims against Landlord, and Landlord's employees, officers, principals, agents and representatives for any such damage.

## ARTICLE XIII

### INSURANCE

Section 1. The Landlord must keep the Leased Premises insured against loss or damage by fire, windstorm and other casualty with the usual commercial extended coverage endorsement, in amounts of not less than the full insurable value of the Leased Premises above foundation walls, or such higher amounts of coverage as are required by any current or future holder of any Mortgage Loans (individually or collectively, the "Mortgage Holder"), which said insurance requirements may change from time to time.  Landlord shall also procure loss of income/rent for a period of twelve (12) months.  If required by the Mortgage Holder, Landlord shall at all times keep and maintain insurance against risk of flood in limits not less than the full insurable value of the building structure.  Any loss is payable to the Landlord and Mortgage Holder.  Further, prior to procuring said insurance pursuant to this Section, Landlord shall give Tenant the option of obtaining its own quotes for insurance; and, provided said quotes are acceptable to the Landlord , Tenant may require Landlord to obtain the insurance pursuant to the quotes obtained by Tenant.  Tenant must provide Landlord said insurance quotes ninety (90) days prior to the expiration of the then current policy or Landlord has no obligation to accept said quote from Tenant.

Section 2. Landlord also agrees that it shall keep all furniture, fixtures and equipment ("FF&E") insured against loss or damage by fire and flood any other casualty, theft, and embezzlement, with sufficient coverage amounts to pay the Replacement Cost of said FF&E lost or damaged.  In no event shall said FF&E insurance be in an amount less than $200,000.00; and, Landlord agrees that all sums collected from the adjustment or settlement of any FF&E claim shall be used to repair or replace the FF&E.  Any sums collected over and above the amount to adequately repair or replace the FF&E shall be delivered to Tenant.

Section 3. Landlord shall purchase Landlord's or Lessor's Risk Only ("LRO") general liability insurance in the amount $2,000,000.00 combined single limits for bodily injury or death to any one person, or any number of persons arising out of one occurrence and $1,000,000.00 for property damage arising out of one occurrence.

Section 4. All insurance must be in a form reasonably satisfactory to Mortgage Holder, its successors and/or assigns, and/or any future mortgagee.  Tenant shall reimburse Landlord for all premiums paid by Landlord pursuant to this Article; and, said reimbursements are to be made within thirty (30) days of demand by Landlord.

## ARTICLE XIV

### DAMAGE

Section 1. In case the Leased Premises are partially damaged by fire, windstorm or other casualty, the Landlord shall immediately proceed to repair that damage and restore the Leased Premises to substantially their condition at the time of that damage; and, said repairs shall be

started within thirty (30) days of Tenant notifying Landlord of the issues to be repaired.  In the event Landlord fails to repair the damage within the aforementioned thirty (30) day period, then Tenant may commence the repairs and deduct the costs thereof from any rents then due.

Section 2. In case the Leased Premises are damaged or destroyed by fire, windstorm or other casualty, the risk of which is covered by applicable insurance, this Lease, except as provided below, remains in full force and effect and the Landlord shall, proceeding with all reasonable dispatch, repair or rebuild the Leased Premises to substantially their condition at the time of that damage or destruction.  Under no circumstance will Landlord be entitled to terminate this Lease in the event of substantial damage.    Notwithstanding anything to the contrary set out above, Landlord shall not be obligated to spend any amounts on restoration or repairs that exceed the amount actually recovered by Landlord for that purpose from Landlord's insurance, and Landlord will not be obligated to begin its restoration work until it has received insurance proceeds sufficient for that purpose. Tenant shall give Landlord prompt, full, complete, and specific notice of any accident, fire damage, or injury whatsoever occurring in, on or to the Leased Premises.  Landlord shall have the right to immediately terminate this Lease in the event that the Leased Premises are substantially damaged (as defined below).

Section 3. In the event that the provisions of Section 1 or 2 of this Article become applicable, the monthly rent will be abated or reduced proportionally during any period in which, by reason of such damage or destruction there is substantial interference with the operation of the business of the Tenant in the Leased Premises, having regard to the extent to which the Tenant may be required to discontinue its business in the damage and ending with the completion by the Landlord of work of repair and/or reconstruction as the Landlord is obligated to do.

Section 4. The terms "substantially damaged" and "substantial damage" as used in these Articles reference damage of a character as cannot reasonably be expected to be repaired or the Leased Premises restored within 180 days from time to time that repair or restoration work would be commenced.

ARTICLE XV

TAXES

Section 1. Landlord must pay, or cause to be paid, before they become delinquent, all general and special taxes, including assessments for local improvements and other governmental charges which may be lawfully charged, assessed or imposed on the Leased Premises or any part of it ("Real Property Taxes"), provided, however, that if authorities having jurisdiction assess real estate taxes, assessments or other charges on the Leased Premises which Landlord deems excessive, Landlord may defer compliance therewith to the extent permitted by the laws of the State of Louisiana so long as the validity or amount therefore is contested by Landlord in good faith and so long as Tenant's use and possession of the Leased Premises is not disturbed or threatened.  At the Commencement Date, Tenant and subtenants represent and warrant that all Real Property Taxes are current; and, it shall be  Landlord's obligation to  pay when due all

future Real Property taxes.  Tenant shall reimburse to Landlord on an annual basis the amount of Real Property Taxes paid by Landlord, but only up to the original amount billed by the City of New Orleans, within thirty (30) days of Landlord's demand therefor.  In no event shall Tenant be responsible for late fees, penalties and/or interest charged by the City of New Orleans for any delinquent Real Property taxes.  Further, Landlord shall provide Tenant a copy of the Real Property Tax bill within five (5) days of Landlord's receipt of same.

Section 2.  Tenant and subtenants must pay all taxes which may be lawfully charged, assessed or imposed on all of Landlord's fixtures and equipment of every type and also on all of Landlord's personal property in the Leased Premises, and Tenant and subtenants must pay all license fees which may be lawfully imposed on the business of Tenant and subtenants conducted on the Leased Premises.

Section 3.  Tenant and subtenants are fully responsible for and must pay all taxes which may be lawfully charged, assessed or imposed by any city, state or federal authority similar to or in the nature of sales and use taxes, license and occupancy taxes or any other charges or taxes imposed as a result of or in connection with the operation of the business of the Tenant and subtenants.

Section 4.  Tenant and subtenants are fully responsible and liable for any taxes or assessments imposed by any city, state or federal authority for or as a result of the payment of any sums to employees, including withholding taxes and all other payroll related taxes, charges and fees.

ARTICLE XVI

EMINENT DOMAIN

Section 1. If the whole of the Leased Premises is acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of this Lease ceases and terminates as of the date of title vesting in that proceeding and all rentals must be paid up to that date and Tenant has no claim against the Landlord or the condemning authority for the value of any unexpired term of this Lease.

In any event, the Tenant has no claim against the Landlord  for the value of any unexpired term of this Lease. If any part of the Leased Premises is acquired or condemned by eminent domain for any public or quasi-public use or purpose, and in the event that partial taking or condemnation renders the Leased Premises unusable for the business of the Tenant in Tenant's reasonable business judgment, then the term of this Lease ceases and terminates as of the date of title vesting in that proceeding and the Tenant has no claim against the Landlord  for the value of any unexpired term of this Lease. In the event of a partial taking or condemnation which is not extensive enough to render the Leased Premises unsuitable for the business of the Tenant, then the Landlord may restore the Leased Premises to a condition comparable to its condition at the time of that condemnation less the portion lost in the taking, and the Lease continues in full force and effect, and fixed rent is reduced proportionately as to the portion lost in the taking.

Page 14 of  28

Section 2. In the event of a total or partial acquisition, appropriation or taking by expropriation or condemnation proceedings or by any right of eminent domain for any public or quasi-public use or purpose of the Leased Premises, the Landlord has the right to sue for, prove, collect and retain and recover the total amount of all awards, damages and proceeds which represent the Landlord's loss and the total market value of the property taken and all severance damages to the remainder, if any. Tenant has no claim against the Landlord for the value of any unexpired term of this Lease or for the value of any leasehold interest whatever.

Section 3. In the event of a taking of the Leased Premises, the minimum rent and other charges will be suspended or abated.

ARTICLE XVII

EVENTS OF DEFAULT

The following events are deemed events of default by Tenant under this Lease:

a. Tenant fails to pay any installment of the rent reserved in this Lease when due, or any payment, or any other payment or reimbursement to Landlord required in this Lease when due, and that failure continues for a period of fifteen (15) days after notice to Tenant by overnight courier to the Notice address listed below; provided, however, that Tenant shall only be entitled to this 15 day grace period up to twice in any one calendar year. If Tenant is late a third or more times in any one calendar year, Tenant shall not be entitled to any further grace period upon such occurrences in the same calendar year  Tenant shall also pay an additional penalty of $1,000.00 for each such additional late payment beyond two in any one calendar year, with such additional penalty to be in addition to the daily late fees stated in Section 1, Article III of this Lease.b. Tenant becomes insolvent, or makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors.

c. Tenant files a petition under any section or chapter of the United States Bankruptcy Code, as amended, or under any similar law or statute of the United States; or an order for relief is entered against Tenant in any proceedings filed against Tenant under a law or statute.

d. A receiver or trustee is appointed for all or substantially all of the assets of Tenant.

e. Tenant vacates all or a substantial portion of the Leased Premises, whether or not Tenant is in default of the rental payments due under this Lease.

f. Tenant fails to discharge any lien or privilege placed on the Leased Premises by its act or omission (but not including any liens or privileges solely caused by Landlord actions) within sixty (60) days after Tenant receives written notice that the lien, privilege or encumbrance is filed against the Leased Premises.

g. Tenant fails to comply with any term, provision or covenant of this Lease and does not cure that failure within sixty (60) days after written notice to Tenant.

Page 15 of  28

The following are deemed events of default by Landlord under this Lease:

a.   Landlord's failure to do, observe, keep and perform any of the terms, conditions, covenants, agreements, or provisions of this Lease required to be done, observed, kept or performed by Landlord, within sixty (60) days after written notice by Tenant to Landlord .

b.   failure of any representation to be true when deemed given hereunder.

## ARTICLE XVIII

## REMEDIES

Section 1.

On the happening of any event of default in Article XVII above and not remedied within the applicable cure period, and without in any way limiting the other rights of the Landlord, Landlord thereafter has the full right, at its option: (1) to cancel this Lease effective immediately or as of any date which Landlord may select; or (2) to declare the rent for the whole unexpired term of this Lease to at once become due and exigible and thus to at once demand and sue for the entire rent for the whole term; or (3) to proceed one or more times for past due installments of rental without prejudicing its rights to proceed later for remaining installments or to exercise any other remedy; or (4) to have recourse to any other remedy to which Landlord may be entitled by law. In the event Landlord exercises the right to cancel the Lease, then Landlord, at its discretion, has the right as soon as the cancellation is executed to reenter the Leased Premises and relet them for the price and terms as may be available without notice or other proceedings, Tenant by this agreement assenting to this right and expressly waiving the necessity of any notice to vacate, including without limitation, the notice to vacate provided by Article 4701 of the Louisiana Code of Civil Procedure.  Tenant shall pay all past due rental and all future rental owing up to and including the last day it occupies the Leased Premises, together with all damages resulting from Tenant's default including, but not limited to, leasing commissions, redecorating and refurbishing expenses  PLUS stipulated or liquidated damages for its nonperformance equal to the sum of (A) all expenses that Landlord incurs in re-entering and re-possessing the Leased Premises, putting the Leased Premises in proper repair, curing Tenant's defaults, removing the Tenant Improvements and Tenant's Property, if Landlord has elected to require such removal, making any reasonable, non-structural modifications that may be required for any new tenants, and reletting the Leased Premises, including reasonable attorney's fees and disbursements, actual sheriff's fees, and market-rate brokerage fees incurred in this re-leasing, plus (B) an amount equal to 12 months of rental.  If Tenant fails to vacate the Leased Premises on or before the date specified in the notice of termination, Landlord is entitled to expel Tenant, reenter the Leased Premises and remove all persons and property from the Leased Premises.  Such property may be removed and stored in a public warehouse or elsewhere at the sole risk, cost of and for the account of Tenant.   To the extent allowed by law, Landlord may reenter the Leased Premises without judicial process and Landlord will not be deemed guilty of trespass thereby.  Landlord will not be liable to Tenant for any loss or damage whatsoever resulting from such entry by Landlord, and

Tenant agrees to pay as rents upon demand any expenses or fees incurred or paid by Landlord as a result thereof.

b.  If Tenant vacates or abandons the Leased Premises or any part thereof or if Landlord elects to reenter as provided above or takes possession of the Leased Premises pursuant to legal proceedings, and if Landlord does not elect to terminate this Lease as provided above, then Landlord may from time to time, without terminating this Lease and without notice or legal proceedings, either recover from Tenant all rental as it becomes due, or relet the Leased Premises or any part thereof for such term or terms, and at such rental and upon such other terms and conditions and for such period of time as Landlord in its sole discretion may deem advisable, and Landlord is entitled to make alterations and repairs to the Leased Premises at Tenant's expense in order to relet. For purposes of this Section, the terms "vacate" and "abandon" apply even though Tenant may leave all or any part of its trade fixtures, furniture, furnishings, signs, merchandise or other movable property within the Leased Premises. If Landlord elects to so relet, then Landlord shall apply rent received by Landlord from such reletting: first, to the payment of any indebtedness other than rental due under this Lease from Tenant to Landlord; second, to the payment of any cost of such reletting; third, to the payment of the cost of any alterations and repairs to the Leased Premises; fourth, to the payment of rental due and unpaid under this Lease; and Landlord shall hold the residue, if any, and apply same in payment of future rental as the same may become due and payable under this Lease. Should that portion of such rent actually received from such reletting during any month, which is applied to the payment of rental, be less than the rental payable during that month by Tenant under this Lease, then Tenant shall pay such deficiency to Landlord immediately and monthly, but Landlord shall not be obligated to account to Tenant for any excess rent so received. Tenant shall also pay to Landlord, as soon as ascertained, any costs and expenses incurred by Landlord in such reletting or in making such alterations and repairs not covered by the rents received from such reletting of the Leased Premises. Tenant's obligations under this Lease will not be diminished by reason of any failure by Landlord to relet the Leased Premises or by any failure by Landlord to collect any rent due upon such reletting. Reentry or taking possession of the Leased Premises by Landlord pursuant to this subparagraph (b) will not be construed as an election to terminate this Lease, nor will it cause a forfeiture of rental or other charges remaining to be paid during the balance of the Term, unless a written notice of such election to terminate this Lease is given to Tenant. Notwithstanding any reletting without termination by Landlord because of any default by Tenant, Landlord may at any time after such reletting elect to terminate this Lease for any such default.

c.  In addition to, and not instead of the above remedies, if Tenant fails to perform any of its obligations under this Lease when its performance is due, then Landlord will have the right, but not the obligation, to pay all sums and take all actions that are necessary or desirable to perform Tenant's obligations. If Landlord elects to perform Tenant's obligations, then Tenant will reimburse Landlord for the costs incurred by Landlord in doing so, plus an additional 15% of these costs to reimburse Landlord for its administrative expenses, within thirty (30) days after demand. The performance by Landlord of Tenant's obligations will not be construed as a modification or waiver of any provision of this Lease, and these obligations will remain the obligations of Tenant. In addition, neither the performance of Tenant's obligations by Landlord nor Landlord's failure to

Page 17 of 28

perform Tenant's obligations will preclude Landlord from exercising any of its other rights or remedies set out in this Article by reason of Tenant's default.

     d.    In the event that Landlord elects to commence appropriate Louisiana foreclosure proceedings, Landlord may cause the Tenant's Property, or any part or parts thereof, to be immediately seized wherever found, and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying the Tenant or placing the Tenant in default, all of which are expressly waived. For purposes of foreclosure under Louisiana executory process procedures, the Tenant confesses judgment and acknowledges to be indebted unto and in favor of Landlord, up to the full amount of all outstanding obligations, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted under applicable Louisiana law, the Tenant additionally waives: (i) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (ii) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (iii) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (iv) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Should any or all of the Tenant's Property be seized as an incident to an action for the recognition or enforcement of this Lease, by executory process, sequestration, attachment, writ of fieri facias or otherwise, the Tenant hereby agrees that the court issuing any such order shall, if requested by Landlord, appoint Landlord, or any agent designated by Landlord, or any person or entity named by Landlord at the time such seizure is requested, or any time thereafter, as Keeper of the Tenant's Property as provided under La. R.S. 9:5136, et seq. Such a Keeper shall be entitled to reasonable compensation. The Tenant agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall form part of the obligations. Should it become necessary for Landlord to foreclose under this Lease, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, as applicable.

    Failure of Landlord to exercise any rights in the event of default is not considered a waiver of those rights.

    Section 2.

     a.    On the happening of any event of default in Article XVII above and not remedied within the applicable cure period, and without in any way limiting the other rights of the Tenant, Tenant thereafter has the full right, at its option: (1) to remedy such default or breach if it pertains to the Leased Premises; or (2) to pursue the remedy of specific performance, injunction and/or mandamus; or (3) seek money damages for Landlord's failure to discharge its obligations under the Lease.

b. Anything in this Lease to the contrary notwithstanding, Landlord's liability to Tenant under this Lease for damages, breach of lease, or otherwise, shall be limited to and shall in no event exceed Landlord's equity interest in the Leased Premises, and Tenant will look only to the interest of Landlord in the Leased Premises for the satisfaction of any judgment for the payment of money as a result of any negligence of or default of Landlord or other liability of Landlord under this Lease. No other property or assets of Landlord or any of its officers, directors, stockholders, partners, members, employees or agents, shall be subject to levy, execution or other procedures for the satisfaction of Landlord's liability under this Lease or with respect to the Leased Premises, and in no event shall any liability of Landlord whatsoever extend to Landlord's officers, directors, stockholders, partners, members, employees, affiliates, or agents. In addition, in no event shall Landlord ever be liable to Tenant for any indirect or consequential damages.

## ARTICLE XIX

### MISCELLANEOUS PROVISIONS

Section 1. Waiver and Reservations. Failure on the part of the Landlord to complain of any action of nonaction on the part of the Tenant or subtenants, no matter how long that failure to complain may continue, is never deemed to be a waiver by the Landlord of any of Landlord's rights under this Lease. Further, it is covenanted and agreed that no waiver at any time of any of the provisions of this Lease by the Landlord is construed as a waiver of any of the other provisions under this Lease and that a waiver at any time of any of the provisions of this Lease is not construed as a waiver at any subsequent time of the same provisions. The consent or approval by the Landlord to or of any action by the Tenant or subtenants requiring the Landlord's consent or approval is not deemed to waive or render unnecessary the Landlord's consent or approval to or for any subsequent similar act by the Tenant or subtenants.

Section 2. Covenant of Quiet Enjoyment. The Tenant, subject to the terms and provisions of this Lease, on payment of the rent and on observing, keeping and performing all of the terms and provisions of this Lease on its part to be observed, must lawfully, peaceably and quietly have, hold, occupy and enjoy the Leased Premises during its term without hindrance or ejection by any persons lawfully claiming under the Landlord; but it is understood and agreed that this covenant and any and all other covenants of the Landlord contained in this Lease are binding on the Landlord and Landlord's successors only with respect to breaches occurring during its and their respective ownership of the Landlord's interest under this agreement. The Leased Premises are subject to all title matters that are of record and that would be shown by a current survey and all other encroachments, servitudes, overhangs, title and zoning restrictions, ordinances, and other matters of record, as well as the occupancy of the parties presently occupying portions of the Leased Premises, namely, Anwar Gaber doing business as Wash World Louisa LLC, and Noma Abel, doing business as Mac Beauty LLC and none of these such matters shall constitute a denial of Tenant's quiet or peaceable possession. Nonetheless, Landlord shall cooperate with Tenant in evicting Anwar Gaber, doing business as Wash World Louisa LLC, and Noma Abel, doing

business as Mac Beauty LLC. Landlord reserves the right to grant such servitudes, rights, dedications, and restrictions as Landlord may deem necessary or desirable from time to time, so long as these rights granted do not interfere with the use of the Leased Premises by Tenant.

Section 3. Suppliers and Mechanic's Liens or Privileges. The Tenant agrees to pay promptly, when due, all amounts of money that may become due for, or purporting to be due for, any labor, services, materials, supplies or equipment alleged to have been furnished to or for the Tenant and subtenants, in, on or about the Leased Premises and which may be secured by any mechanic's, materialman's or other liens or privileges against the Leased Premises and/or the Landlord's interest in them, and will cause each lien or privilege to be fully discharged and released at the time the performance of any obligation secured by any lien or privilege matures and/or becomes due, provided, however, that if the Tenant desires to contest any lien or privilege it may do so but only on the condition that it immediately post bonds against any liens or privileges and should the Tenant fail to do so, the Landlord has the right to bond or pay against any lien or privilege and the Tenant is obligated to pay for that bond or lien or privilege costs.

Section 4. Invalidity of Particular Provisions. If any term or provision of this Lease or its application, to any person or circumstances, to any extent, is invalid or unenforceable, the remainder of this Lease, or the application of that term or provision, to persons or circumstances other than those as to which it was held invalid or unenforceable, will not be affected by that invalidity, and each term and provision of this Lease will be valid and be enforced to the fullest extent permitted by law.

Section 5. Provisions Bind, Etc. Except as otherwise expressly provided in this Lease, the terms of this Lease are binding on and will inure to the benefit of the successors and assigns, respectively, of the Landlord and the Tenant and subtenants. Each term and each provision of this Lease to be performed by the Tenant, subtenants, and Landlord is construed to be both a covenant and a condition. The reference contained to successors and assigns of Tenant and subtenants is not intended to constitute consent to assignment by Tenant, with the exception of the permitted assignment in Article VIII of this Lease, but as reference only to those instances in which the Landlord may hereafter give prior written consent to a particular assignment as required by this Lease. Words of any gender used in this Lease are held to include any other gender, and words in the singular number are held to include plural when the sense requires.

Section 6. Governing Law. This Lease is governed exclusively by its provisions and by the laws of the State of Louisiana, as those laws may from time to time exist.

Section 7. Notices. Whenever by the terms of this Lease notice is or may be given either to the Landlord or to the Tenant, that notice must be in writing and must be sent by either certified or registered mail, postage prepaid, or via overnight delivery by commercial courier, as follows:

A. If intended for the Landlord, it must be addressed to Landlord at 4817 Prytania Street, New Orleans, LA 70115, or such other address furnished as provided above (or to another

Page 20 of 28

address or addresses as may from time to time subsequently be designated by the Landlord by similar notice);

B. If intended for the Tenant, it shall be addressed to it at 3872 S. Inwood Avenue, New Orleans, Louisiana 70131(or such other address or addresses as may from time to time subsequently be designated by the Tenant by similar notice).

Section 8. Status Report. Recognizing that both parties may find it necessary to furnish third parties, such as accountants, banks, mortgagees or the like, the current status of performance under this Lease, either party on the written request of the other made from time to time will, with reasonable dispatch, furnish a written statement on the status of any matter pertaining to this Lease.

Section 9. INTENTIONALLY BLANK

Section 10. Memorandum of Lease. Landlord agrees to execute a Memorandum of Lease in a form recordable and reasonably satisfactory to Tenant's counsel, which Memorandum of Lease shall be recorded in the public records of the City of New Orleans. In no event will that Memorandum of Lease set forth the rental or other charges payable by the Tenant under this Lease, but it shall contain a provision reasonably satisfactory to Tenant's counsel outlining Tenant's Option to Purchase the Leased Premises. Any Memorandum of Lease must expressly state that it is executed pursuant to the provisions contained in this Lease, and it is not intended to vary the terms and conditions of this Lease.

Section 11. Withhold Consent. When the right or approval of consent is given to a party pursuant to this Lease, that party shall not unreasonably withhold, condition or delay its consent unless this Lease expressly provides otherwise.

Section 12. No Brokers. Both parties acknowledge that this agreement was negotiated and consummated without any realtor, broker, finder or other agent and therefore, there is not due to any party any fees, charges or commissions.

Section 13. Holding Over. In the event that the Tenant remains in possession of the Leased Premises after the expiration of the term, or any renewal or extension thereof, of this Lease without objection by the Landlord or by any written agreement otherwise providing, it is deemed a tenancy from month to month, and otherwise subject to the provisions of this Lease as far as applicable, except that the rental due hereunder shall be 1.5 times the rental due payable immediately prior to such expiration.

Section 14. Landlord's Agreement not to Sell or Lease. Except as expressly provided in Article XI, Section 2 above, Landlord agrees that during the term of this Lease, and any renewal or extension thereof, and provided Tenant is not in default hereunder, or in the event of any default said default has been cured subsequent to the required notice by Landlord, it is expressly prohibited from selling, marketing to sell, leasing, or marketing to lease the Leased Premises; and

Page 21 of 28

Landlord shall not entertain offers from third parties relative to selling, purchasing, leasing, or marketing to lease the Leased Premises.

Section 15. Additional Rental. All amounts payable to Landlord by Tenant which are not specifically characterized as rent are deemed "additional rental" under this Lease, with the same remedies as Landlord to enforce the collection of those amounts as Landlord has for the collection of minimum monthly rental.

Section 16.  Not a Public Dedication. Nothing contained in this Lease is deemed a gift or dedication of any portion of the Leased Premises to the general public or for any public purpose whatsoever, is it the intention of the parties to this agreement that this Lease is strictly limited to and for the purpose expressed in it.

Section 17. Encumbrances. This Lease is made and accepted subject to any Mortgage Loan in existence from time to time as permitted by Article IV herein, and all other matters of record.

Section 18. Paragraph Headings. The paragraph headings throughout this instrument are for convenience and reference only, and the words contained in them in no way explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Lease.

Section 19. Whole Agreement. This Lease contains all the agreements made between the parties and may not be modified orally or in any manner other than by an agreement in writing signed by the parties or their successors or assigns.

Section 20. Surrender of Premises. At the expiration of the tenancy created by this agreement, Tenant must surrender the Leased Premises in the same condition as the Leased Premises were in on delivery of possession to the Tenant under this Lease, reasonable wear and tear accepted, and damage by unavoidable casualty accepted, and Tenant must surrender all keys for the Leased Premises to Landlord at the place then fixed for the payment of rent and Tenant must inform Landlord of all combinations on locks, safes and vaults, if any, in the Leased Premises. Tenant must remove all of its portable fixtures and any alterations or improvements which Landlord requests to be removed before surrendering the Leased Premises as described above and Tenant must repair any damages to the Leased Premises caused by that removal. Tenant's and subtenants' obligation to observe or perform this covenant survives the expiration or other termination of the term of this Lease.

Section 21. Accord and Satisfaction. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent stipulated in this Lease is deemed to be other than on account of the earliest stipulated rent, nor will any endorsement or statement on any check or any letter accompanying check or payment as rent be deemed an accord and satisfaction, and Landlord may accept that check or payment without prejudice to Landlord's right to recover the balance of the rent or pursue any other remedy in this Lease provided.

Section 22. Solely for Benefit of Parties. It is expressly understood and agreed that this Lease and the covenants contained in it are for the sole benefit of Landlord and Tenant, their successors

and assigns, and that all rights of action for any breach or any covenant contained in this Lease are reserved to those parties; and it is further expressly understood and agreed that those parties may by mutual agreement, alter, amend, modify or revoke or rescind this Lease or any covenant contained in it in any writing and at any time.

Section 23. Tenant and Landlord Defined. The words "Tenant" and "Landlord" are deemed and taken to mean each and every person or party mentioned as Tenant or Landlord in this Lease, whether one or more; and if there are more than one Tenant, each are jointly and severally liable and liable in solido for the performance and observance of all the terms, conditions and covenants contained in this Lease, and any notice required or permitted by the terms of this Lease may be given by or to anyone. The use of the neuter singular pronoun to refer to Landlord or Tenant is deemed a proper reference even though Landlord or Tenant may be an individual, partnership, limited liability company or corporation, or a group of two or more individuals, corporations, limited liability companies, or partnerships. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to either corporations, associations, partnerships, limited liability companies or individuals, males or females, are in all instances assumed as though in each case fully expressed.

Section 24. Option to Purchase. For the consideration recited herein, the receipt and sufficiency of which is hereby acknowledged, and subject to the following terms and conditions, during the term of this Lease Landlord grants to Tenant the exclusive right, privilege and option to buy and purchase, free from all mortgages, liens and other encumbrances, with limited warranty of title as to Landlord's own acts, for the price and upon the terms hereinafter set forth, the Leased Premises as follows:

a) In the event Tenant exercises his option herein granted, Tenant shall notify Landlord in writing of the exercise of said option by delivering such written notice to Landlord as provided in the Notice section above;

b) This agreement is NOT an Agreement to Purchase; in the event that Tenant notifies Landlord of Tenant's intention to exercise said option to purchase then, in that event, the parties agree to execute an Agreement to Purchase to include the terms and conditions listed in this Section;

c) If this option (the "Tenant's Purchase") is exercised by Tenant, the Purchase Price shall be $2,600,000.00 (the "Purchase Price"); provided, however, that Tenant shall be entitled to a credit toward such purchase price in the amount of the "principal" portion of each monthly rent payment hereunder    according to the attached amortization schedule,      except Tenant understands and agrees that no "credit" toward such Purchase Price shall be given for any portion of the Interim Rent payments. This option to purchase is only valid and offered for the first 15 years of this lease.

d) In the event that Tenant exercises this option, it is agreed that the closing shall take place at the office of True Title, Inc., on a date mutually agreeable to Landlord and Tenant (the "Closing Date"); the Closing Date shall be no later than the 60th day following the date on which said option was exercised by Tenant; possession of the Leased Premises shall be delivered on the Closing Date; there shall be no due diligence period and/or contingencies to Tenant's obligation to close once the option granted herein is exercised, except for any title issues that may have arisen since the commencement of the Lease.

e) Such Purchase Option must be exercised at least six (6) months prior to the termination of the primary term . In no event shall the option to purchase be exercised less than six months before the termination of the primary term of the Lease

f) Tenant shall be responsible for all closing costs except that Landlord shall pay for the customary seller charges, including certificates, the Document Transaction Tax, and any other customary seller charges;

g) This option to purchase may only be assigned by Tenant to an entity which is affiliated with Tenant. , and in which Nidal Jaber is a manager, member, officer, director or shareholder, provided, however, that any assignee cannot include any of the Prohibited Parties or any entity owned in whole or in part by any of the Prohibited Parties.  If Landlord notifies Tenant of a default under this Lease Tenant shall have the right to exercise this option during the applicable time period provided to Tenant to remedy said default

Section 25.  Force Majeure.  If Landlord is delayed or prevented from doing or performing any act or thing required hereunder by reason of strikes, lock-outs, hurricanes, weather conditions, breakdown, accident, casualties, acts of God, labor troubles, inability to procure materials, failure of supply, inability by the exercise of reasonable diligence to obtain supplies, parts, employees or necessary services, failure of power, governmental laws, orders or regulations, actions of governmental authorities, riots, insurrection, war or other causes beyond the reasonable control of Landlord, or for any cause due to any act or neglect of Tenant or its servants, agents, employees, licensees, or any person claiming by, through or under Tenant, then Landlord shall not be liable or responsible for any such delays, the doing or performing of such act or thing shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

If Tenant is delayed or prevented from doing or performing any act or thing required hereunder by reason of strikes, lock-outs, hurricanes, weather conditions, breakdown, accident, casualties, acts of God, labor troubles, inability to procure materials, failure of supply, inability by the exercise of reasonable diligence to obtain supplies, parts, employees or necessary services,

Page 24 of 28

failure of power, governmental laws, orders or regulations, actions of governmental authorities, riots, insurrection, war or other causes beyond the reasonable control of Tenant, or for any cause due to any act or neglect of Landlord or its servants, agents, employees, licensees, or any person claiming by, through or under Landlord, then Tenant shall not be liable or responsible for any such delays, the doing or performing of such act or thing shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

Section 26.  Construction.  The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and there shall be no inference, by operation of law or otherwise, that any provision of this Lease shall be construed against either Landlord or Tenant.  Section headings in this Lease are for convenience only and are not to be construed as part of this Lease or in any way defining, limiting or amplifying the provisions thereof.  Unless the content otherwise requires, whenever the singular number is used herein, the same shall include the plural and the use of masculine or neuter genders herein shall include the masculine, feminine and neuter genders.

Section 27.  Notwithstanding that the term may commence on a date subsequent to the execution of this Lease by Landlord and Tenant, the parties intend that each shall have vested rights immediately upon the signing of this instrument and that this instrument shall be fully binding and in full force and effect from and after the execution hereof by both Landlord and Tenant.  If the term shall not, in fact, have commenced within one (1) year from the date of full execution of this Lease, then in addition to all of the other rights and remedies of Landlord set out in this Lease, and without depriving Landlord of any of these rights or remedies, this Lease shall be automatically null and void and no further force or effect.

Section 28.  No Offer.  The presentation of this Lease to Tenant does not constitute an offer. This Lease shall not be valid or binding against any party unless and until it is executed by all parties.

The Landlord and Tenant have executed this instrument effective as of the day and year first above written. This instrument may be executed in counterpart copies, each of which counterpart copies are deemed as original for all purposes.

Page 25 of 28

TENANT:

WAGNERS CHEF LLC

By: _____

Name: _Nidal Jaber_

Title: _member_

LANDLORD:

WAGNER WORLD LLC

By: _____

Name: _Scott Wolfe S._

Title: _Member_

Page 26 of 28

Exhibit A

LEASED PREMISES

ONE CERTAIN PORTION OF GROUND, together with all of the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, advantages, and appurtenances thereunto belonging or in anywise appertaining , situated in the STATE OF LOUISIANA, PARISH OF ORLEANS, THIRD MUNICIPAL DISTRICT OF THE CITY OF NEW ORLEANS, in that part thereof known as SQUARE NO. 39 OF GENTILLY WOODS, which square is bounded by Louisa Drive, Stephen Girard Avenue, Congress Drive, and New Orleans-Chef Menteur Highway, designated as LOT S-2 on a plan of resubdivision of original Plot S into LOTS S-1, S-2, S-3, and S-4, dated March 13, 2001, revised July 3, 2001, by Gilbert, Kelly, and Couturie, Inc., recorded August 17, 2001 as Conveyance Office Instrument Number 222368, which LOT S-2 measures as follows, to-wit:

Commencing at the point of the intersection of the easterly right of way line of Louisa Drive and the northerly right of way line of New Orleans-Chef Menteur Highway, the point of beginning; proceed N 24 degrees 38'36" W, along the easterly right of way line of Louisa Drive, a distance of 250 feet to a point; thence N 65 degrees 21'24" E, a distance of 250 feet to a point; thence S 24 degrees 38'36" E, a distance of 250 feet to a point on the northerly right of way line of New Orleans-Chef Menteur Highway; thence S 65 degrees 21'24" W, along the northerly right of way line of New Orleans-Chef Menteur Highway, a distance of 250 feet to a point, the point of beginning.

The improvements thereon bear the Municipal Number: 4301 Louisa Street, New Orleans, Louisiana 70126, with alternative address of 4601 Chef Menteur Highway, New Orleans, Louisiana 70126

SUITE A refers to the portion of the Leases Premises presently used for a convenience store and gas station.

Page 27 of 28

Exhibit B

PROHIBITED PARTIES

Omar and/or Fatmah Hamdan and/or Robert Harvey and/or any entity in which any of the Hamdan's and/or Harvey may have an interest.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                          DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____          _____
                                                          DEPUTY CLERK

<u>RULE TO SHOW CAUSE</u>

Considering the foregoing Exception of No Cause of Action filed by Jadallah Enterprises,

LLC and Ahmed 1, LLC, the facts and the law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Brothers Petroleum,

LLC show cause on the _____ day of _____, 2017 at __:_____ a.m./p.m. why the

Exception of No Cause of Action should not be granted.

New Orleans, Louisiana, this _____ day of February, 2017.


                                   _____
                                               JUDGE


<u>PLEASE SERVE:</u>

BROTHERS PETROLEUM, LLC
Through its counsel of record,
Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

58/14157/D2/03                                   3

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                               DIVISION "C-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____

                                    DEPUTY CLERK

### ANSWER AND DEFENSES TO PETITION FOR REVOCATORY ACTION, FOR DAMAGES FROM UNFAIR TRADE PRACTICES OR ALTERNATIVELY FOR UNJUST ENRICHMENT

NOW INTO COURT, through undersigned counsel, comes Defendant, Wagners Chef LLC, ("Wagners Chef") who presents the following response to the Petition for Revocatory Action, For Damages from Unfair Trade Practices or, Alternatively, for Unjust Enrichment ("Petition") filed by Brothers Petroleum, LLC ("Brothers") and in support thereof represents as follows:

1.

Wagners Chef admits that it is a Louisiana limited liability company and that it is domiciled in Orleans Parish, Louisiana. In all other respects, the allegations of Paragraph I of the Petition do not assert allegations against Wagners Chef and so no response is required. Out of an abundance of caution, Wagners Chef denies the remaining allegations of Paragraph I of the Petition.

2.

Wagners Chef denies the allegations of Paragraph II of the Petition as written. In further response, Wagners Chef admits that it previously operated a gas station / convenience store at the property located at 4301 Louisa Street, New Orleans, Louisiana ("Property"). However, Wagners Chef sold all of its assets on or about November 8, 2016 to Empire Express, LLC and, consequently, Wagners Chef no longer operates such business.

3.

Wagners Chef admits that the Property is properly described in Paragraph III of the Petition.

58/14157/D2/02

1

4.

Wagners Chef denies the allegations of Paragraph IV of the Petition. In further response, Wagners Chef admits that a contract existed between B-Express Louisa, LLC ("B-Express") and Brothers related to the purchase of Exxon branded motor fuel products ("Contract"), said Contract being a written document is the best evidence of its terms and conditions.

5.

Wagners Chef denies the allegations of Paragraph V of the Petition. Wagners Chef acknowledges that the Louisiana Fourth Circuit Court of Appeal determined that the Contract was binding on Wagners Chef.

6.

Wagners Chef admits that the Contract was filed in the public record in the mortgage records of Orleans Parish with the referenced instrument numbers. However, Wagners Chef specifically denies that the alleged Contract was properly indexed and/or properly filed into the public records insofar as it was not locatable in conjunction with a search of the Property or Wagners Chef. In all other respects, Wagners Chef denies the allegations of Paragraph VI of the Petition.

7.

Wagners Chef admits that it initiated a Declaratory Judgment Action in the Civil District Court for the Parish of Orleans, Cause of Action No. 2014-7135 ("Declaratory Judgment Litigation"). As a written document, the Petition, as amended, filed in the Declaratory Judgment Litigation and any reconventional demands therein, are the best evidence of their terms, conditions and/or contentions. In all other respects, the allegations of Paragraph VII of the Petition are denied.

8.

Wagners Chef admits that its counsel sent correspondence to counsel for Brothers on April 13, 2015, which, as a written document is the best evidence of its terms and conditions.

9.

Wagners Chef admits that, at all relevant times, its sole member was Jadallah Saed.

10.

Wagners Chef admits that the Louisiana Fourth Circuit Court of Appeal issued a ruling on or about November 7, 2015 in Case No. 2015-C-0928, reversing the trial court's ruling and finding that the Contract was binding on Wagners Chef. That ruling, as a written document, is the best

evidence of its contents.

11.

Wagners Chef admits that a Consent Judgment was entered on or about May 12, 2016 in the Declaratory Judgment Litigation which, as a written document, is the best evidence of its terms and conditions.

12.

Wagners Chef admits that it, as tenant, had entered into a lease with Wagner World, LLC ("Wagner World"), as landlord, for the Property ("Lease"). The Lease, as a written document, is the best evidence of its terms and conditions. Wagners Chef denies all other allegations of Paragraph XXII of the Petition.

13.

Wagners Chef denies the characterization of the Lease because the Lease, as a written document, is the best evidence of its terms and conditions.

14.

Wagners Chef admits that an amendment to the Lease was entered in 2015 and that a notice of the amended Lease was filed into the public record. Wagners Chef denies the characterization of the terms of the Lease, both before and after the amendment, because the Lease (as amended), as a written document, is the best evidence of its terms and conditions. In all other respects, Wagner Chef denies the allegations of Paragraph XIV.

15.

Wagners Chef denies the allegations of Paragraph XV of the Petition as written. In further response, on or about July 7, 2016 Wagner World sold the Property to Jadallah Enterprises, LLC ("Jadallah Enterprises") through an arms-length transaction. As a result of that sale, Wagner World no longer held an interest in the Property. As a result of this change in circumstances, Wagners Chef and Wagner World executed an agreement entitled Cancellation of Lease which was filed into the Public Record on or about July 8, 2016 under Instrument Number 602321. In all other respects, Wagners World denies the allegations of Paragraph XIV of the Petition.

16.

Mr. Saed denies the allegations of Paragraph XV of the Petition as written. To the extent that the allegations of Paragraph XV reference written documents, including the Cancellation of Lease, those documents are the best evidence of their terms and conditions.

17.

Wagners Chef admits that Wagner World entered into an Act of Cash Sale with Jadallah Enterprises, LLC ("Jadallah Enterprises") on or about July 7, 2016 which was subsequently filed into the public record as Instrument Number 602320. Said Act of Cash Sale, as a written document, is the best evidence of its terms and conditions.

18.

Wagners Chef admits, on information and belief, that Jadallah Enterprises is a Louisiana limited liability company which was created in April of 2015. In all other respects, the allegations of Paragraph XVIII are denied.

19.

Wagners Chef admits that Jadallah Enterprises, as landlord, entered into a lease of the Property with Ahmed 1, LLC ("Ahmed 1"), as tenant, on or about July 7, 2016 ("Ahmed Lease"). In further response, Mr. Saed admits that Ahmed 1 is a Louisiana limited liability company and that Mr. Saed is the sole member of Ahmed 1. In all other respects, Wagners Chef denies the allegations of Paragraph XIX of the Petition.

20.

Wagners Chef admits, on information and belief, that Jadallah Saed is the sole member of both Jadallah Enterprises and Ahmed 1.

21.

Wagners Chef admits that a notice of the Ahmed Lease was recorded in the public record bearing instrument number 603970. In all other respects, Wagners Chef denies the allegations of Paragraph XXI of the Petition. In further response, Wagners Chef, as tenant, entered into a sublease of a portion of the Property with Ahmed 1, as landlord on or about July 7, 2016. Consequently, both before and after the transaction of July 7, 2016, Wagners Chef held a leasehold interest in the Property.

22.

Wagners Chef admits that it entered into an Asset Purchase Agreement with Empire Express, LLC ("Empire Express") dated November 8, 2016 which, as a written document, is the best evidence of its terms and conditions. Wagners Chef specifically denies the allegation that the Asset Purchase Agreement was for "no consideration o[r] for a grossly inadequate consideration." Rather, the Asset Purchase Agreement was for reasonable consideration. In further response,

Wagners Chef admits, on information and belief, that Expire Express, as tenant, entered into a Triple Net Lease with Ahmed 1, as landlord for a portion of the Property. Again, this Triple Net Lease, as a written document, is the best evidence of its terms and conditions. Wagners Chef denies all other allegations of Paragraph 22 of the Petition, including but not limited to claims that the referenced transactions caused Wagners Chef to be insolvent or increased Wagners Chef's insolvency.

23.

Wagners Chef denies the allegations of Paragraph XXIII of the Petition.

24.

Wagners Chef denies the allegations of Paragraph XXIV of the Petition.

25.

Wagners Chef denies the allegations of Paragraph XXV of the Petition.

26.

Wagners Chef denies the allegations of Paragraph XXVI of the Petition.

27.

Wagners Chef denies the allegations of Paragraph XXVII of the Petition.

28.

Wagners Chef denies the allegations of Paragraph XXVIII of the Petition.

29.

Wagners Chef, on information and belief, admits that Jadallah Enterprises, as mortgagor, Ahmed 1 as borrower, and First NBC Bank ("Bank"), as mortgagee, entered into a Multiple Indebtedness Mortgage. Said mortgage is a written document and, as such, it is the best evidence of its terms and conditions.   In all other respects, Wagners Chef denies the allegations of Paragraph XXIX of the Petition.

30.

Wagners Chef, on information and belief, admits that the Bank entered into an Assignment of Leases and Rents with Jadallah Enterprises pertaining to the Property. Said agreement, as a written document, is the best evidence of its contents. In all other respects, Wagners Chef denies the allegations of Paragraph XXX of the Petition.

31.

Wagners Chef denies the allegations of Paragraph XXXI of the Petition.

32.

Wagners Chef denies the allegations of Paragraph XXXII of the Petition.

33.

Wagners Chef denies the allegations of Paragraph XXXIII of the Petition.

34.

Wagners Chef denies the allegations of Paragraph XXXIV of the Petition.

35.

Wagners Chef denies the allegations of Paragraph XXXV of the Petition.

36.

Wagners Chef denies the allegations of Paragraph XXXVI of the Petition.

37.

Wagners Chef denies the allegations of Paragraph XXXVII of the Petition.

38.

Wagners Chef denies the allegations of Paragraph XXXVIII of the Petition.

## AFFIRMATIVE DEFENSES

AND NOW, in further response to Plaintiff's Petition, Wagners Chef asserts the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Petition fails to state a cause of action on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiff's Petition are barred by applicable statutes of limitation, prescriptive and peremptive periods and contractual time limitation provisions.

### THIRD AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiff's Petition are barred under the doctrines of waiver, ratification, and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Plaintiffs Petition are barred by the principle of unclean hands.

WHEREFORE, Defendant, Wagners Chef, prays that this Answer and Defenses be deemed good and sufficient and that after due proceedings are held that this Court enter judgment in its favor and against Plaintiff, Brothers Petroleum, LLC, dismissing all claims asserted in the

58/14157/D2/02

6

Petition with prejudice and at Brothers Petroleum, LLC's cost. Further, Wagners Chef prays for all other relief to which it may be entitled under the law and the facts.

Respectfully Submitted,

**ELKINS, P.L.C.**

THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA  70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys for Wagners Chef LLC, Jadallah Enterprises LLC, and Ahmed 1 LLC

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record, including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed, this _____ day of February, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Kyle Sclafani
4130 Canal Street
New Orleans, LA 70119

Bradley Aldrich
Smiley Law Firm, LLC
365 Canal St., Suite 1680
New Orleans, LA 70130

DeWayne L. Williams
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170

Thomas M. Beh

COPY

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA          2017 MAR 15 P 1:30

CASE NO. 2016-12416                    DIVISION "G-11"

CIVIL
DISTRICT COURT

BROTHERS PETROLEUM, LLC

V.

WAGNERS CHEF, LLC, et al.

FILED:_____     _____

DEPUTY CLERK

## PEREMPTORY EXCEPTION
## OF NO CAUSE OF ACTION

NOW INTO COURT, through undersigned counsel, comes EMPIRE EXPRESS,

LLC Defendant, and in taking exception to the Petition filed by the Plaintiff in this

matter, respectfully submits to the Court that Plaintiff has no cause of action against it.

The allegations in Plaintiff's Petition are insufficient as a matter of law to assert a claim

of Unfair Trade Practices, Unjust Enrichment, or a revocatory action against EMPIRE

EXPRESS, LLC.   Defendant submits that his peremptory exceptions of no cause of

action should be granted and Plaintiff's Petition dismissed for the reasons set forth in the

accompanying memorandum.

Respectfully Submitted

_____
KYLE S. SCLAFANI (Bar No. 28219
4130 Canal St.
New Orleans, LA 70119
(504) 875-4079
(504) 910-4324 (facsimile)
**Attorney for EMPIRE EXPRESS, LLC**

## ORDER

CONSIDERING THE FOREGOING, it is ordered that Plaintiff show cause on

the 31st day of _March_, 2017 at 9 o'clock, _a_ :m, in the Civil District

Courthouse in New Orleans, Louisiana, why these Exceptions should not be granted and

Plaintiff's petition dismissed at its costs.

Signed this ____ day of ___MAR 1 5 2017___ 2017 in New Orleans, Louisiana.

_____
Tiffany M. Collins, Minute Clerk
Division "G"
DISTRICT JUDGE OF THE COURT

A TRUE COPY

_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO. 2016-12416                                    DIVISION "C-11"

BROTHERS PETROLEUM, LLC

V.

WAGNERS CHEF, LLC, et al.

FILED:_____     _____
                                                  DEPUTY CLERK


**MEMORANDUM IN SUPPORT OF**
**EXCEPTIONS OF NO CAUSE OF ACTION**


MAY IT PLEASE THE COURT:

Defendant EMPIRE EXPRESS, LLC ("Empire") submits this Memorandum in

Support of its Peremptory Exception of No Cause of Action with respect to the Petition

for Revocatory Action, Unfair Trade Practices, and Unjust Enrichment (the "Petition")

filed by Brothers Petroleum, LLC ("Brothers"). Empire has no contractual relationship

with Brothers. Brothers has plead insufficient facts to support a claim of Unfair Trade

Practices or Unjust Enrichment against Empire. Accordingly, Brothers' claims against

Empire should be dismissed as a matter of law.

**BACKGROUND**

The background section contained in the Memorandum in Support of Exception

of No Cause of Action filed by co-defendants Jadallah Enterprises, LLC and Ahmed 1,

LLC accurately describe the facts of this case and are adopted by Empire for ease of

reference.

Empire is a sub-lessee of a gas station/convenience store located at 4301 Louisa

St. (the "Property"), having entered into a sub-lease with Ahmed 1, LLC. Ahmed 1, LLC

leases the property from Jadallah Enterprises, LLC. Empire also purchased all of the

assets of Wagner Chef, LLC in an Act dated November 8, 2016. Empire currently

operates the gas station and convenience store located at the Property.

The Petition filed by Brothers contains no allegations suggesting a contractual

relationship or quasi-contractual relationship exists between itself and Empire. There are

2

no facts alleged in the Petition to support any of the causes of action asserted by Brothers against Empire.

## ARGUMENT

The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. The exception is triable on the face of the papers, and for the purpose of determining the issues raised by the exception, the court must presume that all well-pleaded facts in the petition[1] are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff. *Eclipse Telecommunications Inc. v. Telnet Int'l Corp.,* 01-271 (La. App. 5 Cir. 10/17/01), 800 So. 2d 1009, 1010-11.

1. **Brothers' Petition Fails To State a Claim for a Revocatory Action.**

Plaintiff's Petition fails to allege the necessary elements[2] required to prove a revocatory action as it pertains to Empire.     Brothers has no right to annul the sublease between Empire and Ahmed 1, or purchase agreement between Empire and Wagner Chef, because Empire was not an obligor to Brothers in relation to any of the rights and/or property subject of those transactions.   Brothers' Petition lacks the necessary allegations to state such a claim because such facts do not exist.   Thus, Brothers' revocatory action against Empire should be dismissed as its Petition fails to state a cause of action.

2. **Brothers' Petition Fails To State a Claim for Unfair Trade Practices.**

In order state a claim under the Louisiana Unfair Trade Practices Act ("LUTPA"), Brothers must show the conduct of Empire "offended public policy and is immoral,

---

[1] However, it is well settled that any annexed documents or exhibits are considered part of the petition, with all well-pled allegations of fact accepted as true. *Roy O. Martin Lumber Co. v. Saint Denis Securities Co., Inc.,* 225 La. 51, 72 So.2d 257, 258-59 (La.1954); *Atchley v. Atchley,* 97-474 (La.App. 5th Cir.1/14/98), 707 So.2d 458.  Donnaud's Inc. v. Gulf Coast Bank & Trust Co., 03-427 (La. App. 5 Cir. 9/16/03), 858 So. 2d 4, 6 writ denied, 2003-2862 (La. 1/9/04), 862 So. 2d 985.

[2] To prevail on revocatory action, a plaintiff must prove: 1) the defendant was an obligor of the plaintiff; 2) the defendant took an act or failed to take an act; 3) the defendant was insolvent or became insolvent; 4) the insolvency was caused by the defendant's act or failure to act. *De La Vergne v. De La Vergne,* 2004-0412 (La. App. 4 Cir. 10/13/2004), 886 So.2d 589, 592.

unethical, oppressive, unscrupulous, or substantially injurious".[3]   Only egregious actions involving elements of fraud, misrepresentation, deception, or unethical conduct will be sanctioned based on LUTPA.[4]

Plaintiff's Petition fails to allege any claims of fraud, misrepresentation, deception, or unethical conduct were committed by Empire.  The only allegations made by Brothers related to Empire state it entered into a sublease and asset purchase agreement that "caused Wagner Chef to breach agreements" and somehow "caused it damage."  Such broad, conclusory statements are insufficient to support a cause of action against Empire under LUTPA, and Empire should be dismissed from this suit.

### 3.  Brothers' Petition Fails to State a Claim for Unjust Enrichment.

Plaintiff's last claim alleged against Empire fails for the same reasons as its other claims—there are no facts asserted in the Petition to support it.  Brothers' Petition lacks allegations to support the five elements required in an asserting an unjust enrichment claim.[5]  The Fourth Circuit stated in *Huntsman* the five elements necessary to assert an unjust enrichment claim are: 1) an enrichment; 2) an impoverishment; 3) a connection between the enrichment and the impoverishment; 4) an absence of "justification" or "cause" for the enrichment or impoverishment; and, 5) no other remedy at law available to the plaintiff.[6]  Brothers' Petition contains no factual allegations of how Empire has been enriched by purchasing the assets of Wagners Chef or entering into the sublease with Ahmed 1.   Accordingly, Empire should be dismissed from this litigation as Brothers' Petition fails to state a cause of action against it under a theory of unjust enrichment.

Empire also agrees with and adopts the arguments set forth in the Memorandum in Support of Exception of No Cause of Action filed by Jadallah and Ahmed 1.

WHEREFORE, Empire Express prays that this Exception be deemed good and sufficient, and the Plaintiff be served with a copy of the same, and that Judgment be rendered herein in his favor dismissing the Petition of the Plaintiff and his costs.

---

[3] *See Cheramie Services, Inc. v. Shell Deepwater Prod.,* 09-1633, p. 11 (La. 4/23/10), 35 So.3d 1053, 1059.

[4] *See Id., at 1060,* and *Vermillion Hosp., Inc v. Patout,* 906 So.2d 688, 693 (La. App. 3 Cir. 2005).

[5] *See, Huntsman Int'l LLC v. Praxair, Inc.,* 15-975 (La. App. 4 Cir. 9/14/16), 201 So.3d 899, 911.

[6] *See Id.*

4

Respectfully Submitted,

_____
KYLE S. SCLAFANI (Bar No. 28219
4130 Canal St.
New Orleans, LA 70119
(504) 875-4079
(504) 910-4324 (facsimile)
**Attorney for Empire Express, LLC**

**PLEASE SERVE:**

**BROTHERS PETROLEUM, LLC**
**Through counsel of record**

Joseph V. Dirosa, Jr.
329 N. Woodlawn Ave.
Metairie, LA 70001

## CERTIFICATE OF SERVICE

    I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON ALL COUNSEL OF RECORD EITHER BY HAND DELIVERY, FACSIMILE OR BY PLACING THE SAME IN THE UNITED STATES MAIL, PROPERLY ADDRESSED AND POSTAGE PRE-PAID ON THIS 16th DAY OF MARCH, 2017.

_____
KYLE S. SCLAFANI

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

FILED

STATE OF LOUISIANA

NO. 2016-12416

2017 MAR 27 A 10: 56

DIVISION " G "

BROTHERS PETROLEUM, LLC

CIVIL
DISTRICT COURT

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC,
AHMED 1, LLC, EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC
and FIRST NBC BANK

FILED: _____

DALE N. ATKINS
CLERK CIVIL DISTRICT COURT
DEPUTY CLERK
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE · ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

**MOTION TO CONTINUE HEARING**

NOW INTO COURT, through undersigned counsel, comes BROTHERS

PETROLEUM, L.L.C., plaintiff herein, and on suggesting to the Court

| | |
|---|---|
| Receipt Date | 3/27/2017 3:46:00 PM |
| Receipt Number | 619619 |
| Cashier | ehankston |
| Register | CDCCASH3 |

that:

I.

| | |
|---|---|
| Case Number | 2016-12416 |

Defendant, Empire Express, LLC, has filed an exception of no

| | |
|---|---|
| Charges and Total | $47.00 |
| Amount Received | $47.00 |
| Balance Due | $0.00 |
| Change Due | $0.00 |

cause of action herein, which said exception is scheduled for

hearing on March 31, 2017.

II.

| | |
|---|---|
| Payment / Transaction List | |
| Check # 5337 $47.00 | |

Counsel for Mover will be out of town on the scheduled hearing

date and, therefore, requests that the hearing on this exception be

| | | | |
|---|---|---|---|
| | Charge | Paid | Bal |
| Motion to Reset Hearing | $47.00 | $47.00 | $0.00 |

continued.

III.

Opposing counsel has been contacted and does not oppose the

granting of this continuance.

**WHEREFORE**, plaintiff herein, Brothers Petroleum, LLC, prays

that the aforedescribed exception of no cause of action be

continued to a time and date to be fixed by this Honorable Court.

Respectfully submitted:

**JOSEPH V. DIROSA, JR.**
LOUISIANA BAR NO. 4959
329 NORTH WOODLAWN AVENUE
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 289-2739
FACSIMILE: (504) 218-7035
EMAIL: jdirosa1@cox.net
ATTORNEY FOR
BROTHERS PETROLEUM, LLC

VERIFIED

Barbara Gaude
Deputy Clerk

Barbara Gaude 4-10-17

**ORDER**

FILED

Considering the foregoing motion,

2017 MAR 27 A 10: 56

**IT IS ORDERED** hereby that the Exception of No Cause of Action

CIVIL

DISTRICT COURT

filed herein by defendant, Empire Express, LLC, be and the same is

continued until the 5th day of May, 2017 at 9:00 o'clock a.m.

~~Gretna~~, Louisiana, this APR 03 2017 day of ~~March~~, 2017.

New Orleans

_____
J U D G E
Judge Robin M. Giarrusso

**SERVICE TO BE MADE PURSUANT TO**
**LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 1314.**

ENTERED RULE-DOCKET ✓

SERVICE COPIES TO SHERIFF — 1313

CARD WITH RULE DATE MAILED ✓

COPY OF DOCUMENT MAILED ✓

RULE DATE RECEIVED —

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 24th day of March,

2017 served a copy of the above and foregoing pleadings on counsel

for all parties of this proceeding by electronic transmission,

facsimile transmission, or by mailing same by United States mail,

properly addressed and postage prepaid.

Joseph V. D. Bo...

ENTERED ON MINUTES

APR 04 2017

CHARLENE WILLIAMS



VERIFIED
Barbara Gaude
Deputy Clerk

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 2016-12416                                                    DIVISION " G-11 "

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC, JADALLAH ENTERPRISES, LLC,
AHMED 1, LLC, EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC
and FIRST NBC BANK



FILED:_____          _____
                                          DEPUTY CLERK

**MEMORANDUM OF BROTHERS PETROLEUM, LLC IN OPPOSITION TO
EXCEPTIONS OF NO CAUSE OF ACTION FILED BY JADALLAH ENTERPRISES,
LLC, AHMED 1, LLC, AND EMPIRE EXPRESS, LLC**

   **NOW INTO COURT**, through undersigned counsel, comes plaintiff, Brothers

Petroleum, LLC ("Brothers"), who files the following Memorandum in Opposition to the

Exception of No Cause of Action filed on behalf of defendants, Jadallah Enterprises and Ahmed

1, LLC, and the Exception of No cause of Action filed on behalf of defendant, Empire Express,

LLC, to wit:

CLERK, CIVIL DISTRICT COURT
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS LA 70112
504 - 407 - 0000

Receipt Number    624577
Cashier           mgagliano
Register          CDCCASH1
Case Number       2016 - 12416

Amount Received   $ 25.00

Change Due        $ 0.00

Payment Transaction List

Check #  6347  $25.00

Item              Charged    Paid    Bal
2014-7135 on the docket     $25.00   $0.00

**FACTS**

   The single most salient fact in the proceedings is the fact that the three limited liability

companies at the center of the transactions challenged in this litigation, namely Wagners Chef,

LLC, Jadallah Enterprises, LLC, and Ahmed 1, LLC, have at all times pertinent to these

proceedings been **solely owned by and solely controlled by, one person, i.e., Jadallah Saed.**

   From July 21, 2014, the date of the institution of the litigation entitled "Wagners Chef,

LLC v. Brothers Petroleum, LLC," proceedings no. 2014-7135 on the docket of the Civil District

Court for the Parish of Orleans, State of Louisiana, Wagners Chef, LLC, the principal defendant

herein, has continually fought to violate, undermine, and negate its contract with Brothers

Petroleum, LLC as the supplier of motor fuel to the gasoline/convenience store located at 4301

Louisa Street, New Orleans, Louisiana (the "Contract").

   Wagners Chef, LLC initiated the aforementioned proceedings seeking to have the Court

declare that the Contract was not binding on Wagners Chef, LLC.

   By judgment signed March 25, 2015, Judge Ethel S. Julien maintained an exception of no

cause of action filed by Brothers finding that Wagners Chef, LLC had failed to state a cause of

action to have the Contract declared to be not binding on Wagners Chef. The court then gave

Barbara Gaude
VERIFIED      4-24-17
Barbara Gaude
Deputy Clerk

Wagners Chef thirty (30) days within which to amend its pleadings to state such a cause of action.

On April 13, 2015, without having amended its original pleadings, without having filed a motion for reconsideration, without having taken any steps to apply for appellate review of the March 25, 2015 judgment, Wagners Chef, with a total disregard for the prior ruling of the Court, unilaterally notified Brothers that it no longer considered itself to be bound by the Contract.

Subsequently, Wagners Chef did timely file an amendment to its original pleadings, however, the amendment failed to supplement and, in fact, left wholly unchanged, the allegations upon which it had previously unsuccessfully relied in attempting to state a cause of action against Brothers.

Brothers filed a second exception of no cause of action and, once again, by judgment dated July 8, 2015, the trial court sustained the exception of no cause of action.

Despite having failed on two separate occasions to be able assert any allegations sufficient to have the Contract declared not to be binding on Wagners Chef, Wagners Chef continued to ignore its obligations under the Contract.

On November 7, 2015, the Fourth Circuit Court of Appeals decreed that the Contract was, in fact, binding on Wagners Chef. In spite of this ruling and the other adverse court rulings, Wagners Chef continued to breach its obligations under the Contract.

Thereafter, Brothers secured a judgment from the trial court dated May 12, 2016 ordering specific performance of its contractual obligations by Wagners Chef but, once again, Wagners Chef took no steps to honor either its obligations or the orders of the court.

On June 10, 2016, plaintiff, Brothers, filed a motion for contempt citing both Wagners Chef and Jadallah Saed for their ongoing failure to perform under the Contract. Brothers further sought issuance of a writ of distringas seeking to have the Sheriff for the Parish of Orleans appointed to take control of the business and have it comply with the rulings of the Court. The matter was ultimately set for hearing on November 2, 2016.

It was only under the pending threat of contempt and of the issuance of a writ of distringas that Wagners Chef in September, 2016, began to again buy motor fuel from Brothers under the Contract.

Thus, the upshot of these two-plus years of protracted and disputatious court proceedings was that Brothers was finally able to begin enforcing its rights against Wagners Chef under the

Contract. The Contract, at that time, had ten more years to run plus an automatic 5-year renewal and Wagners Chef had a recorded Lease with Option to Purchase on its business location which extended through February, 2022 with a seven (7) year option thereafter. Brothers was also now positioned to also sue for, and attempt to collect, damages for Wagners Chef's prior willful and unwarranted breach.

Jadallah Saed, however, was determined. He badly wanted out of Wagners Chef's contractual obligations and was dead set on having this Contract broken despite having not prevailed in any prior step of the litigation.

But Wagners Chef's recorded lease stood in the way.

So Mr. Saed employed two other limited liability companies, each solely owned and controlled by him, to do his dirty work.

On July 8, 2016, for no apparent reason and for no stated consideration, Jadallah Saed, acting as the sole member of Wagners Chef, voluntarily cancelled its single most valuable asset, the lease by which it operated its business at 4301 Louisa Street in New Orleans, the lease through which it earned its income, the lease which granted Wagners Chef the right to purchase the immoveable property upon which it operated its business, the lease upon which its operational licenses relied as well as its state and local alcoholic beverage permits.

On that very same date, in steps Jadallah Enterprises, LLC, acting by and through none other than Jadallah Saed, as the sole member of Jadallah Enterprises, LLC, to purchase the property at 4301 Louisa Street for the sum of $2,781,764.47, free and clear of the now-cancelled Wagners Chef lease, and free and clear of any obligation the landlord might have had to sell the property to Wagners Chef under its option to purchase.

And what does Jadallah Enterprises, LLC do on that same date? Why it leases the entirety of the property to Ahmed 1, LLC, a limited liability company formed a mere three days earlier and whose sole member is none other than the ever-present Jadallah Saed.

But Wagners Chef is still not entirely in the clear. The contempt proceedings and the request for a writ of distringas are still pending.

Once those proceedings were concluded on November 2, 2016 and the Court declined to issue a writ of distringas, thirteen days later, on November 15, 2016, Wagners Chef advises Brothers, through its counsel of record, that it has sold all of its assets to an entity named Empire Express, LLC, an entity formed on November 2, 2016, the very date on which the

distringas/contempt proceedings were concluded and less than two weeks prior to the alleged asset sale.

The prior incestuous transactions between the Jadallah Saed entities, culminating in the timely disposal of Wagners Chef's assets, leaves the creditors of Wagners Chef staring down upon an obvious eventual liquidation of Wagners Chef to their detriment, while Jadallah Saed whistles on his way to the bank. These creditors include, primarily, Brothers, with a contract which provides for liquidated damages in excess of $1,000,000.00 going forward, not to mention damages occurring from Wagners Chef's prior breach, but also the Louisiana Department of Revenue, which has a tax lien recorded against Wagners Chef in the principal amount of $485,843.76,[1] a tax lien the payment of which Wagners Chef was able to sidestep when Jadallah Enterprises rather than Wagners Chef purchased the immoveable property upon which the business is located[2].

## ARGUMENT

Jadallah Enterprises, LLC and Ahmed 1, LLC have jointly filed an exception of no cause of action. These defendants have been joined by defendant, Empire Express, LLC, who has also filed its own exception of no cause of action. Those three parties challenge the validity of plaintiff's original petition to assert claims for a revocatory action, for damages resulting from unfair trade practices and, alternatively, for unjust enrichment. The arguments of the exceptors mirror one another and will be jointly addressed in this memorandum.

## PLAINTIFF'S PETITION DOES STATE
## A CLAIM FOR REVOCATORY ACTION

All exceptors, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC correctly direct this court to Louisiana Civil Code article 2036, which provides:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

Obviously, plaintiff seeks to annul the act of its obligor, Wagners Chef, in gratuitously

---

[1] This lien is recorded in the Mortgage Office records for the Parish of Orleans as MIN #1163514. The Louisiana Department of Revenue advises that the payout of this lien presently exceeds $558,000.00.

[2] There also exists an unpaid judgment against Wagners Chef in favor of the Louisiana Workforce Commission in proceedings entitled "*State of Louisiana v. Wagners Chef, LLC*," no. 2015-07283 on the docket of First City Court for the City of New Orleans, State of Louisiana, recorded as MIN #1203048 in the Mortgage Records of the Parish of Orleans.

disposing of its prime asset, *i.e.*, the Lease with Option to Purchase by and between Wagners Chef and Wagner World, LLC, the then-owner of the property upon which Wagners Chef's business was located as well as the subsequent sale of all Wagner Chef assets to defendant, Empire Express, LLC.

As noted above, the lease was essential to Wagners Chef, not only for the operation of its business at 4301 Louisa Street in New Orleans through which it earned its income, but also permitted Wagners Chef to sublease other portions of the property to sublessee businesses, thus increasing its income stream. The lease, most importantly, granted Wagners Chef the right to purchase the immoveable property and perpetuate both streams of income.

The gratuitous lease cancellation and the subsequent sale of the property to the Jadallah Saed-owned, Jadallah Enterprises, LLC, and its immediate leasing of the property to the Jadallah Saed-owned, Ahmed 1, LLC, has no other purpose than to afford to the Jadallah Saed-owned, Wagners Chef, LLC, the opportunity for a substitute Jadallah Saed-owned entity to acquire the property free and clear of its obligations to the plaintiff, Brothers, under its Contract, and to avoid Wagners Chef's various publicly recorded obligations to the State of Louisiana.

When combined with the subsequent sale of all of Wagners Chef's assets to Empire Express, LLC, can it seriously be contended that these incestuous and suspiciously-timed transactions did not serve to "cause or increase Wagners Chef's insolvency?" Jadallah Saed, as the sole member of the principal entities, remains in total control of the property, only under wholly-owned entities with different names and free of the obligations Wagners Chef owed to third parties.

Exceptors, Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC, each declare to the Court that they cannot be subject to a revocatory action as none are obligors to Brothers under the motor fuel Contract, however, Brothers petition adequately states a cause of action against each as Louisiana Civil Code article 2038 provides:

> An obligee may annul an onerous contract made by the obligor with a person who knew or should have known that the contract would cause or increase the obligor's insolvency. In that case, the person is entitled to recover what he gave in return only to the extent that it has inured to the benefit of the obligor's creditors.

Obviously, Jadallah Saed, who owns a one hundred (100%) percent membership interest in the obligor, Wagners Chef, LLC, as well as a one hundred (100%) percent membership interest in the beneficiaries of Wagners Chef's largess, Jadallah Enterprises, LLC and Ahmed 1,

LLC, cannot claim not to have known the financially detrimental effect of these transactions on Wagners Chef and its obligors and creditors. It is patently obvious that that end was the exact purpose of the transactions.

As to exceptor, Empire Express, LLC, Brothers has asserted that it possessed or should have possessed similar information when it allegedly timely purchased Wagners Chef's assets as both the motor fuel Contract and the Louisiana state tax lien are recorded in the public record.

Even were Empire Express, LLC to contend that it possessed no such knowledge, La. C.C. art. 2038 further provides:

> An obligee may annul an onerous contract made by the obligor with a person who did not know that the contract would cause or increase the obligor's insolvency, but in that case that person is entitled to recover as much as he gave to the obligor.

And La. C.C. art. 2039 also stipulates:

> An obligee may attack a gratuitous contract made by the obligor whether or not the other party knew that the contract would cause or increase the obligor's insolvency.

Finally, Brothers is obligated to include all three exceptors in its revocatory action pursuant to La. C.C. art. 2042 which requires:

> In an action to annul either his obligor's act, or the result of his obligor's failure to act, the obligee must join the obligor and the third persons involved in that act or failure to act.

If Brothers is successful in its claim for revocatory action, the annulling of the gratuitous cancellation of the Lease with Option to Purchase by Wagners Chef would mean that Jadallah Enterprises, LLC had acquired the property subject to the recorded Wagners Chef lease and subject to the option to purchase in favor of Wagners Chef contained therein. This would further have the effect of terminating the lease to Ahmed 1, LLC as well as any sublease from Ahmed 1, LLC under which Empire Express, LLC theoretically claims to have acquired its right to operate and its operating licenses including, but not limited to, its liquor permits.

Exceptors, in support of their position incorrectly cite this Court to *DeLaVergne v. DeLaVergne*, 2004-0412 (La.App. 4 Cir. 10/13/04), 886 So2d 589 for the notion that Brothers has not pled sufficient facts to support its petition as to the effect of the financial transactions on the insolvency of Wagners Chef, LLC. Exceptors point to the language in *DeLaVergne* to the effect that "the obligee must prove both the amount of the obligor's debt and that the challenged transaction caused or increased the insolvency of the obligor." (At page 593.)

The *DeLaVergne* language cited related to an issue regarding the adequacy of the proof

submitted to the court by a creditor/plaintiff in support of a motion for summary judgment filed

in those proceedings and did not pertain to the adequacy of the original pleadings underlying that

plaintiff's cause of action.

### PLAINTIFF'S PETITION SUFFICIENTLY STATES A CLAIM UNDER LUTPA

The applicable theory of recovery provided in the Louisiana Unfair Trade Practices Act

("LUTPA") LSA-R.S. 51:1405(A) prohibits any "unfair or deceptive acts or practices in the

conduct of any trade or commerce," and § 51:1409(A) grants a right of action to "[a]ny person

who suffers any ascertainable loss" from a violation of this prohibition. It has been left to the

courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition.

*Cheramie Servs. Inc. v. Shell Deepwater Prod. Inc.*, 2009-1633 (La. 4/23/10), 35 So.3d 1053,

1059.

The courts have repeatedly held that, under this statute, the plaintiff must show the

alleged conduct offends established public policy and ... is immoral, unethical, oppressive,

unscrupulous, or substantially injurious. *Id.*

Exceptors ask this Court to overlook, as insignificant and mere normal business dealings,

the gratuitous, incestuous, and strategically timed, transactions by and between the Jadallah

Saed-owned limited liability companies.

The Court is asked to overlook the fact that, leading up to these transactions, Wagners

Chef, for more than two years, stridently defied adverse court rulings in its attempts to divest

itself of its obligations under its motor fuel Contract with Brothers.

The Court is asked to overlook the fact that Wagners Chef dispossessed itself of its prime

asset, the lease and option to purchase, in favor of Jadallah Enterprises, LLC, who immediately

leased the property on which Wagners Chef formerly operated its business, to a Jadallah Saed-

owned entity, Ahmed 1, LLC, which had been formed a mere three days earlier.

The Court is asked to overlook the fact that Wagners Chef allegedly sold its assets to

Empire Express, LLC on or about November 15, 2006, an entity formed on November 2, 2016,

the very date on which the distringas/contempt proceedings pending against Wagners Chef were

concluded and less than two weeks prior to the alleged sale.

The Court is asked to overlook the fact that, after the dust settles, Jadallah Saed still

solely owns the entities controlling the property on which Wagners Chef formerly operated, all

the while leaving Brothers without a motor fuel retailer to supply and acquiring the property at

4301 Louisa Street without having to pay to the State of Louisiana the taxes it owes which exceed half a million dollars.

It is respectfully suggested that if the criteria under LUTPA is to show that the alleged conduct offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious, then plaintiff has stated such a case on all fronts.

## PLAINTIFF HAS STATED A CASE FOR UNJUST ENRICHMENT

Exceptors have correctly pointed out in their various memoranda that a claim for unjust enrichment in Louisiana is limited to those cases wherein the claimant has no other available remedy. *Walters v. MedSouth Record Management*, 2010-0353 (La. 6/4/10) 38 So3d 243.

It is for this reason that plaintiff has pled this cause of action in the alternative. (See original petition, paragraph XXXVI.)

Exceptors also correctly recognize and direct this Court to the five elements of a claim of unjust enrichment recognized by the Fourth Circuit, namely, (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. *Huntsman Int'l LLC v. Praxair, Inc.*, 2015-0975 (La.App. 4 Cir. 9/14/16, 18), 201 So3d 899, 911.

Exceptors claim, with a blind eye, that Brothers has failed to allege a factual basis for this claim, apparently choosing not to recognize that, when Wagners Chef gratuitously cancelled its lease and option to purchase the property at 4301 Louisa Street, Jadallah Enterprises, LLC was contemporaneously enriched, at the expense of, and to the impoverishment of, Wagners Chef, LLC and, that this act ultimately led directly to the impoverishment of Brothers and the State of Louisiana.

This action by Wagners Chef, in turn, contemporaneously allowed Jadallah Enterprises, LLC to enrich Ahmed 1, LLC, a mere three days into its existence, when it acquired possession of the property by virtue of a lease from Jadallah Enterprises, LLC, all at the expense of, and to the impoverishment of, the former lessee, Wagners Chef, again, ultimately, leading directly to the impoverishment of Brothers and the State of Louisiana.

There appears to be no justification or cause for the impoverishment other than to permit Wagners Chef to avoid its contractual obligations to Brothers and its tax obligations to the State of Louisiana. Certainly, it is wholly illogical that the impoverishment requirement for unjust

enrichment cannot simultaneously supply the "justification" or "cause" necessary to defeat such a cause of action.

And finally, as previously stated, the cause of action for unjust enrichment has been pled in the alternative in the event the other claims presented herein are not maintained.

**CONCLUSION**

The machinations undertaken by the Jadallah Saed-controlled entities are transparently designed to avoid various contractual and tax related obligations of Wagners Chef, LLC. The notion that these are merely the normal business transactions of independent, unrelated, third-party actors is completely lacking in credibility and not worthy of consideration by this Court.

Plaintiff, Brothers Petroleum, LLC, has sufficiently stated a cause of action against Jadallah Enterprises, LLC, Ahmed 1, LLC, and Empire Express, LLC. The exceptions of no cause of action filed by these parties should be dismissed and the parties should be allowed to proceed to pre-trial discovery.

Respectfully submitted:

**JOSEPH V. DIROSA, JR.**
LOUISIANA BAR NO. 4959
329 NORTH WOODLAWN AVENUE
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 289-2739
FACSIMILE: (504) 218-7035
EMAIL: jdirosa1@cox.net
ATTORNEY FOR
    BROTHERS PETROLEUM, LLC

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 20th day of April, 2017 served a copy of the above and foregoing pleadings on counsel for all parties to this proceeding by email or by placing same in the  United States mail, properly addressed and postage prepaid.

FILED

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

2017 MAY -1 P 12: 09

**STATE OF LOUISIANA**

CIVIL

NO.: 2016-12416                                    DISTRICT COURT**DIVISION "C-11"**

**BROTHERS PETROLEUM, LLC**

**VERSUS**

**WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK**

FILED: _____        _____
                                                                **DEPUTY CLERK**

**REPLY MEMORANDUM IN SUPPORT OF EXCEPTION
OF NO CAUSE OF ACTION BY
JADALLAH ENTERPRISES, LLC AND AHMED 1, LLC**

MAY IT PLEASE THE COURT:

Defendants, Jadallah Enterprises, LLC ("Jadallah Enterprises") and Ahmed 1, LLC ('Ahmed 1") submit this Reply Memorandum (1) in response to the Memorandum of Brothers Petroleum, LLC ("Brothers") in Opposition to the Exception of No Cause of Action ("Opposition") and (2) in further support of the Exception of No Cause of Action with respect to the allegations asserted in the Petition for Revocatory Action, For Damages from Unfair Trade Practices or, Alternatively, for Unjust Enrichment ("Petition") filed by Brothers.

In the Opposition, Brothers apparently believes that if they complain enough about the alleged actions of Wagers Chef, LLC ("Wagners Chef") – an entity that didn't join in these exceptions -- that the Court will allow them to pursue claims that against two separate entities – Jadallah Enterprises and Ahmed 1 – that have absolutely no factual or legal basis. However, Brothers continued complaints do not change the fact that its Petition fails to state a cause of action against either Jadallah Enterprises or Ahmed 1.

First, the central error in Brothers' claims is shown by the opening statement of its Opposition. The common ownership of the limited liability companies involved in this matter is irrelevant to the determination of whether Brothers has a claim against these individual legal entities. Jadallah Enterprises and Ahmed 1 are separate legal entities, distinct from Wagners Chef, and must be treated as such. The common ownership does not change that fact. It is a basic doctrine under Louisiana law that a juridical person is a separate entity from its owners. See La. C.C. art. 24 ("There are two kinds of persons: natural persons and juridical persons.") The revision

VERIFIED

comments to this provision emphasis this point by stating that "the personality of a juridical person is distinct and distinguishable from that of its members." See Revision Comments – 1987(d). Brothers does not contest, and in fact admits, that both Jadallah Enterprises and Ahmed 1 are limited liability companies, separate and apart from Wagners Chef and Jadallah Saed.[1] As much as Brothers would like to ignore that fact, it cannot do so. Rather, its claims against Jadallah Enterprises and Ahmed 1 must be viewed separate and apart from any alleged action of Wagners Chef.

Brothers spends an inordinate amount of space in the Opposition detailing its take on the actions of Wagners Chef. While the defendants do not agree with the characterization of Wagner Chef's actions, this is totally irrelevant to the current exceptions because the pending exceptions are not asserted by Wagners Chef. Rather, the pending exception of no right of action is asserted by Jadallah Enterprises or Ahmed 1. Brothers must state a cause of action against those entities, separate and apart from the claims against Wagner Chef. What it cannot do is allege that somehow Jadallah Enterprises or Ahmed 1 are responsible for the actions of a separate person, *i.e.* Wagners Chef.

Second, Brothers essentially attempts to side-step the critical fact that any revocatory action may only be brought against transactions which involve an "obligor" vis-à-vis the claimant, in this case Brothers. Each of the code provisions cited by Brothers – La C.C. arts. 2036, 2038, 2039 and 2042 – all require that the action sought to be revoked must be an action of an "obligor." However, at no time was either Jadallah Enterprises or Ahmed 1 an "obligor" vis-à-vis Brothers. Rather, the only even potential obligor was Wagners Chef. Further, the transactions involving Jadallah Saed and Ahmed 1 which brothers seek to revoke do not involve Wagners Chef at all. Specifically, through the Petition, Brothers seeks to revoke the following transactions: (1) Jadallah Enterprises' purchase of the subject property from Wagner World, LLC; and, (2) Ahmed 1's lease of the subject property from Jadallah Enterprises. Neither of these transactions involve Wagners Chef at all. In fact, none of the transactions involving either Jadallah Enterprises or Ahmed 1 involve Wagners Chef. Consequently, Brothers does not have a cause of action to revoke those transactions as they do not involve an "obligor" vis-à-vis Brothers.

Third, it bears note that Brothers own arguments are inconsistent with its claims.

---

[1] It bears note that Jadallah Saed is not even a party to this suit, and no allegations are pending against him in this matter.

Specifically, Brothers asserts that the cancellation of the lease between Wagners Chef and Wagner World, which occurred on July 8, 2016, "caused or increased the insolvency" of Wagners Chef by allegedly precluding Wagners Chef from conducting business. See Paragraph XXIII of the Petition. However, in its Opposition it admits that Wagners Chef continued to operate a gas station and convenience store at the subject property *after* the cancellation of the lease between Wagners Chef and Wagner World and the purchase of the subject property by Jadallah Enterprises on July 8, 2016. Specifically, in the Opposition, Brothers admits that Wagners Chef continued to operate at the subject property and to purchase gasoline from Brothers between September, 2016 and November, 2016. See Opposition, page 2 ("Wagners Chef in September, 2016 began to buy motor fuel from Brothers under the Contract.") Through this statement, Brothers admits that the sale of the subject property by Wagner World to Jadallah Enterprises and the subsequent lease of the property by Jadallah Enterprises to Ahmed 1 had no impact on Wagners Chef's ability to perform under the Contract. Consequently, the claim that those transactions – i.e. the purchase of the property by Jadallah Enterprises from Wagner World and the lease from Jadallah Enterprises to Ahmed 1 – had no impact on Wagners Chef's ability to perform under the Contract. Further, Brothers admits that Wagners Chef continued to perform under the Contract after the transactions of July 8, 2016. Thus, the sole basis of Brothers claims against Jadallah Enterprises and Ahmed 1 – *i.e.* that the transactions of July 8, 2016 made it impossible for Wagners Chef to perform – are simply incorrect. This alone requires the dismissal of the claims.

Next, with respect to the alleged unfair trade practices claims, Brothers again attempts to treat Jadallah Enterprises, Ahmed 1 and Wagners Chef as a single entity and assert claims against Jadallah Enterprises and Ahmed 1 for the alleged "bad acts" of Wagners Chef.[2] In the Opposition, the only actions which Brothers cites as supporting its claims are those of Wagners Chef. Whatever the truth of those allegations is, Brothers cannot state a cause of action against Jadallah Enterprises and/or Ahmed 1 based on the actions of Wagners Chef.

Further, the actions of Jadallah Enterprises and Ahmed 1 do not, and cannot, be the valid basis of a claim of unfair trade practices as neither of those entities took an action which "offends established public policy and is immoral, unethical, oppressing, unscrupulous or substantially injurious." *See Cheramie Servs. Inc., v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So.3d 1053, 1059. Even taking the allegations as true, the only actions taken by Jadallah

---

2 Again, none of the defendants accept the characterization of Wagners Chef's actions.

Enterprises at issue were (1) the purchase of the subject property from Wagner World, LLC and the lease of that property to Ahmed 1. The only actions of Ahmed 1 at issue were (1) the lease of the subject property from Jadallah Enterprises and the subsequent sublease of that property to Empire Express, LLC. These actions are merely business transactions and none rise to the level of an unfair trade practice.

Brothers' petition also fails to state any connection between the alleged actions of Jadallah Enterprises and Ahmed 1 and Brothers. There is no contractual or other relationship between them. Jadallah Enterprises and Ahmed 1 do not, and have never, done business with Brothers nor had any other interaction. Further, Brothers has not alleged, nor can it, that the actions of either Jadallah Enterprises or Ahmed 1 caused Brothers any damages or breached any obligation or duty. The entirety of Brothers complaint is that Wagners Chef was not complying with its contract with Brothers. Neither Jadallah Enterprises nor Ahmed 1 had any contract with Brothers or caused Wagners Chef to breach its Contract with Brothers. Consequently, there is no basis for this Court to find that either Jadallah Enterprises or Ahmed 1 had any duty with respect to Brothers.

Finally, with respect to the "unjust enrichment" claims, Brothers' Petition offers absolutely no basis for such a claim against Jadallah Enterprises and/or Ahmed 1. Again, neither Jadallah Enterprises nor Ahmed 1 had any relationship, contractual or otherwise, with Brothers. They took no action which involved Brothers and had no duty to take any such action. Further, Brothers only attempt to cite to the required elements of such a claim relate to the alleged actions of Wagners Chef, not Jadallah Enterprises or Ahmed 1. Again, Jadallah Enterprises and Ahmed 1 are separate juridical entities and any claims against them must be based on their actions, not those of Wagners Chef.

## CONCLUSION

For all the reasons stated above, and in their original memorandum in support of the exceptions, Jadallah Enterprises and Ahmed 1 pray that this Court maintain their Exception of No Cause of Action and dismiss all claims against them contained in the Petition filed by Brothers.

4

Respectfully Submitted,

**ELKINS, P.L.C.**

THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA   70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys for Wagners Chef LLC, Jadallah
Enterprises LLC, and Ahmed 1 LLC

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record,
including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed,
this 15 day of May, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Kyle Sclafani
4130 Canal Street
New Orleans, LA 70119

Bradley Aldrich
Smiley Law Firm, LLC
365 Canal St., Suite 1680
New Orleans, LA 70130

DeWayne L. Williams
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170

Thomas M. Beh

Civil District Court for the Parish of Orleans
**STATE OF LOUISIANA**

No.   2016 - 12416                                                    Section:   11 - G

BROTHERS PETROLEUM, LLC
versus
WAGNERS CHEF, LLC  ET AL

Date Case Filed:   12/21/2016

NOTICE OF SIGNING OF JUDGMENT

TO:

Joseph V DiRosa Esq            04959
329 North Woodlawn Avenue
Metairie            LA 70001

Kyle S Sclafani Esq            28219
4130 Canal Street
Suite A
New Orleans            LA 70119

Thomas M Beh Esq            24018
201 St. Charles Avenue, Suite 4400
New Orleans            LA 70170

Bradley J Aldrich Esq            32316
112 Oil Clr Dr.
Ste 113
Lafayette            LA 70503

In accordance with Article 1913 C.C.P., you are hereby notified that Judgment
in the above entitled and numbered cause was signed on     May 25, 2017
New Orleans, Louisiana.
June 1 , 2017

VERIFIED
Deidie Ciacire
06-05-2017

ENTERED ON MINUTES

JUN 02 2017

CHARLENE WILLIAMS

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2016-12416                                           DIVISION "G-11"

BROTHERS PETROLEUM, LLC

VERSUS

WAGNERS CHEF, LLC; JADALLAH ENTERPRISES, LLC; AHMED 1, LLC;
EMPIRE EXPRESS, LLC; WAGNER WORLD, LLC; and, FIRST NBC BANK

FILED: _____        _____
                                                       DEPUTY CLERK

**JUDGMENT**

THERE CAME FOR HEARING on the 5th Day of May, 2017 the Exceptions of No Cause of Action asserted by Jadallah Enterprises LLC, Ahmed 1 LLC and Empire Express LLC (collectively "Exceptions") against the Petition for Revocatory Action, For Damages for Unfair Trade Practices and Unjust Enrichment ("Petition") filed by Brothers Petroleum, LLC in the captioned matter.

Present were:

Thomas M. Beh, Esq., counsel for Jadallah Enterprises LLC and Ahmed 1 LLC;

Joseph V. DiRosa, Jr., Esq., counsel for Brothers Petroleum LLC;

Bradley Aldrich, Esq., counsel for Wagner World LLC; and,

Kyle Sclafani, Esq. counsel for Empire Express LLC

Considering the briefs, the exhibits, argument of counsel and for the reasons stated in open court:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Exceptions be and hereby are GRANTED;

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that Brothers Petroleum LLC shall file an amendment to its Petition for Revocatory Action, Unfair Trade Practices and Unjust Enrichment ("Petition") in this matter within ninety (90) days of the date of this Judgment.

New Orleans, Louisiana, this 25 day of May, 2017

_____
Judge Robin M. Giarrusso, Division "G"

ENTERED ON MINUTES

JUN 02 2017

CHARLENE WILLIAMS

VERIFIED
Donna Ciaccio
06·05·2017

58/14157/D2/05                                 1

Respectfully Submitted,

**ELKINS, P.L.C.**

_____
THOMAS M. BEH (#24018)
201 St. Charles Ave., Ste. 4400
New Orleans, LA   70170
Telephone (504) 529-3600
Facsimile (504) 529-7163
tbeh@elkinsplc.com

Attorneys for Wagners Chef LLC,
Jadallah Enterprises LLC, and Ahmed 1 LLC

## CERTIFICATE OF SERVICE AND EXCHANGE

I certify that (1) in accordance with the rules of this Court, a copy of this proposed order was circulated to all counsel and Brothers objected to the proposed judgment as per the cover letter to the Court; and (2) a copy of the foregoing has been served upon all counsel of record, including the following, by facsimile and/or U.S. Mail, postage prepaid and properly addressed, this 8 day of May, 2017.

Joseph V. DiRosa, Jr.
329 North Woodlawn Avenue
Metairie, LA 70001

Kyle Sclafani
4130 Canal Street
New Orleans, LA 70119

Bradley Aldrich
Smiley Law Firm, LLC
365 Canal St., Suite 1680
New Orleans, LA 70130

DeWayne L. Williams
Aaron & Gianna, PLC
201 St. Charles Ave.
Suite 3800
New Orleans, LA 70170

_____
Thomas M. Beh

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS   *FILED*

STATE OF LOUISIANA   2017 JUL 10 P 2:24

No. 2016-12416

BROTHERS PETROLEUM, LLC   DIVISION "G"
CIVIL
DISTRICT COURT

VERSUS

WAGNERS CHEF, LLC, JADALIAH ENT4ERPRISES, LLC, AHMED 1, LLC,
EMPIRE EXPRESS, LLC, WAGNER WORLD, LLC, AND FIRST NBC BANK

_____          _____
FILED                                        DEPUTY CLERK

NOTICE OF SUBSTITUTION OF PARTY

**NOW INTO COURT**, through undersigned counsel, comes The Federal Deposit Insurance Corporation, as Receiver for First NBC Bank, New Orleans, Louisiana (hereinafter referred to as "FDIC-R"), who respectfully represents that:

-1-

On or about December 21, 2016, Plaintiff, Brothers Petroleum, LLC, filed its Petition for Revocatory Action, for Damages from Unfair Trade Practices, or Alternatively, for Unjust Enrichment against various defendants, including First NBC Bank (hereinafter referred to as "FNBC").

-2-

The Petition seeks recovery and damages for, amongst other things, alleged torts and misrepresentations committed against Plaintiffs.

-3-

By Order dated April 28, 2017, FNBC was closed, its liquidation was ordered commenced, and the FDIC-R was confirmed as Receiver of FNBC.[1]

-4-

Pursuant to the Order, FDIC-R is vested with title to all assets of FNBC without execution of any instruments of conveyance, assignments, transfer, or endorsement, and is vested with the full and exclusive management and control of FNBC.[2]

_____

[1]   A copy of the Order is attached hereto as "Exhibit A."
[2]   *Id.*

-5-

On April 28, 2017, FDIC-R notified the Louisiana Office of Financial Institutions of its acceptance of the appointment as Receiver of FNBC.[3]

-6-

Consequently, the FDIC-R, has succeeded by operation of law to all rights, titles, powers, and privileges of FNBC pursuant to 12 U.S.C. §1821(d)(2).

-7-

Therefore, FDIC-R gives notice that it is substituted for FNBC as the proper party in the instant matter, and is, in fact, substituted as Defendant in this matter for FNBC by operation of law upon the filing of this notice.

**WHEREFORE**, the FDIC-R, respectfully hereby files this notification that, by operation of law, it is, substituted in and for the named defendant, FNBC.

Respectfully Submitted:

**AARON & GIANNA, PLC**

**WILLIAM D. AARON, JR. (LSBA #2267) T.A.**
**DeWAYNE L. WILLIAMS (LSBA #27685)**
**ANNA RAINER (LSBA #31531)**
201 Saint Charles Avenue, Suite 3800
New Orleans, LA 70170
Telephone: (504) 569-1800

*Counsel for FDIC-R*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all counsel of record via electronic service and/or fax, this ____10th____ day of ___July___, 2017.

---

[3]      See Letter to Louisiana Office of Financial Institutions, attached hereto and marked for identification as "Exhibit B".

| | |
|---|---|
| IN THE MATTER OF | * DOCKET NO.            DIV. |
| FIRST NBC BANK, | * CIVIL DISTRICT COURT |
| NEW ORLEANS, LA, A LOUISIANA | * PARISH OF ORLEANS |
| BANKING CORPORATION | * STATE OF LOUISIANA |

---

<u>MOTION TO CLOSE AND LIQUIDATE FIRST NBC</u>
<u>BANK AND TO CONFIRM APPOINTMENT OF RECEIVER</u>

NOW INTO COURT, through undersigned counsel, comes JOHN DUCREST, Commissioner of Financial Institutions of the State of Louisiana, Conservator, who moves this Honorable Court as follows:

1.

John Ducrest was confirmed as the Conservator of First NBC Bank (hereafter "FNBC") by this Court on April 2̲8̲t̲h̲, 2017, at 9̲:̲1̲5̲ A.M. Central Standard time.

2.

The Conservator has investigated the circumstances and has determined that the closure, appointment of a receiver and immediate liquidation of FNBC is required by law.

3.

Deposit accounts in FNBC are insured by the Federal Deposit Insurance Corporation (hereinafter "FDIC").

4.

Pursuant to LSA-R.S. 6:387(A), after conducting such investigations as circumstances require, and consultation with the Board of Directors of FNBC, the Conservator has entered into an agreement with the FDIC to terminate deposit insurance of FNBC and to appoint the FDIC to liquidate FNBC.

5.

Any delay in closure may cause a decrease in the value of FNBC, to the detriment of FNBC, its depositors and its insurer.

6.

The Conservator is required by LSA-R.S. 6:391(B) to appoint the FDIC as Receiver when any of the deposits of FNBC are insured by the FDIC. The Conservator has appointed FDIC as receiver of FNBC as evidenced by a copy of the letter attached as Exhibit "C."

1


EXHIBIT
A

7.

The FDIC has signified its willingness to accept the appointment as Receiver and to be confirmed as same, as evidenced by a copy of the Agreement to Terminate Insurance attached hereto as Exhibit "D."

8.

The FDIC is not required to post bond as a condition of its appointment and confirmation as Receiver pursuant to LSA- R.S. 6:391(B).

9.

Upon confirmation of the Conservator, title to all assets of FNBC was vested in the Conservator without the execution of any instruments of conveyance, assignments, transfer, or endorsement pursuant to LSA-R.S. 6:383. The Conservator was also vested with the full and exclusive power of management and control of FNBC pursuant to LSA-R.S. 6:385.

10.

Upon its confirmation as Receiver, the FDIC is to be vested with title to all assets of FNBC without the execution of any instruments of conveyance, assignments, transfer, or endorsement pursuant to LSA-R.S. 6:391(C). The Receiver is also vested with the full and exclusive power of management and control of FNBC, including, without limitation, the powers set forth in LSA-R.S. 6:385.

11.

Upon confirmation of the Receiver, FNBC will no longer be under conservatorship and the Conservator should therefore be discharged.

THEREFORE, Mover, JOHN DUCREST, Commissioner of Financial Institutions of the State of Louisiana and Conservator by Order of this Court, prays that:

1.    This Motion be acted upon ex parte;

2.    First NBC Bank be ordered closed;

3.    The liquidation of First NBC Bank be commenced;

4.    The appointment of the FDIC as Receiver be confirmed;

5.    The Conservator be discharged;

6.    All exhibits to these pleadings be placed under seal.

Respectfully Submitted:

Susan H. Rouprich (#11492)
Paul M. Melancon, Jr. (#17054)
Attorneys for the Commissioner
8660 United Plaza Blvd., 2nd Floor .
Baton Rouge, LA 70809-7024
Telephone: (225) 925-4633
Facsimile: (225) 922-2592

2

IN THE MATTER OF                        *  DOCKET NO. 17-4057 DIV. __

                                                      FILED

FIRST NBC BANK,                         *  CIVIL DISTRICT COURT

NEW ORLEANS, LA, A LOUISIANA            *  PARISH OF ORLEANS   2017 APR 28  P 3 37

BANKING CORPORATION                     *  STATE OF LOUISIANA
                                                      DISTRICT COURT

## ORDER

Considering the above Motion

IT IS HEREBY ORDERED THAT:

1.  First NBC Bank is hereby closed;

2.  The liquidation of First NBC Bank is hereby ordered to be commenced;

3.  The Federal Deposit Insurance Corporation is confirmed as receiver of First
    NBC Bank;

4.  John Ducrest, the Commissioner of Financial Institutions of the State of
    Louisiana, the Conservator of First NBC Bank, is hereby discharged;

5.  The FDIC is hereby vested with title to all assets of First NBC Bank
    without the execution of any instruments of conveyance, assignments, transfer,
    or endorsement, and is vested with the full and exclusive management and
    control of the Bank; and

6.  All exhibits to these pleadings be placed under seal of the Court.

Signed in Chambers in the City of New Orleans, Louisiana, on this 28th day of April 2017,

at 4:00 pm P. M., as necessary to accomplish the purposes of this order, but no later

than 4:00 P.M., Central Standard Time, April 28, 2017.

_____
Judge, Civil District Court (Ad Hoc)

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

3



**FDIC**
Division of Resolutions and Receiverships

FILED

2017 JUL 10 P 2: 24

CIVIL
DISTRICT COURT

April 28 2017

Louisiana Office of Financial Institutions
Mr. John Ducrest, Commissioner
8660 United Plaza Blvd., Second Floor, Ste. 200
Baton Rouge, LA 70809-7024

Subject:     First NBC Bank
             New Orleans, Louisiana – In Receivership
             <u>Acceptance of Appointment as Receiver</u>

Dear Mr. Ducrest:

Please be advised that the Federal Deposit Insurance Corporation accepts its appointment as Receiver of the captioned depository institution, in accordance with the Federal Deposit Insurance Act, as amended.

Sincerely,

FEDERAL DEPOSIT INSURANCE CORPORATION

By:   

Jeannie M.  Flood
Receiver-in-Charge

H.01.b LDCMFI/Accept Appointment as Receiver.doc

EXHIBIT
B