UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BROTHERS PETROLEUM, LLC | CIVIL ACTION |
| VERSUS | No.: 17-6713 |
| WAGNERS CHEF, LLC, ET AL. | SECTION: "J"(1) |

## ORDER & REASONS

Before the Court is a *Motion to Stay Action* **(Rec. Doc. 3)** filed by the Federal Deposit Insurance Corporation ("FDIC"), as receiver for First NBC Bank, and an opposition (Rec. Doc. 5) filed by Plaintiff, Brothers Petroleum, LLC ("Brothers Petroleum"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from a contract dispute between Brothers Petroleum, a motor fuel distributor, and Defendant Wagners Chef, LLC ("Wagners Chef"), the operator of a gasoline/convenience store located on 4301 Louisa Street, New Orleans, Louisiana (the "Property"). (Rec. Doc. 3-3 at 3.) The Contract between Brother Petroleum and Wagners Chef (the "Contract") allegedly provides that Brothers Petroleum has the

exclusive right to sell Exxon branded motor fuel at the Store.[1] (Rec. Doc. 3-3 at 3.)

In July 2014, Wagners Chef filed suit against Brothers Petroleum in state court seeking a declaration that Wagners Chef was not bound by the Contract. (Rec. Doc. 3-3 at 3). On November 7, 2015, the Louisiana Fourth Circuit Court of Appeals declared the Contract was binding on Wagners Chef. In May 2016, Brothers obtained a judgment finding Wagners Chef in breach of the Contract and ordering specific performance by Wagners Chef. (Rec. Doc. 3-3 at 3,4.) Nonetheless, Brothers Petroleum claims that Wagners Chef continuously refused to abide by the Contract.

Wagners Chef leased the Property from owner Wagner World, LLC ("Wagner World") during the time Wagners Chef operated the convenience store/gas station. The lease allegedly "extended through February, 2022 with a seven (7) year option to purchase thereafter." However, on July 8, 2016, Wagners Chef cancelled its lease. (Rec. Doc. 5 at 3.) Brothers Petroleum alleges that the lease was Wagners Chef's "single most valuable asset" because it operated its business from the Property, its operational licenses and permits relied on the lease, and the lease contained an option to purchase.

---

[1] The Contract was originally between Brothers Petroleum and B-Xpress Louisa, LLC. However, "through a subsequent ratification of the Contract in June 2013," Wagners Chef allegedly became party to the Contract "as successor-in-interest to B-Xpress at the Store." (Rec. Doc. 3-3 at 3.)

On the same day as the lease cancellation, Jadallah Enterprises, LLC ("Jadallah Enterprises"), purchased the Property from Wagner World and then leased it to Ahmed 1, LLC ("Ahmed 1"). First NBC Bank ("First NBC") allegedly provided a multiple indebtedness mortgage to fund Jadallah Enterprise's purchase of the Property and Ahmed 1 executed an assignment of rents in favor of First NBC as security. Jadallad Saed is allegedly the sole owner of Wagners Chef, Ahmed 1, and Jadallah Enterprises.

On November 15, 2016, Wagners Chef allegedly advised Brothers Petroleum that it sold all of its assets to Empire Express, LLC ("Empire Express"). Subsequently, Empire Express allegedly subleased the Property to Ahmed 1.

On December 21, 2016, Brothers Petroleum filed a revocatory action in state court seeking to negate Wagners Chef's lease cancellation, the sale of the Property to Jadallah Enterprises, the lease to Ahmed 1, and the sale of Wagners Chef's assets to Empire Express. Brothers Petroleum alleges that the cancellation of the lease and the transfers of the Property caused or increased the insolvency of Wagners Chef to the detriment of Brothers Petroleum. (Rec. Doc. 3-3 at 7.) Further, Brothers Petroleum claims that it is entitled to a judgment "annulling" both the multiple indebtedness mortgage and the assignment of rents because First NBC knew or should have known that these transactions would cause Wagners Chef to breach its Contract with Brothers Petroleum and

increase the insolvency of Wagners Chef. (Rec. Doc. 3-3 at 9.) Brothers Petroleum also seeks damages from unfair trade practices, or alternatively, unjust enrichment against various Defendants, including First NBC.[2]

On April 28, 2017, First NBC was declared insolvent and the FDIC was appointed as receiver of First NBC. The FDIC removed this case from state court on May 30, 2017. On July 17, 2017, the FDIC moved for a stay of these proceedings until it can complete its administrative review. (Rec. Doc. 3-1 at 1.)

## **PARTIES' ARGUMENTS**

The FDIC argues that Brothers Petroleum must first exhaust its administrative remedies before proceeding in the instant case. (Rec. Doc. 3-1 at 3.) Because the administrative process can take 180 days or more, the FDIC requests a stay for 180 days. (Rec. Doc. 3-1 at 5.) However, alternatively, the FDIC states that it is legally entitled to at least a 90-day stay pursuant to 12 U.S.C. § 1821(d)(12)(B). Brothers Petroleum argues that the delay should be held to the minimum amount of 90 days pursuant to 12 U.S.C. § 1821(d)(12)(B).

## **DISCUSSION**

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") establishes a comprehensive scheme

---

[2] Brothers Petroleum named Wagners Chef, Jadallah Enterprises, Ahmed 1, Empire Express, Wagner World, LLC, and First NBC as Defendants in its complaint.

authorizing the FDIC to act as the receiver for a failed institution. The FDIC, as the receiver, succeeds to all rights, titles, powers, and privileges of the failed institution. *See O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86 (1994) (citing 12 U.S.C. § 1821(d)(2)(A)(i)).

FIRREA also creates a mandatory administrative procedure for claims asserted against an institution in receivership. For pre-receivership claims (i.e., claims that were filed before the appointment of a receiver), the Fifth Circuit has held that the FDIC may opt either to continue the judicial proceeding or to follow the administrative process by moving for a stay within 90 days of its appointment. *Whatley v. Resolution Tr. Corp.*, 32 F.3d 905, 908-09 (5th Cir. 1994). For the administrative route, the FDIC "must notify potential claimants of the bar date – that date after which claims against the failed institution are prohibited." *Guidry v. Resolution Tr. Corp.*, 790 F. Supp. 651, 652 (E.D. La. 1992) (citing 12 U.S.C. § 1821(d)(3)). Upon receiving notice from the FDIC, claimants have 90 days to present their claims against the institution. 12 U.S.C. § 1821(d)(3)(B)(i). Once a claim has been presented, the FDIC has 180 days to notify the claimant of its decision to allow or disallow the claim. *Id*. § 1821(d)(5)(A). A claimant may continue a pre-receivership litigation proceeding within 60 days of the earlier of: (1) the expiration of the 180-

5

day period, or (2) the date of any notice of disallowance of the claim. *Id.* § 1821(d)(6).

Here, Brothers Petroleum had already commenced litigation against First NBC when the FDIC was appointed the receiver of First NBC. The FDIC has elected to follow the administrative process set out by FIRREA by moving for a stay within 90 days of its appointment. Therefore, Brothers Petroleum must first exhaust its administrative remedies before proceeding in this Court. *See Carney v. Resolution Tr. Corp.*, 19 F.3d 950, 955 (5th Cir. 1994) ("FIRREA makes participation in the administrative claim review process mandatory.") This does not mean that the Court is deprived of subject matter jurisdiction over the matter; rather, the case is suspended until the FDIC concludes its administrative review. *See Whatley v. Resolution Tr. Corp.*, 32 F.3d 905, 907 (5th Cir. 1994) ("Because subject matter jurisdiction is tested as of the time of the filing of the complaint, district courts presiding over actions properly filed prior to the appointment of a receiver continue to be vested with jurisdiction.")

The FDIC requests a stay of 180 days to allow the parties the opportunity to exhaust the administrative process. Brothers Petroleum argues that the stay should be limited to 90 days because that is the time period that FIRREA specifically prescribes. 12 U.S.C. § 1821(d)(12)(A)(ii) (The FDIC may request a stay for a

6

period "not to exceed . . . 90 days . . . in any judicial action or proceeding to which such institution is or becomes a party.")

In a previous decision from this district, the Court held that FIRREA implicitly authorizes and requires a pre-receivership case be stayed until the administrative review process is finished. *Guidry v. Resolution Tr. Corp.*, 790 F. Supp. 651, 652 (E.D. La. 1992). "By requiring the plaintiffs to exhaust their administrative remedies, the Court allows the [FDIC] to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." *Id.* at 655–56 (citation omitted). Otherwise, it would potentially allow "[c]oncurrent judicial and administrative review of pre-receivership cases," which "would completely undermine the need and efficacy of the administrative process." *Id.; see also Whatley*, 32 F.3d at 909 ("[C]ongressional goals of efficiency and expediency would be prejudiced if administrative and judicial processes were allowed to proceed simultaneously.")

Other courts have similarly concluded that FIRREA cannot be read to prohibit district courts from granting stays longer than 90 days. *See e.g. Zaremba Grp., LLC v. FDIC*, 10-11245, 2010 WL 3805190, at *3 (E.D. Mich. Sept. 23, 2010) (holding that a 180-day stay may be granted to exhaust the administrative claim process and effectuate the purpose of FIRREA); *Marquis v. FDIC.*, 965 F.2d

1148, 1155 (1st Cir. 1992) (permitting district courts to hold litigation in abeyance for 180 days for the same reasons); *Glover v. Washington Mut. Bank, F.A.*, 08-990, 2009 WL 798832, at *6 (W.D. Pa. Mar. 20, 2009) (granting a stay of 180 days and concluding that FIRREA cannot be read to contemplate concurrent judicial and administrative review); *Tuxedo Beach Club v. City Federal Savings Bank,* 737 F. Supp. 18, 19 (D.C.N.J. 1990) (holding that Congress intended the availability of a 180-day stay despite the fact that FIRREA does not expressly provide for one); *Coston v. Gold Coast Graphics, Inc.*, 782 F. Supp. 1532, 1536 (S.D. Fla. 1992) (concluding that Congress intended to stay pre-receivership actions until the claimants have complied with the administrative review process).

In the present suit, Brothers Petroleum states that it has already initiated the FIRREA administrative review process with the FDIC. In order to effectuate the purpose of FIRREA and in the interest of judicial economy, the Court finds that this litigation should be stayed until the FDIC completes its administrative review of Brothers Petroleum's claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Stay* **(Rec. Doc. 3)** is **GRANTED** for 180-days from the filing of Brothers Petroleum's administrative claim or until the FDIC denies Brothers

8

Petroleum's claims for administrative relief, whichever occurs first.

New Orleans, Louisiana this 30th day of August, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE