UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BROTHERS PETROLEUM, LLC | CIVIL ACTION |
| VERSUS | No.: 17-6713 |
| WAGNERS CHEF, LLC, ET AL. | SECTION: "J"(1) |

## ORDER & REASONS

### NATURE OF MOTION AND RELIEF REQUESTED

Before the Court are *Motions to Dismiss* submitted by Defendants, Jadallah Enterprises, LLC and Ahmed 1, LLC, jointly, **(Rec. Doc. 18)**; LNV Corporation **(Rec. Doc. 20)**; Wagner World, LLC **(Rec. Doc. 21)**; and Empire Express, LLC **(Rec. Doc. 22)**. Brothers responded to Defendants with a single omnibus memorandum in opposition (Rec. Doc. 24), to which all Defendants except Empire Express have replied. This Court heard oral argument regarding the Motions on July 11, 2018. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that LNV Corporation's, Wagner World's, and Empire Express's Motions should be **GRANTED** and the Motion by Jadallah Enterprises and Ahmed 1 should be **GRANTED IN PART** and **DENIED IN PART**.

### FACTS AND PROCEDURAL BACKGROUND

The central dispute of this case is between a petroleum distributor, Brothers Petroleum, LLC, ("Brothers") and a petroleum retailer, Wagners Chef, LLC. In

October of 2012, Brothers entered into a supply contract (the "Contract") for Exxon branded fuel with the retail operator of a gas station and convenience store at the intersection of Chef Menteur Highway and Louisa Street in New Orleans, Louisiana (the "Property"). Less than a year later, Wagners Chef acquired the right to operate the gas station and storefront as well as the right to purchase fuel under the Contract from Brothers.[1] According to Brothers, the Contract does not terminate until at least September of 2026, with an automatic 5-year renewal.[2]

Mr. Jadallah Saed—who is not a party to this suit—subsequently acquired a 100% interest in Wagners Chef.[3] Following the change in ownership, Wagners Chef initiated state court litigation against Brothers in July of 2014, alleging that Wagners Chef was not bound by the Contract.[4] However, the Louisiana Fourth Circuit Court of Appeal found the Contract valid,[5] and a state district court ordered specific performance of the Contract in May of 2016.[6] Brothers avers that despite these rulings, Wagners Chef continued to refuse to comply with the Contract.[7] Brothers attempted to force compliance by filing a motion for contempt proceedings against Wagners Chef, and sole owner, Mr. Saed.[8] It also sought a writ of distringas to have the Sheriff for the Parish of Orleans appointed to take control of the Property.[9]

---

[1] The Contract was originally between Brothers Petroleum and B-Xpress Louisa, LLC. However, "through a subsequent ratification of the Contract in June 2013," Wagners Chef became party to the Contract "as successor-in-interest to B-Xpress at the Store." (Rec. Doc. 3-3 at 3.).
[2] (Rec. Doc. 24 at 4).
[3] (Rec. Doc. 24 at 2).
[4] (Rec. Doc. 24 at 3).
[5] (Rec. Doc. 24 at 3).
[6] (Rec. Doc. 38-4).
[7] (Rec. Doc. 43-2 at 6).
[8] (Rec. Doc. 24 at 3).
[9] (Rec. Doc. 43-2 at 6).

Brothers claims that Wagners Chef did not begin purchasing fuel from Brothers in compliance with the Contract and the order of specific performance, until September of 2016, and only complied at all due to the threat of further legal action.[10]

While Wagners Chef operated the gas station and store, it did not own the Property; it leased the Property (the "Chef Lease") from the then-owner, Wagner World, LLC. The Chef Lease allegedly "extended through February, 2022 with a seven (7) year option to purchase thereafter."[11] However, on July 8, 2016, Wagners Chef cancelled the Chef Lease.[12] Brothers alleges that the Chef Lease was Wagners Chef's "single most valuable asset" because it operated its business from the Property, its operational licenses and permits relied on the lease, and the lease contained an option to purchase.

On the same day as the lease cancellation, Jadallah Enterprises, LLC purchased the Property from Wagner World and then leased it to Ahmed 1, LLC. Jadallah Saed is the sole owner of both these entities, as well as Wagners Chef. First NBC Bank provided a multiple indebtedness mortgage to fund Jadallah Enterprise's purchase of the Property and Ahmed 1 executed an assignment of rents in favor of First NBC as security (the "First NBC Loans"). Brothers claims that a month before cancelling the lease, Wagners Chef received approval for $2.9 million dollar loan from First NBC for purchase of the Property.[13] Subsequently, Ahmed 1 subleased the

---

[10] (Rec. Doc. 24 at 5).
[11] (Rec. Doc. 24 at 4).
[12] (Rec. Doc. 5 at 3).
[13] (Rec. Doc. 24 at 6).

Property to Empire Express and on November 8, 2016, Wagners Chef sold all of its assets to Empire Express, LLC.

Brothers alleges that during the period after these transactions, but before the distringas hearing set for November 2, 2016, it was "necessary to deceive the [state] trial court into believing 'all was well' and that they were and that they were willing to finally . . . honor the contract."[14] Brothers further asserts that contemporaneously with this deception on the state trial court, Mr. Saed sent a verified application for a liquor license for the property on behalf of a single-member LLC which is not a party to this lawsuit, and then another application on behalf of Wagners Chef. In each of these applications, Mr. Saed allegedly indicated that the property was operated under a lease from Jadallah Enterprises, knowing this to be false, because Jadallah Enterprises had leased the entirety of the property to Ahmed 1, which had executed the assignment of rents in favor of First NBC.[15]

On December 21, 2016, Brothers filed a revocatory action in state court seeking to annul the cancellation of the Chef Lease, the sale of the Property to Jadallah Enterprises, the lease to Ahmed 1, and the sale of Wagners Chef's assets to Empire Express. Brothers alleges that the cancellation of the lease and the transfers of the Property caused or increased the insolvency of Wagners Chef to the detriment of Brothers.[16] Further, Brothers claims that it is entitled to a judgment annulling both the multiple indebtedness mortgage and the assignment of rents because First NBC

---

[14] (Rec. Doc. 43-2 at 6).
[15] (Rec. Doc. 43-2 at 7).
[16] *See* (Rec. Doc. 1).

knew or should have known that these transactions would cause Wagners Chef to breach its Contract with Brothers and increase the insolvency of Wagners Chef.[17] Brothers also seeks damages for unfair trade practices, or alternatively, unjust enrichment from each of the Defendants (with the exception of NBC First's successor-in-interest).[18]

First NBC was declared insolvent and the FDIC became First NBC's receiver in April of 2017. Per the extensive powers granted it under the Federal Institutions, Recovery, and Enforcement Act ("FIRREA"), the FDIC removed this case from state court on May 30, 2017. On July 17, 2017, the FDIC moved to stay these proceedings until it could complete its administrative review of any claims set forth by First NBC.[19] This Court granted a stay of proceedings extending for 180-days from the filing of Brothers' administrative claim, or until the FDIC denied Brothers claims for administrative relief, whichever occurred first.[20] In October of 2017, the FDIC as receiver conveyed the First NBC Loans to LNV Corporation. The Court then removed the FDIC-receiver as a defendant and added LNV.[21] This Court terminated the stay on January 19, 2018.[22] Soon after, Defendants filed their respective Motions to Dismiss.

## **LEGAL STANDARD**

---

[17] (Rec. Doc. 3-3 at 9).
[18] (Rec. Doc. 17) (naming Wagners Chef, Jadallah Enterprises, Ahmed 1, Empire Express, Wagner World, and First NBC as Defendants in its Amending Petition).
[19] (Rec. Doc. 3-1 at 1).
[20] (Rec. Doc. 9).
[21] (Rec. Doc. 11).
[22] (Rec. Doc. 13).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired*, Inc., 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

When examining matters of state law, this Court will employ the principles of interpretation used by the state's highest court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). Mindful of Louisiana's distinction between primary and secondary sources of law, the Court will begin its

6

analyses with reliance on the Louisiana Constitution and statutes before looking to "jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004) (quoting La. Civ. Code. art. 1 rev. cmt. b). If the Court must make an "*Erie* guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (citation omitted). This Court is not strictly bound by the decisions of the state intermediate courts and will disregard them if the Court is "convinced that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

## DISCUSSION

### I. FIRREA AND PLAINTIFF'S REVOCATORY ACTIONS

LNV asserts that this Court is jurisdictionally barred by FIRREA from granting Brothers the equitable relief it seeks—rescission or annulment of the Defendants' various transactions and acts concerning the Property. If the Court finds for LNV on this ground, this Court would also be restrained from granting revocatory relief against the other Defendants.[23] Thus, the Court begins with examining the scope of FIRREA's anti-injunction provision. 12 U.S.C. § 1821(j), places the following limitation on court action: "Except as provided in this section, no court may take any

---

[23] At oral argument the Court asked each Party whether any individual transaction could be unwound without affecting the First NBC Loans. Each of the Defendants argued that rescinding any of the transactions would cause a domino effect—with consequences eventually cascading down to the First NBC Loans. Brothers' counsel suggested that LNV's foreclosure option will protect the First NBC Loans from being "affected," but could not point to any transaction which it seeks to rescind that is isolated from this "domino effect."

action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or function of the [FDIC] as a conservator or a receiver."

The language is clear: this Court cannot "restrain" (or even merely "*affect*") any exercise of receivership powers by the FDIC. Obviously, "rescission is a 'judicial restraint' that is barred by 1821(j)." *Ward v. ADR Tr. Corp.*, 996 F.2d 99, 104 (5th Cir. 1993). Moreover, "[t]here is no question . . . that the disposition of a failed federal savings institution's assets is one of the quintessential statutory powers of the RTC/FDIC as receiver." *Save Our Wetlands, Inc. v. State of La., Landmark Lands Co.*, CIV. A. 95-4221, 1996 WL 194924, at *2 (E.D. La. Apr. 19, 1996). Finally, anti-injunction protection extends even in cases where the receiver has conveyed the asset to a third party. *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1017 (8th Cir. 2013). Therefore, Brothers concedes (as it must) that FIRREA bars annulment of the First NBC loans.[24]

Nevertheless, Brothers claims there is no "provision of FIRREA which frees LNV from the claims and defenses which were previously available against First NBC Bank or from its position as a defendant in the revocatory action presented in this litigation."[25] Brothers apparently believes that this Court is not restrained from reinstating the Chef Lease, regardless of "detrimental effect upon the title to the property acquired by LNV's mortgagor, Jadallah Enterprises,"[26] because the act to be

---

[24] (Rec. Doc. 24 at 20-21).
[25] (Rec. Doc. 24 at 21).
[26] (Rec. Doc. 24 at 21).

8

rescinded preceded First NBC's involvement and insolvency, and any detrimental effect would be merely incidental. Brothers cites no authority for this proposition which defies the plain language of the statute.

Ultimately, what Brothers seeks is to have the Wagners Chef's right to operate the Property reinstated so that Wagners Chef may fulfill its obligation to purchase fuel from Brothers. However, this cannot be achieved without also rescinding all the other downstream transactions between the various Defendants. Because the First NBC Loans would necessarily be detrimentally effected by an order rescinding or annulling any action by the Parties which transferred rights in the Property, Defendants other than just LNV also benefit from 1812(j)'s shield—even those who acted *before* First NBC even entered the picture. *See Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1017 (8th Cir. 2013) (citation omitted) ("An action can 'affect' the exercise of powers by an agency without being aimed directly at the agency.").

In this case, even if the Court merely reinstated the Chef Lease, that court action would necessarily "restrain or affect the FDIC's powers to deal with the [First NBC Loans] it is charged with disbursing." *Id.* That is so, because to accomplish this result, the Court would have to restore ownership of the Property to Wagner World, which would require dissolving Jadallah Enterprise's lease to Ahmed 1 and Ahmed 1's lease to Empire Express. The end result of all these revocations and annulments: LNV would be forced to foreclose on the First NBC Loans. Clearly, forcing LNV to foreclose on the assets it has been assigned by the FDIC would severely affect the exercise of the receiver's powers. *See FDIC v. Urb. Partn. Bank*, 17-CV-1517, 2018

9

WL 2021223, at *5 (N.D. Ill. May 1, 2018). This Court cannot grant relief that would entangle it in "the equitable thicket that FIRREA was intended to clear away." *Id.* "Although this limitation on courts' power to grant equitable relief may appear drastic, it fully accords with the intent of Congress at the time it enacted FIRREA in the midst of the savings and loan insolvency crisis." *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1398 (D.C. Cir. 1995). Thus, this Court finds that it does not have jurisdiction to grant relief in a revocatory action against LNV or against any of the Defendants.

Brothers also asserts that its action should not be dismissed because it has elected to "continue on the claim in the federal district court where the failed bank's principal place of business is located" pursuant to § 1821(d)(6)(A).[27] This argument too, is unavailing. Subsection (d) of § 1821 provides an exhaustion requirement that funnels claims first through an administrative claims process. *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995). Once a claim has been disallowed, or a certain amount of time has passed, a rejected claimant may seek administrative review with the FDIC, or take their claim directly to district court for review. *Id.* Contrary to Brothers' statements in its opposition memorandum, Brothers has not asked this Court for review of its administrative claim. Brothers' sole cause of action against LNV in the instant matter is for revocatory relief. As noted above, this Court lacks jurisdiction to grant that equitable remedy. Dismissal of all claims against LNV is appropriate.[28]

---

[27] (Rec. Doc. 24 at 22).
[28] The Court notes that with the dismissal of the FDIC's successor-in-interest and only two state claims remaining, remand to the state district court would be appropriate as a matter of discretion. However, this case arose under the Court's original jurisdiction and the Fifth Circuit has made clear that

10

## II. UNFAIR TRADE PRACTICES

### a. The Applicable law

The Court now reaches the two state law claims that Brothers asserts against all parties other than LNV. The first of these causes of action is brought under the Louisiana Unfair Trade Practices Act ("LUTPA"). LUTPA allows recovery from a defendant who commits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 4/23/10), (quoting La. R.S. §51:1405(A)). Courts decide on a case-by-case basis what conduct violates this prohibition, but it is settled law that the behavior must (1) violate public policy and (2) be "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* Moreover, despite the apparent discretion a court enjoys in deciding what conduct is prohibited under LUTPA, the Louisiana Supreme Court has admonished that "the range of prohibited practices under LUTPA is extremely narrow." *Id.* at 1060.

A defendant's motivation for engaging in allegedly unfair practices is a "critical factor" in a court's analysis. *Harris v. Poche*, 930 So. 2d 165, 171 (La. App. 4 Cir. 4/12/06), *writ denied*, 938 So. 2d 74 (La. 2006). Outright fraud is the prototypical example of an unfair trade practice. *See, e.g.*, *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 2017 WL 5760363 (La. App. 2 Cir. 11/29/17) *reh'g denied* (Jan. 4, 2018), *Dufau v. Creole Engineering, Inc.*, 465 So. 2d 752, 758 (La. App. 5 Cir. 1985), *writ denied*,

---

regardless of how strongly principles of judicial economy recommend remand of lingering state law claims, this Court may not do so. *Adair v. Lease Partners, Inc.*, 587 F.3d 238, 245 (5th Cir. 2009).

468 So. 2d 1207 (La. 1985) (finding a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct"). The United States Fifth Circuit has found that only competitors or consumers can bring a claim under LUTPA, *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 226 (5th Cir. 1991), but the Defendants argue merely that Brothers has not stated a proper claim under LUTPA—they have not contested that Brothers has standing to bring a claim under the act.[29]

Defendants instead assert that there are no real claims of fraud or unscrupulous behavior, only allegations that the Defendant companies engaged in what are proper and legal transactions—namely, the sale of the Property by Wagner World to Jadallah Enterprises, and the leases by Jadallah Enterprises to Ahmed 1, and by Ahmed 1 to Empire Express. However, Brothers claims that Defendants undertook these acts and transactions "with the specific purpose and intent of depriving plaintiff, Brothers, of its rights against defendant, Wagners Chef, LLC . . . and preventing Brothers . . . from recovering damages."[30] In other words, Brothers alleges the various Saed-owned LLCs acted in collusion with one another to leave Brothers' sole obligor insolvent and unable to comply with a court judgment ordering the specific performance of a contract. Before determining whether the claimed

---

[29] Since the Fifth Circuit's decision in *Wang Labs*, the Louisiana Supreme Court has found that parties other than competitors and customers may bring suit under LUTPA. *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 4/23/10) ("Although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members."). Some lower courts have been persuaded to follow this diverging state precedent, see *Max Access, Inc. v. Gee Cee Co. of LA, Inc.*, No. 15-1728, 2016 WL 454389, at *4 (E.D. La. Feb. 5, 2016), but this Court need not address the issue now because it has not been raised.
[30] (Rec. Doc. 17 at 18).

conduct has been stated with sufficient particularity to meet *Iqbal's* plausibility standard, the Court should determine whether this conduct could ever amount to an unfair trade practice.

Although, the Court is unaware of any case in which the Louisiana Supreme Court has held that assisting a party in defying an order of specific performance amounts to an unfair trade practice, the Louisiana Supreme Court held long ago that where an obligor and judgment debtor transfers her assets to a newly formed corporation in order to escape enforcement of a judgment, that conduct amounts to fraud on the part of all involved, *Price v. Florsheim*, 142 So. 135, 137 (La. 1932), and fraud is clearly an unfair trade practice. *See Dufau*, 465 So. 2d at 758. Furthermore, Louisiana appellate courts have found behavior similar but less egregious than what is alleged here, to amount to an unfair trade practice. For example, in *Bank of New Orleans & Tr. Co. v. Phillips*, 415 So. 2d 973, 975 (La. Ct. App. 1982), the Louisiana Fourth Circuit, upheld a trial court's determination that it was an unfair trade practice for a bank to intentionally file suit against a credit card customer in an improper venue. The court found this act to be "tantamount to an abuse of process," an act of "harassment to the defendant" and an attempt "hinder him in his access to the courts." *Id.*

*Bank of New Orleans* highlights an important feature of unfair trade practices suits. While merely filing in the wrong venue is not usually considered tortious, doing so with the intent to harass the defendant made the conduct actionable. *Id.* In Louisiana, conduct that is otherwise not illegal, may constitute an unfair trade

practice if is undertaken with the unscrupulous purpose of harming competition, rather than helping oneself. *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 766 (La. Ct. App.1993), *writ denied*, 629 So .2d 1135 (La. 1993). Accordingly, the Court finds that assisting a person or entity in defying an order of specific performance on a contract may constitute an unfair trade practice, if the act is done with the specific purpose of depriving the party entitled to performance of its rights. A motivation to "hinder [a person] in his access to the courts" and the courts' remedies is key for such a claim. *See Bank of New Orleans*, 415 So. 2d at 975.

### b. Plausibility of Brothers' Claim

The Court must still determine whether the facts alleged here give rise to a plausible claim that the Defendants acted with the specific purpose of depriving Brothers of its right to specific performance. Brothers leans heavily on the fact that Wagners Chef, Jadallah Enterprises and Ahmed 1, all share Mr. Saed as their sole member. However, Jadallah Enterprises and Ahmed 1 counter that "[t]he common ownership of the limited liability companies involved in this matter is irrelevant to the determination of whether Brothers has a claim against these individual legal entities. Jadallah Enterprises and Ahmed 1 are separate legal entities, distinct from Wagners Chef, and must be treated as such."[31]

This point has some merit because Brothers has not put forth an alter ego, single enterprise, continuing enterprise or veil piercing theory in this case, and therefore the acts of one defendant entity may not be attributed to the other.

---

[31] (Rec. Doc. 33 at 2).

14

Nevertheless, the Court does not find the shared ownership and control of Wagners Chef, Jadallah Enterprises, and Ahmed 1 by the same Jadallah Saed, totally irrelevant. What purpose the alleged conduct was undertaken with controls whether it constitutes an unfair trade practice. *See Bank of New Orleans*, 415 So. 2d at 975. The motivations of the Defendant entities are therefore relevant to determining whether their conduct amounts to unfair trade practices. The Court cannot determine the motivations of Wagners Chef, Jadallah Enterprises, and Ahmed 1, without acknowledging that each is composed and controlled by a single member: Mr. Saed.

This fact of common ownership and control, along with Wagners Chef's previous attempts to get out of the Contract, the allegedly gratuitous cancellation of the Chef Lease by Wagners Chef, the alleged deceptions on the state trial court and the City of New Orleans, and the sale of the property to another LLC owned by Mr. Saed, rather than Wagners Chef (which had already received approval to purchase the Property) combine to plausibly suggest a concerted effort to frustrate Brothers' right to specific performance on the Contract from Wagners Chef. The Court can infer that the above conduct was plausibly undertaken by Wagners Chef, Jadallah Enterprises, and Ahmed 1, with the intent to leave Brothers with an insolvent debtor-obligor, from whom Brothers cannot hope to collect or expect performance.[32] The

---

[32] The Court does not suggest that these Defendants are one entity, but finds merely that Brothers has pleaded a plausible claim that Jadallah Enterprises and Ahmed 1 helped Wagners Chef to circumvent an order of specific performance with an unscrupulous purpose. The critical distinction between what the Court finds today, and a single enterprise theory, is that entities in the instant matter can only be held liable for their own acts, whereas under a single enterprise theory, each entity is responsible for all of the acts of the others entities also considered to be a part of the collective enterprise. *See Green v. Champion Ins. Co.*, 577 So. 2d 249, 258 (La. App. 1 Cir. 1991), *writ denied*, 580 So. 2d 668 (La. 1991).

15

Court finds that this alleged behavior is against public policy and unscrupulous and unethical. Therefore, the Court will not dismiss the unfair trade practices claims that are alleged against the single member entities owned by Mr. Saed, at this time.

However, the claims of unfair trade practices asserted against Wagner World and Empire Express are not sufficiently supported to reach even the plausibility standard. For these companies, which are not owned by Mr. Saed, Brothers has not alleged, and the Court cannot infer, a plausible illicit motivation for these entities' roles in the attacked transactions. Therefore, these actions are dismissed without prejudice.

### III. UNJUST ENRICHMENT

Brothers' other state law claim is for unjust enrichment. To succeed, Brothers must prove: "1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff." *Huntsman Int'l LLC v. Praxair, Inc.*, 201 So.3d 899, 911 (La. App. 4 Cir. 9/14/16).

Defendants argue that per the fifth element, unjust enrichment may only serve for "gap filling."[33] Therefore, it is only properly considered when it is the only avenue for relief. *Mouton v.* State, No. 2010-0353 (La. 6/4/10), 38 So.3d 243, 244. That it is "the only avenue" does not mean that an unjust enrichment is an alternative to other claims which a plaintiff has unsuccessfully put forth. *JP Mack Indus. LLC v. Mosaic*

---

[33] (Rec. Doc. 18-1 at 9).

*Fertilizer, LLC*, 970 F.Supp. 2d 516, 521 (E.D. La. 2013), *Walters v. MedSouth Record Mgmt., LLC*, So.3d 241, 242 (La. 6/4/10) (per curiam) ("The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."). Rather, unjust enrichment is allowed where the law has not "provided plaintiff with another remedy." *Walters*, 38 So.3d at 242.

Unfortunately for Brothers, it has persuaded the Court that the law has provided it a remedy—the revocatory action—against two parties: Wagner World, LLC and Empire Express. Under Louisiana law, an obligee such as Plaintiff has a right to annul an act of his obligor if the act was made or effected after the right of the obligee arose and that act causes or increases the obligor's insolvency. La. C.C. art. 2036*; see also Parish National Bank v. Wilks*, 923 So. 2d 8, 15 (La. App. 1 Cir. 8/3/05). Thus, in order to succeed in a revocatory action, an obligee must prove: (1) there was an act (or failure to act) of the obligor that caused or increased the obligor's insolvency; and (2) the act occurred after the obligee's rights arose. *Wilks*, 923 So. 2d at 15. Each of the Defendants complain they are not Brothers' "obligor" and so a necessary element is not met. But for a fraudulent conveyance (which a revocatory action seeks to undo), it takes two to tango: the obligor *and* the third party to whom the obligor has transferred the property. *See Opelousas Prod. Credit Ass'n v. B.B. & H., Inc.*, 525 So. 2d 91, 93 (La. App. 3 Cir. 1988). Admittedly, Brothers confuses things by asking this Court to annul some transactions that are too far removed from any action by its obligor, but both Wagner World and Empire Express transacted directly

17

with Brothers' obligor, Wagners Chef. In order to undo the acts that rendered its obligor insolvent, Brothers would need to join the third parties who transacted with Wagners Chef. *See Id.*, La. C.C. art. 2042 (requiring obligee to join as defendants third parties who were involved in the obligor's act or failure to act). Therefore, the law has provided Brothers a remedy against these parties, albeit one that Brothers cannot act on because of the anti-injunction provision of FIRREA. Brothers' only remaining claims against Wagner World and Empire Express for unjust enrichment must be dismissed. *See JP Mack Indus.*, 970 F.Supp. 2d at 522. Likewise, since the Court has found Brothers has a valid remedy in the form of an unfair trade practices claim against Jadallah Enterprises and Ahmed 1, the unjust enrichment claims alleged against those Defendants must be dismissed as well.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that LNV's *Motion to Dismiss* **(Rec. Doc. 20)** pursuant to 12(b)(1) is **GRANTED** and LNV is dismissed as a party to these proceedings.

**IT IS FURTHER ORDERED** that the *Motions to Dismiss* submitted by Defendants Wagner World, LLC **(Rec. Doc. 21)**; and Empire Express, LLC **(Rec. Doc. 22)** are **GRANTED** and that Wagner World and Empire Express are dismissed as parties to these proceedings.

**IT IS FURTHER ORDERED** that the *Motion to Dismiss* submitted by Defendants, Jadallah Enterprises, LLC and Ahmed 1, LLC, jointly, **(Rec. Doc. 18)**

is **GRANTED IN PART** to **dismiss with prejudice** the revocatory actions asserted against Defendants; **DENIED IN PART** as to Brothers' claims against Jadallah Enterprises and Ahmed 1 for unfair trade practices; and **GRANTED IN PART** to **dismiss with prejudice** Brothers' claims against Jadallah Enterprises and Ahmed 1 for unjust enrichment.

New Orleans, Louisiana this 31st day of July, 2018.

                                                                                    _____
                                                                                    Carl J. Barbier
                                                                                    United States District Judge