UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BROTHERS PETROLEUM, LLC | CIVIL ACTION |
| VERSUS | 17-6713 |
| WAGNERS CHEF, LLC, ET AL. | SECTION: "J" (1) |

### ORDER & REASONS

Before the Court are Defendants Jadallah Enterprises, LLC and Ahmed 1, LLC's *Motion for Judgment as a Matter of Law* **(Rec. Doc. 147)**, an opposition thereto (Rec. Doc. 149) by Plaintiff Brothers Petroleum, LLC, and a reply (Rec. Doc. 156) by Defendants. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

This litigation arises from a dispute between a petroleum distributor, Plaintiff Brothers Petroleum, LLC, and Defendant Wagners Chef, LLC ("WC"), the retail operator of a gas station and convenience store in New Orleans, Louisiana (the "Property"). Plaintiff originally entered into a supply contract (the "Contract") with B-Xpress Louisa, LLC, which was acquired by WC less than a year later. The Contract was then ratified by WC. In November 2013, Mr. Jadallah Saed acquired the entire membership interest in WC.

Following the change in ownership, WC initiated state court litigation against Plaintiff in July 2014, asserting that WC was not bound by the Contract. However,

the Louisiana Fourth Circuit Court of Appeal found the Contract valid,[1] and a state district court ordered specific performance of the Contract in May 2016.[2] Despite these rulings, WC continued to refuse to comply with the Contract and did not begin purchasing fuel from Plaintiff in compliance with the Contract and the order of specific performance until September 2016.

While WC operated the gas station and store, it did not own the Property; it leased the Property (the "Chef Lease") from the owner at the time, Wagner World, LLC (which has no connection to WC other than the Chef Lease, despite their similar names). The Chef Lease commenced on November 15, 2013, with a fifteen-year term, an option to extend the term for five years, and an option to purchase during the original term.[3] However, on July 8, 2016, WC cancelled the Chef Lease.[4]

On the same day as the Chef Lease cancellation, Defendant Jadallah Enterprises, LLC ("JE") purchased the Property from Wagner World and then leased it to Defendant Ahmed 1, LLC ("A1"). Mr. Saed is the sole owner of both JE and A1, as well as WC. First NBC Bank provided a multiple indebtedness mortgage to fund JE's purchase of the Property, and A1 executed an assignment of rents in favor of First NBC Bank as security. Subsequently, A1 subleased the Property to Empire Express, LLC ("Empire") and on November 15, 2016, WC sold all of its assets to Empire.[5]

---

[1] (Rec. Doc. 104-5, at 2).
[2] (Rec. Doc. 104-6).
[3] (Rec. Doc. 18-2, at 1, 23).
[4] (Rec. Doc. 104-7).
[5] (Rec. Doc. 104-8).

On December 21, 2016, Plaintiff filed a revocatory action in state court seeking to annul the cancellation of the Chef Lease, the sale of the Property to JE, the lease to A1, and the sale of WC's assets to Empire.[6] After First NBC Bank was declared insolvent, the action was removed to this Court.[7] The Court then dismissed all claims except for Plaintiff's claim under the Louisiana Unfair Trade Practices Act ("LUTPA") against the Saed-owned entities: WC, JE, and A1.[8]

At trial, the jury unanimously found that all three Defendants violated LUTPA by engaging in the above-described transactions. Defendants moved for judgment as a matter of law at the close of Plaintiff's evidence, which the Court denied, and JE and A1 now reurge their motion.

## PARTIES ARGUMENTS

Defendants[9] contend that Plaintiff failed to produce sufficient evidence to support its claims under LUTPA. Defendants argue that, as limited liability companies, they must be treated as separate entities, distinct from each other and from their membership (i.e., Mr. Saed), and therefore cannot be held liable for the actions of the other entities but only for their individual conduct. Defendants further argue that their individual conduct—JE's purchase of the Property from Wagner World and lease of the property to A1, and A1's leasing of the Property from JE and

---

[6] (Rec. Doc. 1-3).
[7] (Rec. Doc. 9).
[8] (Rec. Doc. 46).
[9] The Court's use of "Defendants" in this discussion refers only to JE and A1, as only these two Defendants moved for judgment as a matter of law.

3

sublease of the Property to Empire—are not a sufficient basis for liability under LUTPA.

Plaintiff argues that Defendants' actions, taken in context, amount to a conspiracy to prevent Plaintiff from collecting damages from WC. Plaintiff points to the timing of the formation of JE and A1, JE's lack of business activity and infrastructure, the income JE lost by substituting A1 for WC as lessee, and JE's reliance on WC's income and cash flow to obtain the loan for the purchase of the Property, as well as the common ownership of the three entities, as evidence of their intent to collude with WC.

In reply, Defendants argue that the purchase of the Property by JE did not violate LUTPA because WC was unable to qualify for the loan due to a state tax lien and because WC continued to operate its business and purchase fuel from Plaintiff after JE acquired the Property. Defendants point to other events, including WC's loss of its liquor license, Mr. Saed's federal indictment and incarceration, and the death of WC's long-term manager, as the reasons WC became defunct and was forced to sell its assets to Empire. Defendants further contend that, in light of these developments, there is no basis for finding that A1's lease of the Property from JE or its sublease to Empire violated LUTPA.

## **LEGAL STANDARD**

Pursuant to Rule 50(b), if the court does not grant a motion for judgment as a matter of law during a jury trial, the movant may file a renewed motion for judgment as a matter of law. In considering a Rule 50(b) motion, "the

court is to view the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of . . . the non-moving party, and leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury." *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994). A Rule 50(b) motion for judgment as a matter of law should be granted only if

> the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. . . . On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.

*Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000) (internal quotation marks and citations omitted). Granting a Rule 50(b) motion "is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *In re Litterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986).

## DISCUSSION

LUTPA allows recovery from a defendant who commits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So. 3d 1053, 1059 (quoting LA. R.S. 51:1405(A)). Courts decide on a case-by-case basis what conduct violates this prohibition, but it is settled law that the behavior must (1) violate public policy and (2) be "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.*

Moreover, despite the apparent discretion a court enjoys in deciding what conduct is prohibited under LUTPA, the Louisiana Supreme Court has admonished that "the range of prohibited practices under LUTPA is extremely narrow." *Id.* at 11, 35 So. 3d at 1060.

A defendant's motivation for engaging in allegedly unfair practices is a "critical factor" in a court's analysis. *Harris v. Poche*, 05-664, p. 7 (La. App. 4th Cir. 4/12/06), 930 So. 2d 165, 171, *writ denied*, 06-1113 (La. 10/6/06), 938 So. 2d 74. Outright fraud is the prototypical example of an unfair trade practice. *See, e.g.*, *Walker v. Hixson Autoplex of Monroe, L.L.C.*, No. 51,758, p. 5 (La. App. 2d Cir. 11/29/17), 245 So. 3d 1088, 1095; *Dufau v. Creole Engineering, Inc.*, 465 So. 2d 752, 758 (La. App. 5th Cir. 1985) (holding a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct").

The Louisiana Supreme Court has held that where an obligor and judgment debtor transfers her assets to a newly formed corporation in order to escape enforcement of a judgment, that conduct amounts to fraud on the part of all involved, *Price v. Florsheim*, 174 La. 945, 954, 142 So. 135, 137 (1932),[10] and fraud is clearly an unfair trade practice, *see Dufau*, 465 So. 2d at 758.

Significantly, Louisiana courts have held that conspiracy falls within the ambit of LUTPA. *See So. Tool & Supply Inc. v. Beerman Precision, Inc.*, 03-960, pp. 4-5 (La. App. 4th Cir. 11/26/03), 862 So. 2d 271, 276, *writs denied*, 03-3481, 3518, 3536 (La.

---

[10] Defendants misunderstand the relevance of *Price*. While *Price* was decided long before the enactment of LUTPA, it helps describe the type of conduct that the Louisiana Supreme Court would find fraudulent and would now be proscribed by LUTPA. Defendants' attempt to distinguish *Price* on its facts is also unpersuasive.

6

3/12/04), 869 So. 2d 821, 825, 826; *Camp, Dresser & McKee, Inc. v. Steimle & Assoc., Inc.*, 94-647, pp. 7-8 (La. App. 5th Cir. 2/15/95), 652 So. 2d 44, 48; *Strahan v. Louisiana*, 93-374, p. 6 (La. App. 1st Cir. 8/25/94), 645 So. 2d 1162, 1165, *writ denied*, 95-40 (La. 2/17/95), 650 So. 2d 256. In *Cheramie Services*, the Louisiana Supreme Court held that the plaintiffs had not produced any evidence of a conspiracy, and therefore reinstated the grant of summary judgment dismissing the complaint, but did not hold that conspiracy was outside the scope of LUTPA as a matter of law. 09-1633 at 17, 35 So. 3d at 1063.

The plaintiffs in *Cheramie Services* alleged that the defendants, a client and a business competitor, had conspired to lure away the plaintiff's employees. *Id.* at 3, 35 So. 3d at 1055. However, the Supreme Court concluded that the plaintiff had not shown any collusion between the defendants because there was no evidence that the client was aware that two of the employees had switched companies until after they had done so, and the third had done so due to the competitor being the winning bidder for the project at issue and not due to any collusion. *Id.* at 13, 35 So. 3d at 1061.

Here, unlike in *Cheramie Services*, Plaintiff has produced some evidence that JE and A1 conspired with WC to prevent Plaintiff from collecting damages from WC owed to Plaintiff under the Contract. JE was formed nine days after WC notified Plaintiff it would no longer honor the Contract yet had no bank account, income, or expenses and performed no business activities for over fourteen months until it

purchased the Property. Although JE was technically the purchaser of the Property, the loan used to fund the purchase was supported by WC's income and cash flow.[11]

A1 was formed three days prior to WC's cancellation of the Chef Lease and JE's purchase of the Property. JE leased the Property to A1 on the same day as the purchase, which Defendants contend was proper because A1 was set up to act as a property manager. However, this fact is relevant to A1's intent because WC acted as the property manager prior to JE's purchase of the Property; by assuming the managerial function, A1 caused WC to lose $24,000 per month in rental income,[12] which otherwise could have gone to satisfying WC's obligation to Plaintiff.

Finally, notwithstanding the fact that WC, JE, and A1 are distinct legal entities, the jury could properly consider that all three were owned by the same person, Mr. Saed, in determining Defendants' motive for engaging in these transactions. *See Balthazar v. Hensley R. Lee Contracting, Inc.*, 16-920, p. 16 (La. App. 4th Cir. 3/15/17), 214 So. 3d 1032, 1044, *writ denied*, 17-777 (La. 9/22/17), 228 So. 3d 741.

Defendants' arguments advance a piecemeal approach to the transactions at issue that fails to grapple with the relevance of Plaintiff's evidence and essentially ask the Court to ignore this evidence, which the Court may not do in deciding a motion for judgment as a matter of law. While Defendants' proffered explanations for their actions may be plausible, they fail to demonstrate a lack of substantial evidence to support the jury's verdict. Viewing the evidence and drawing all factual inferences in

---

[11] (Rec. Doc. 145, at 69-74).
[12] *Id.* at 72.

favor of Plaintiff, the jury could reasonably conclude that Defendants violated LUTPA.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Judgment as a Matter of Law* **(Rec. Doc. 147)** is **DENIED**.

New Orleans, Louisiana, this 26th day of June, 2020.

                                      CARL J. BARBIER
                                      UNITED STATES DISTRICT JUDGE